1

2

3                     UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5                           SAN JOSE DIVISION

6

7    ELITE SEMICONDUCTOR, INC.,              Case No.  5:20-cv-06846-EJD

8                    Plaintiff,              **ORDER GRANTING MOTION TO
                                             DISMISS FOR IMPROPER SERVICE
9            v.                              AND LACK OF PERSONAL
                                             JURISDICTION**
10   ANCHOR SEMICONDUCTOR, INC., et
     al.,                                    Re: Dkt. No. 36
11                   Defendants.

12

13          Elite Semiconductor, Inc. ("ESI") brings this suit against its former employee Chin-Hsen

14   Lin ("Lin"), Anchor Semiconductor, Inc. ("Anchor"), and Anchor's president and chief executive

15   officer Chen Ming Hu ("Hu") in connection with the alleged misappropriation of ESI's trade

16   secrets.  Lin now moves to dismiss the claims asserted against him for insufficient service of

17   process and for lack of personal jurisdiction.  ESI opposes the motion.  For the reasons discussed

18   below, Lin's motion to dismiss is **GRANTED** for insufficient service of process and lack of

19   personal jurisdiction.[1]

20   **I.      BACKGROUND**

21          ESI's operative complaint ("Compl.") alleges the following facts.  Dkt. No. 1.  ESI, a

22   corporation headquartered in Hscinchu, Taiwan, is a software company known for its

23   semiconductor manufacturing verification tools.  Compl. ¶ 1, 15.  ESI has developed defect

24   identification technology which allows for defects in the inspection image to be reviewed

25

26   _____
     [1] The Court took this motion under submission without oral argument pursuant to Civil Local Rule
27   7-1(b).
     Case No.: 5:20-cv-06846-EJD
28   ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
     PERSONAL JURISDICTION
                                             1

United States District Court
Northern District of California

1    automatically by a machine, system, or computer such that the defect judgment can be achieved

2    accurately in a small period of time.  *Id*. ¶ 18.

3            In March 2009, ESI hired Lin as its chief technology officer ("CTO").  *Id*. ¶ 24.  ESI

4    alleges that as CTO, Lin had access to ESI's electronic source code repository and the electronic

5    platforms where ESI trade secrets were stored.  *Id*. ¶ 25, 31.  This meant Lin had access to ESI's

6    confidential software architectural plans, patent invention disclosures, product plans and

7    strategies, and the company's trade secret files.  *Id*. ¶¶ 25, 27.  In January 2010, ESI began

8    creating the Killer Defect Screen System which would become a primary product for the

9    company.  *Id*. ¶ 30.  Lin helped create ESI's trade secret software code for the Killer Defect

10   Screen System and continued to have access to all electronic and paper records related to ESI's

11   trade secrets.  *Id*.  While serving as CTO, however, ESI believes Lin was "secretly hired" by

12   Anchor.  *Id*. ¶ 24.  ESI contends the Anchor Defendants made this hire so Lin could maintain

13   access to and take ESI's intellectual property for Anchor's benefit.  *Id*. ¶ 68.

14           ESI notes that in April 2011, Lin gained access to and made a copy of patent invention

15   disclosure documents related to four of the company's U.S. patents so that he could transmit the

16   disclosure documents to Anchor.  *Id*. ¶ 50.  After receiving the patent invention disclosure

17   documents, Anchor allegedly copied "ESI's technology" described in the documents and

18   incorporated the information in its own U.S. patent application, which Anchor filed in April 2011.

19   *Id*. ¶ 86.  ESI also alleges Lin visited its offices after hours in June 2012 and several times

20   thereafter to download source code and system architecture documents from the ESI server.  *Id*. ¶¶

21   45, 52.  According to ESI, Lin did this to transfer ESI's trade secrets to the Anchor Defendants

22   who knew of and encouraged the taking and using of ESI's trade secrets to develop its own defect

23   detection products.  *Id*. ¶¶ 46, 67.  ESI claims Lin and the Anchor Defendants made direct and

24   deliberate use of ESI's trade secrets in order to develop Anchor's competing products, including

25   its HPA detection tool.  *Id*. ¶¶ 70, 76.  Anchor's use of ESI's trade secrets is alleged to have

26   increased the timeline for the development and production of its products.  *Id*. ¶ 70.

27

28   Case No.: 5:20-cv-06846-EJD
     ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
     PERSONAL JURISDICTION

1    Lin served as ESI's CTO until January of 2013, when he transitioned to a senior consultant

2  position within the company.  *Id.*  ¶ 24.  According to ESI, Lin told ESI he wanted to become a

3  consultant so he could take care of his wife in the United States.  *Id.* ¶ 83.  ESI contends, however,

4  that  Lin actually left his position as CTO so "he could join Defendant Anchor and pillage trade

5  secret information from ESI. . . ."  *Id.*  He continued to serve as a senior consultant until January

6  of 2017 when he resigned.  *Id.* ¶ 24.  As part of his resignation, Lin agreed to and signed a

7  Confidentiality Agreement and Departure Clearance Checklist (collectively "Departure

8  Agreement") which asked Lin to indicate whether he had taken any source code.  *Id.* ¶ 61.  By

9  signing, Lin asserted that he had not taken any ESI source code with him and agreed to not

10  disclose any of ESI's trade secrets or intellectual property.  *Id.*

11    On September 30, 2021, ESI filed its complaint against Lin, Hu, and Anchor.  Dkt. No. 1.

12  The Complaint contains five claims: (1) a claim for misappropriation of trade secrets in violation

13  of California's Uniform Trade Secrets Act (CUTSA), California Civil Code § 3426 *et seq.*, against

14  all defendants, (2) a claim for violation of the Defense of Trade Secrets Act, 18 U.S.C. § 1836 *et*

15  *seq.*, against all Defendants, (3) a common law breach of contract claim against Lin, (4) a claim

16  for tortious interference with contract against Hu and Anchor, and (5) a  conversion claim against

17  all Defendants.  *Id.* ¶¶ 103-143.

18    On January 4, 2021, Lin moved to dismiss the claims asserted against him for insufficient

19  service of process and for lack of personal jurisdiction.  Motion to Dismiss for Improper Service

20  and Lack of Jurisdiction ("Mot."), Dkt. No. 36.  ESI filed an opposition to Lin's motion

21  ("Opp'n"), to which Lin has filed a reply ("Reply iso Mot.").  Dkt. Nos. 47, 49.

22  **II.    LEGAL STANDARDS**

23       **A.    Motion to Dismiss for Insufficient Service of Process**

24    A federal court lacks personal jurisdiction over a defendant "unless the defendant has been

25  served in accordance with Fed. R. Civ. P. 4."  *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551

26  F.3d 1132, 1135 (9th Cir. 2009) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

27

28  Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
PERSONAL JURISDICTION

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Accordingly, Rule 12(b)(5) permits a court to dismiss an action for insufficient service of process.

2  Fed. R. Civ. P. 12(b)(5).  Rule 12(b)(5) also allows the defendant to attack the manner in which

3  service was, or was not, attempted.  *Id*.  When the validity of service is contested, the burden is on

4  the plaintiff to prove that service was valid under Rule 4.  *Brockmeyer v. May*, 383 F.3d 798, 801

5  (9th Cir. 2004).  If the plaintiff does not satisfy this burden, the Court has the discretion to either

6  dismiss the action or retain the action and quash the service of process.  *Stevens v. Sec. Pac. Nat.*

7  *Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

8      Rule 4(e) provides that an individual may be served by "doing any of the following: (A)

9  delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a

10 copy of each at the individual's dwelling or usual place of abode with someone of suitable age and

11 discretion who resides there; or (C) delivering a copy of each to an agent authorized by

12 appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2).  Service may also be

13 carried out in any manner allowed by the law of the state in which the federal court sits or where

14 service is made.  Fed. R. Civ. P. 4(e)(1).

15      **B.      Motion to Dismiss for Lack of Personal Jurisdiction**

16      Rule 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal

17 jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When a defendant moves to dismiss for lack of personal

18 jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the

19 defendant.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

20 "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary

21 hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."  *Love v.*

22 *Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  The Court then "only inquire[s]

23 into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal

24 jurisdiction."  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).  A prima

25 facie showing means that "the plaintiff need only demonstrate facts that if true would support

26 jurisdiction over the defendant."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

27

28 Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
PERSONAL JURISDICTION

1    "Uncontroverted allegations in the complaint must be taken as true, and factual disputes

2  are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905

3  F.3d 597, 602 (9th Cir. 2018).  If, however, the defendant adduces evidence controverting the

4  allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting

5  personal jurisdiction," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986), for a court "may not

6  assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc.*

7  *v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  Moreover, conclusory allegations

8  or "formulaic recitation of the elements" of a claim are not entitled to the presumption of truth.

9  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "Nor is the court required to accept as true allegations

10  that are . . . unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

11  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

12    Further, personal jurisdiction may either be authorized by federal statute or permissible to

13  the extent provided under state law. With respect to the latter, "the district court applies the law of

14  the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223

15  (9th Cir. 2011).  Under California law, courts may exercise jurisdiction "to the full extent that such

16  exercise comports with due process." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th

17  Cir. 2017) (citing Cal. Civ. Proc. Code § 410.10).  As a result, "the jurisdictional analyses under

18  state law and federal due process are the same." *Mavrix Photo, Inc.*, 647 F.3d at 1223.

19     Due process "constrains a state's authority to bind a nonresident defendant to a judgment

20  of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  Although a nonresident's physical

21  presence within the territorial jurisdiction of the court is not required, the nonresident generally

22  must have "certain minimum contacts . . . such that the maintenance of the suit does not offend

23  traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of*

24  *Employment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotation marks and citation

25  omitted).  "The strength of contacts required depends on which of the two categories of personal

26  jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*,

1    793 F.3d 1059, 1068 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

2         **C.    Leave to Amend**

3         If the Court determines that a complaint should be dismissed, it must then decide whether

4    to grant leave to amend.  Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be

5    freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to

6    facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*,

7    203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).

8    When dismissing a complaint for failure to state a claim, "a district court should grant leave to

9    amend even if no request to amend the pleading was made, unless it determines that the pleading

10   could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks

11   omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment

12   would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party

13   has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

14   **III.   DISCUSSION**

15         **A.    Improper Service**

16        Lin first argues that this Court lacks jurisdiction over him as service was improper.

17   "[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than

18   notice to the defendant and a constitutionally sufficient relationship between the defendant and the

19   forum.  There also must be a basis for the defendant's amenability to service of summons."

20   *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  Here, ESI contends

21   Lin has been properly served with process twice, once in California and the other time in Taiwan.

22   The Court addresses both instances in turn.

23         **1.    Attempt to Serve Process in California**

24        According to Lin, ESI attempted service on October 18, 2020.  ESI's process server made

25   a substituted service on Lin by leaving a copy of the summons and complaint at a residence

26   located at 985 Joshua Place in Fremont, California ("Fremont Residence") with Lin's adult son

27

28   Case No.: 5:20-cv-06846-EJD
     ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
     PERSONAL JURISDICTION

United States District Court
Northern District of California

1   Derek Lin.  *See* Dkt. No. 22.  The process server then mailed a copy of the summons and

2   complaint to Lin at the same address.  *Id.*  On October 22, 2020, ESI filed the proof of service for

3   the October 18, 2020 service.  *Id.*

4       California law allows for substituted service if the summons and complaint cannot be

5   personally served with reasonable diligence.  Section 415.20 of the California Code of Civil

6   Procedure provides the following:

7           (b) If a copy of the summons and complaint cannot with reasonable
            diligence be personally delivered to the person to be served . . . a
8           summons may be served by leaving a copy of the summons and
            complaint at the person's *dwelling house, usual place of abode, usual*
9           *place of business, or usual mailing address* other than a United States
            Postal Service post office box, in the presence of a competent member
10          of the household or a person apparently in charge of his or her office,
            place of business . . .
11

12  Cal. Civ. Proc. Code § 415.20(b).  (emphasis added).

13      Based on the evidence presented, the Court finds that ESI has not established it properly

14  effectuated substituted service on Lin in California.  First, before relying on substituted service,

15  the serving party must show that the summons and complaint could not "with reasonable diligence

16  be personally serviced."  Cal. Civ. Proc. Code § 415.20(b); *see, e.g., Am. Express Centurion Bank*

17  *v. Zara*, 199 Cal. App. 4th 383, 389 (2011) (stating that "an individual may be served by substitute

18  service only after a good faith effort at personal service has first been made: the burden is on the

19  plaintiff to show that the summons and complaint 'cannot with reasonable diligence be personally

20  delivered' to the individual defendant"); *Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988)

21  (stating that, "'[o]rdinarily, . . . two or three attempts at personal service at a proper place should

22  fully satisfy the requirement of reasonable diligence and allow substituted service to be made'").

23  Here, there is nothing to indicate that a reasonably diligent attempt at personal delivery was made

24  prior to resort to substituted service.  Indeed, the proof of service submitted by ESI suggests that

25  no attempts were made.  *See* Dkt. No. 22.

26      Second, even if reasonable diligence were not an issue, ESI has not presented sufficient

27  Case No.: 5:20-cv-06846-EJD

28  ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
    PERSONAL JURISDICTION

1    evidence establishing that it left a copy of the summons and complaint at Lin's "dwelling house,

2    usual place of abode, usual place of business, or usual mailing address."  *See* Cal. Civ. Proc. Code

3    § 415.20(b).  A dwelling house or usual place of abode means the place where the defendant holds

4    out as his or her principal residence, and where he or she is most likely to receive actual notice."

5    *Zirbes v. Stratton*, 187 Cal. App. 3d 1407, 1415-17 (1986).  Although Lin does not contest that he

6    is the owner of the Fremont Residence, he states that he has not lived at the residence or in the

7    United States since 2013 and therefore it is not his dwelling house or usual place of abode.  Decl.

8    of Chin-Hsen Lin ("Lin Decl."), Dkt. No. 36-1 ¶ 4; *see also* Decl. of Derek Lin ("D. Lin Decl."),

9    Dkt. No 49-2 ¶ 11.  ESI offers the following evidence in support of its contention that the Fremont

10    Residence was Lin's place of usual abode in October of 2020:

11    
12            -An invoice from a casino in Macau dating from March 2013 for Lin,
              which lists the Fremont Residence.  Decl. of Iyun Leu ("Leu Decl."),
              Ex. A, Dkt. No. 47-2

13            -An undated blank check from an E*Trade account in Lin's name
14            made out to a casino in Macau listing the Fremont Residence.  Leu
              Decl., Ex. B, Dkt. No. 47-3

15            -An unsigned registered mail receipt from January 2020 for a piece of
16            mail addressed to Lin and sent to the Fremont Residence by ESI's
              chief executive officer Iyun Kevin Leu ("Leu").  Leu Decl., Ex. C,
17            Dkt. No. 47-4.[2]

18            -ESI asserts it has access to Lin's California tax returns from 2011
              and that Lin still had checking accounts with Citibank.  Leu Decl. ¶
19            19.

20            -Lin executed a confidentiality agreement and departure clearance
              checklist in 2017 which listed the Fremont Residence's address and
21            a Taiwanese address.  *See* Compl., Ex A, Dkt. No. 1-1.

22            -Lin emailed ESI's president in March 2020 and again on October 22,
              2020 informing him that he had received registered mail in January
23            2020 and the "litigation document" informing him of the action
              brought by ESI. Decl. of Jennifer Shih ("Shih Decl."), Dkt. No. 47-6,
24            ¶ 4, Ex. B. Lin also told ESI's president in March 2020 that he had
              "returned to Taipei and [was] now under quarantine at home" and

25    _____

26    [2] ESI alleges that Lin signed the receipt of the express mail service on January 25, 2020, but the
     documents submitted by ESI do not establish that Lin was the individual who signed for receipt of
27    the express mail.
     Case No.: 5:20-cv-06846-EJD
28    ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
     PERSONAL JURISDICTION

United States District Court
Northern District of California

provided a hotel address.  *Id.*  In his October 2020 email, Lin provided ESI's president with the mobile phone number he would be using "during [his] stay in Taipei."  *Id.*

Much of this evidence documents Lin's activities and possible location years prior to the attempted service.  Moreover, ESI's belief that Lin was in the United States during 2020 because he informed ESI's president in March 2020 that he was staying at a quarantine hotel" in Taiwan does not provide support for its argument.  *See* Opp'n 7-8.  Lin presents evidence that he had just returned to Taipei from Seoul, South Korea in December 2019 and not the United States.  Decl. of Chin-Hsen Lin in Support of Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction ("Supp. Lin. Decl.), Dkt. No. 49-1 ¶¶ 10-13, Exs. A-B.  Thus, upon review of the allegations and evidence presented, the Court finds that ESI has not presented sufficient evidence establishing that the Fremont Residence was Lin's dwelling house or usual place of abode in October 2020.  Process on Defendant Lin was therefore not properly served through substituted service in California.

In opposition, ESI also argues that service in California was proper under § 413.30 of California Code of Civil Procedure because Lin received actual notice of the complaint.  Opp'n at 4.  Section 413.30 provides that a court "may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party served."  "To satisfy constitutional norms of due process, the alternative method of service must be 'reasonably calculated, under all the circumstances, to apprise the interested parties of the action and afford them an opportunity to present their objections.'"  *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619-YGR, 2012 WL 1038752, at *1 (N.D. Cal. Mar. 27, 2012) (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)).

Courts within this district have authorized service upon individuals via certified mail when personal service was unsuccessful.  For example, a court permitted service by certified mail under California Code of Civil Procedure § 413.30 when the plaintiff alleged five unsuccessful attempts at addresses found in corporate filings and six attempts at a personal address, a gated home with an intercom.  *Lagree Techs., Inc., v. Spartacus 20th L.P.*, No. 17-CV-00795-JST, 2017 WL 1374598,

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION

1    at *1 (N.D. Cal. Apr. 17, 2017).  The Court found that the plaintiff had adequately alleged the

2    defendant "lived in the gated property and evaded process servers."  *Id*. at *3. Therefore, the Court

3    determined that certified mail was a "reasonable alternative likely to provide [defendants] with

4    actual notice."  *Id*.

5         As discussed above, ESI has not shown it made any attempts to serve Lin prior to its

6    substituted service attempt in October 2020.  Still, ESI argues that service on Lin was proper

7    because he received actual notice of this action after ESI completed substituted service at the

8    Fremont Residence and then mailed a copy of service to the same residence.  This however is not

9    sufficient to establish that the service attempt was adequate.  Service of process may not be upheld

10   solely on the ground that the defendant received actual notice when service does not

11   "substantial[ly] comply" with Rule 4.  *Benny*, 799 F.2d at 492; *see also Travelers Cas. and Sur.*

12   *Co. of America*, 551 F.3d at 1135; *American Express Centurion Bank*, 199 Cal. App. 4th at 392

13   ("Actual notice of the action alone is not a substitute for proper service and is not sufficient to

14   confer jurisdiction.").  Although "service of process should be liberally construed to effectuate

15   service and uphold the jurisdiction of the court if actual notice has been received by the

16   defendant," the Court concludes that actual notice is not sufficient here because the service did not

17   substantially comply with Rule 4.  *Summers v. McClanahan*, 140 Cal. App. 4th 403, 410–11

18   (2006) (internal quotation marks and citations omitted); *see also Travelers Cas. And Sur. Co. of*

19   *America*, 551 F.3d at 1135.

20              **2.      Attempt to Serve Process in Taiwan**

21        ESI next claims that it effected service on Lin pursuant to Rule 4(f)(2)(A) when counsel

22   for ESI mailed a copy of the summons and complaint from Irvine, California to an address in

23   Taiwan via Federal Express in January 2021.  *See* Opp'n at 8-9; *see also* Shih Decl. ¶ 5, Ex. C.  In

24   support, ESI presents a shipment tracking document which it argues establishes that Lin received a

25   copy of the summons and complaint on January 13, 2021.  The exhibit ESI relies on lacks a

26   specific address and indicates that it was signed for by "S. Yang."  Shih Decl., Ex. C.  ESI,

27

28

United States District Court
Northern District of California

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF
PERSONAL JURISDICTION

however, does not inform the Court however of who "S. Yang" is or provide additional information about which Taiwanese address it mailed the documents to.  Still, ESI argues that this method of service satisfies Rule 4(f)(2)(A) because it employed a method that is "prescribed by Taiwanese law for service in Taiwan in an action in the Taiwanese courts of general jurisdiction."  Opp'n at 6.  According to ESI, Taiwan does not prohibit service of process by mail and courts in Taiwan will serve litigation documents through the post office.  Opp'n at 9 (citing *Power Integrations, Inc. v. Sys. Gen. Corp.*, No. C 04-02581 JSW, 2004 WL 2806168, at *3 (N.D. Cal. Dec. 7, 2004)).

Setting aside the factual deficiencies in ESI's evidence, the Court finds that its attempt to serve process on Lin in Taiwan was improper.  In *Brockmeyer v. May*, the Ninth Circuit held that Rule 4(f)(2)(A) does not include service by international mail.  383 F.3d at 806.  The court provided several justifications for its conclusion.  First, the court noted that "the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service."  *Id*.  Next, the court noted the "explicit mention of international registered mail in Rule 4(f)(2)(C)(ii) and the absence of any such mention in Rule 4(f)(2)(A)."  *Id*.  Third, the court considered the British Government's preferences regarding service of process.  Specifically, in considering the British Government's laws regarding service of process, the court found that the British Government's desire to exclude international mailing from Rule 4(f)(2)(A) supported its decision that service through international mail to England was not a proper method under the rule.  *Id*. at 807.

Finally, the court cited a string of cases rejecting service of process by international mail under Rule 4(f)(2)(A).  *Id*. (citing *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003)) (rejecting plaintiff's argument that Rule 4(f)(2)(A) authorizes service of process on OPEC by international registered mail sent to Austria); *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 430 (D. Del. 1999) (holding that service of process by international registered mail to Indonesia was not an appropriate method of service under Rule 4(f)(2)(A)); *Dee–K Enterprises Inc. v. Heveafil Sdn. Bhd.*, 174 F.R.D. 376,

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION

United States District Court
Northern District of California

1   378–79 (E.D. Va. 1997) (holding that Rule 4(f)(2)(A) did not authorize service of process by

2   international mail to Indonesia or Malaysia).

3        Accordingly, ESI's attempted service through international mail via Federal Express did

4   not comport with the requirements of Rule 4(f)(2)(A).  ESI's attempt to serve process in Taiwan

5   was thus invalid.  Because ESI's two separate attempts to serve process on Lin were improper, the

6   Court now has the discretion to either quash service of process or dismiss the case.

**B.     Lack of Personal Jurisdiction**

8        As noted above, Lin also moves to dismiss this action against him for lack of personal

9   jurisdiction.  *See* Mot. at 1.  In opposition to Lin's motion, ESI asserts that Lin can be subject to

10  both general jurisdiction and specific jurisdiction in this district based on his contacts with the

11  forum State.  The Court first considers whether the Court can assume general jurisdiction over

12  Lin.

**1.     General Jurisdiction**

14       General jurisdiction refers to personal jurisdiction over a defendant to adjudicate any and

15  all claims against the defendant, regardless of whether those claims arise from the defendant's

16  contacts with the forum.  *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1016

17  (N.D. Cal. 2005). The standard for establishing general jurisdiction is "exacting" and requires that

18  the defendant's contacts be "'so substantial and of such a nature as to justify suit against [the

19  defendant] on causes of action arising from dealings entirely distinct from those activities .'"

20  *Daimler AG*, 571 U.S. at 118 (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

21       The "paradigm" for general jurisdiction over an individual is "the individual's domicile."

22  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).  But courts

23  have, in rare instances, exercised general jurisdiction over an individual when the individual's

24  contacts with a forum are so substantial that "the defendant can be deemed to be 'present' in that

25  forum for all purposes" so that exercising general jurisdiction over the defendant does not offend

26  traditional notions of fair play and substantial justice. *Yahoo! Inc. v. La Ligue Contre Le Racisme*

27

28

United States District Court
Northern District of California

*Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). An individual's frequent visits to a forum, or even his owning property in a forum, do not, alone, justify the exercise of general jurisdiction over him. *See Span Const. & Eng'g, Inc. v. Stephens*, No. CIVF 06–0286 AWIDLB, 2006 WL 1883391, at *5 (E.D. Cal. July 7, 2006).

Lin argues that general jurisdiction over him is improper because he has not lived in California since 2013 and is currently domiciled in Taiwan. *See* Lin. Decl. ¶ 4; D Lin Decl. ¶¶ 3, 10-12. ESI counters, arguing Lin should be subject to general jurisdiction in California because Lin is the owner of the Fremont Residence and still has an outstanding mortgage on the property. Opp'n at 10; Shih Decl., Ex. A. ESI also alleges Lin maintains an E*Trade Financial account, and as of 2011, still had checking accounts with Citibank. Opp'n at 10; Leu Decl. ¶ 19, Ex. B. The Court does not find this sufficient to establish general jurisdiction. As discussed above, property ownership in the forum State can justify the exercise of general jurisdiction over a defendant, but this alone is not enough. "Courts in this Circuit have required far more than property ownership prior to the exercise of general jurisdiction." *Cardenas v. McLane FoodService, Inc.*, No. SACV10473DOCFFMX, 2010 WL 11465450, at *2 (C.D. Cal. Oct. 25, 2010). Moreover, ESI's additional allegations do not connect Lin to California, nor do they concern the relevant time period.[3] As such, Lin's contacts with California are not so substantial as to approximate his physical presence here. Thus, the Court finds Lin's contacts do not meet the "exacting standard" required for this Court to assume general jurisdiction over Lin. *See Schwarzenegger*, 374 F.3d at 804.

### 2.       Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"

---

[3] ESI relies on the declaration of its chief executive officer, Iyun Kevin Leu, and his purported knowledge of Lin's Citibank checking accounts because of his access to Lin's tax returns from 2011. Leu Decl. ¶ 19. The E*Trade account evidence which lists the Fremont Residence address does not include any date.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION

United States District Court
Northern District of California

*Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). There are two principles undergirding the defendant-focused inquiry.  First, the relationship between the nonresident defendant, the forum, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'"  *Id.* (quoting *Walden*, 571 U.S. at 285).

The Ninth Circuit has set forth a three-prong test for the exercise of specific jurisdiction: (1) the defendant either "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the plaintiff's claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is] reasonable."  *Williams*, 851 F.3d at 1023 (alterations in original) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  The burden is on the plaintiff to establish the first two prongs.  *Axiom Foods, Inc.*, 874 F.3d at 1068 (citing *Schwarzenegger*, 374 F.3d at 802).  If the plaintiff satisfies the first two prongs then the defendant must present a "'compelling case' that exercise of jurisdiction would not be reasonable."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

With respect to the first prong, the Ninth Circuit has said that "purposeful availment" and "purposeful direction" are "two distinct concepts."  *Schwarzenegger*, 374 F.3d at 802 (acknowledging that the Ninth Circuit has sometimes "use[d] the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction").  In tort cases, the Court typically inquires whether a defendant "purposefully direct[s] his activities" at the forum State.  *Yahoo!*, 433 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at 803).  In contract cases, the Court inquires whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s] [a] transaction" in the forum, focusing on activities such as

United States District Court
Northern District of California

delivering goods or executing a contract. *Id.* Because ESI alleges both trade secret misappropriation and breach of contract claims, the Court analyzes the "purposeful availment" prong for both. *See Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18-CV-05031-EMC, 2019 WL 331161, at *4 (N.D. Cal. Jan. 25, 2019) (finding a purposeful direction analysis appropriate because trade secret misappropriation claims "are based in tort, not contract.").

### a.     Purposeful Direction

For ESI's trade secret misappropriation claims, the Court employs the purposeful direction analysis, also known as the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods, Inc.*, 874 F.3d at 1069. This test requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum State, (3) causing harm that the defendant knows is likely to be suffered in the forum State." *Id.* (internal quotation marks and citation omitted). ESI contends that the trade secret misappropriation claims asserted against Lin are based on direct contacts that Lin had with California, but the argument is not persuasive for several reasons.

First, the theft of trade secrets itself appears to have taken place in Taiwan, not California. The second prong of the "effects test" requires that the defendant act in a way that is wrongful and targeted at the forum State. *See Dole Food Co.*, 303 F.3d at 1111. *Under Walden v. Fiore*, 571 U.S. 277 (2014), the Court's analysis must take into consideration the defendant's contacts with California, not simply the effects of the contacts with the Plaintiff. *Walden* rejected the Ninth Circuit's then-existing view that knowledge of a plaintiff's forum connections – combined with foreseeable effects in that forum – are enough to constitute "minimum contacts." *Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State . . .") (emphasis added). Instead, courts should focus "on the relationship among the defendant, the forum, and the litigation" and examine the "various contacts" the defendants have with the forum State. *Id.* at 277, 287.

In opposition, ESI argues that the claims arise out of Lin's forum related activities in

California because when trade secrets were allegedly misappropriated, Lin was working remotely from California.  Opp'n at 10.  The allegations in the complaint, however, are contradictory.  ESI, for example, alleges in its complaint that Lin "visited ESI's offices [located in Taiwan] after hours during the middle of the night and the weekends and unlawfully and without authorization downloaded ESI's [t]rade [s]ecrets."  Compl. ¶ 43.  ESI also alleges that Lin gained access to ESI's server and downloaded materials such as source code, architectural documents, and patent invention disclosure documents in 2011 and 2012.  *Id*. ¶¶ 45, 50.  Moreover, Lin has stated that all of the work he performed for ESI was performed in Taiwan and that all ESI offices, facilities, and the server referenced in the complaint are located in Taiwan.  Lin Decl. 6-8.  In this instance, ESI does not make a prima facie showing over Lin.  ESI has not alleged it has any connections with California and given the evidence presented, there is no reasonable way this Court can construe Lin's alleged wrongful actions as targeted at the forum State.

Second, ESI attempts to argue that there are California contacts because Lin conspired with Anchor and its principals to transmit ESI's trade secrets to Anchor, a company with its principal place of business in California.  Opp'n at 10.  The Ninth Circuit, however, has declined to find jurisdiction based on a "bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction" of this Court.  *Chirila v. Conforte*, 47 F. App'x 838, 842-43 (9th Cir. 2002) (holding that knowledge and consent of unlawful activity in the forum State do not constitute intentional acts committed in the forum State.).  Here, ESI makes a bare allegation that Lin entered into a conspiracy with Anchor and its principals to make use of ESI trade secrets and bring the trade secrets to Anchor.  Opp'n at 10; *see also* SAC ¶¶ 69, 84.  Such allegations are the kind of knowledge and consent of intentional acts allegedly committed in the forum State that do not confer jurisdiction without "something more" that shows Lin targeted the forum State itself.  *Id*.

Accordingly, ESI has failed to show how Lin purposefully directed his conduct at California to the extent that this Court can hale him into the forum State without violating due

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION

16

1    process.

2                        **b.**    **Purposeful Availment**

3            For ESI's breach of contract claim, a "purposeful availment" analysis is relevant here.  "To

4    be subject to specific jurisdiction, a defendant must have 'purposefully avail[ed] itself of the

5    privilege of conducting activities within the forum State, thus invoking the benefits and

6    protections of its laws.'"  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Burger*

7    *King Corp.*, 471 U.S. at 475).  "[T]he 'purposeful availment' requirement is satisfied if the

8    defendant has taken deliberate action within the forum State or if he has created continuing

9    obligations to forum residents."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citing

10   *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)).

11           As mentioned, "[a] showing that a defendant purposefully availed himself of the privilege

12   of doing business in a forum State typically consists of evidence of the defendant's actions in the

13   forum, such as executing or performing a contract there."  *Schwarzenegger*, 374 F.3d at 802.  Still,

14   the mere existence of a contract does not necessarily constitute sufficient minimum contacts for

15   jurisdiction.  *Burger King Corp.*, 471 U.S. at 478.  Rather, a court must look to "prior negotiations

16   and contemplated future consequences, along with the terms of the contract and the parties' actual

17   course of dealing to determine if the defendant's contacts are 'substantial' and not merely

18   'random, fortuitous, or attenuated.'"  *Id.* at 479, 480 (internal quotations omitted).

19           The focus of ESI's breach of contract claim is the Departure Agreement Lin signed when

20   he resigned from the company in 2017.  *See* Compl. ¶ 58; Lin Decl. ¶ 9.  Specifically, the

21   Departure Agreement asked Lin to verify whether he had taken any source code and agree to not

22   disclose any of ESI's trade secrets or intellectual property.  Compl. ¶ 61.  For jurisdiction

23   purposes, however, ESI does not discuss the necessary additional substantial contacts with

24   California aside from the fortuitous fact that Anchor's principal place of business is in California.

25   The work Lin did for ESI was performed in Taiwan, where Lin was based, and where the alleged

26   theft of trade secrets took place.  Lin Decl. ¶ 6-9.  Accordingly, the Court finds the evidence in the

27

28

1   record does not demonstrate that Lin "has taken deliberate action within [California and] has [not]

2   created continuing obligations to [California] residents." *Ballard*, 65 F.3d at 1498 (citing *Hirsch*,

3   800 F.2d at 1478.

4         Because ESI has not met its burden of establishing that Lin "purposely directed" or

5   "purposefully availed" himself to California, ESI has failed to establish a prima facie case that Lin

6   is subject to specific personal jurisdiction in this Court.

7   **IV.     CONCLUSION**

8         In light of the foregoing, Lin's motion to dismiss is **GRANTED.**  ESI may be able to

9   furnish additional allegations and arguments with respect to general jurisdiction upon amendment.

10  Thus, the dismissal shall be with leave to amend.  Any amended complaint is due within **thirty**

11  **(30) days.**  ESI is directed to file a redlined complaint as an attachment to its amended complaint.

12  ESI shall also ensure that proper service of process as to Lin is executed.

13        **IT IS SO ORDERED.**

14  Dated: July 19, 2021

15

16  _____

17  EDWARD J. DAVILA
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California