1

2

3                     UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5                            SAN JOSE DIVISION

6

7    ELITE SEMICONDUCTOR, INC.,              Case No.  5:20-cv-06846-EJD

            Plaintiff,
8                                            **ORDER GRANTING DEFENDANTS
                                             ANCHOR SEMICONDUCTOR, INC.
9        v.                                  AND CHENMIN HU'S  MOTION
                                             TO DISMISS**
10   ANCHOR SEMICONDUCTOR, INC., et al.,
                                             Re: Dkt. No. 43
            Defendants.
11

12          In this action for trade secret misappropriation, Defendants Anchor Semiconductor, Inc.

13   ("Anchor") and Dr. Chenmin Hu ("Dr. Hu") (collectively, the "Anchor Defendants") move to

14   dismiss Elite Semiconductor, Inc.'s ("ESI") fourth claim for tortious interference with contract and

15   fifth claim for conversion.  *See* Dkt. No. 43, ("Mot. to Dismiss").  ESI filed an opposition, Dkt.

16   No. 46 ("Opp'n"), and the Anchor Defendants filed a reply, Dkt. No. 48 ("Reply iso MTD").  For

17   reasons set forth below, the Anchor Defendants' motion is **GRANTED**.[1]

18   **I.   BACKGROUND**

19          ESI is a Taiwanese based software company known for its semiconductor manufacturing

20   verification tools.  Complaint ("Compl."), Dkt. No. 1 ¶ 15.  ESI has developed defect

21   identification technology which allows for defects in the inspection image to be reviewed

22   automatically by a machine, system, or computer such that the defect judgment can be achieved

23   accurately in a small period of time.  *Id*. ¶ 18.

24          To protect its work in the field, ESI has secured patent protection for its inventions and

25

26   ─────────────────────

27   [1] The Court took this motion under submission without oral argument pursuant to Civil Local Rule
     7-1(b).
     Case No.: 5:20-cv-06846-EJD
28   ORDER GRANTING DEFENDANTS ANCHOR SEMICONDUCTOR, INC. AND CHENMIN
     HU'S MOTION TO DISMISS
                                            1

United States District Court
Northern District of California

1    enacted and followed internal and external security measures to protect the company's trade

2    secrets.  *Id.* ¶ 19.  ESI is the owner of all rights and title to fifteen patents including U.S. Patent

3    Nos. 8,095,895; 8,312,401; 8,473,223; and 9,129,237 ("ESI Patents").  *Id.*  For its trade secrets,

4    ESI's security measures included both physical security for its facilities and electronic measures to

5    limit access to its valuable trade secret information.  *Id.* ¶ 35.  ESI set up specific username and

6    password controls for each authorized user to ensure compliance with electronic security

7    measures.  *Id.*  ESI also implemented additional security measures for accessing ESI source code,

8    such as restricting access to only select individuals and creating an intellectual property

9    management system.  *Id.* ¶¶ 39, 41.

10        In March 2009, ESI hired Defendant Chin-Hsen Lin ("Lin") as its chief technology officer

11    ("CTO").  *Id.* ¶ 24.  ESI alleges that as CTO, Lin had access to ESI's electronic source code

12    repository and the electronic platforms where ESI trade secrets were stored.  *Id.* ¶ 25, 31.  This

13    meant Lin had access to ESI's confidential software architectural plans, patent invention

14    disclosure documents, product plans and strategies, and the company's trade secret files.  *Id.* ¶¶

15    25, 27.  In January 2010, ESI began creating the Killer Defect Screen System which would

16    become a primary product for the company.  *Id.* ¶ 30.  Lin helped create ESI's trade secret

17    software code for the Killer Defect Screen System and continued to have access to all electronic

18    and paper records related to ESI's trade secrets.  *Id.*  While serving as CTO, however, ESI believes

19    Lin was "secretly hired" by Anchor.  *Id.* ¶ 24.  ESI contends the Anchor Defendants made this hire

20    so Lin could maintain access to and take ESI's intellectual property for Anchor's benefit.  *Id.* ¶ 68.

21        ESI notes that in April 2011, Lin gained access to and made a copy of patent invention

22    disclosure documents related to four of the company's U.S. patents so that he could transmit the

23    disclosure documents to Anchor.  *Id.* ¶ 50.  After receiving the patent invention disclosure

24    documents, Anchor allegedly copied "ESI's technology" described in the documents and

25    incorporated the information in its own U.S. Patent Application, which Anchor filed in April

26    2011.  *Id.* ¶ 86.  ESI also alleges Lin visited its offices after hours in June 2012 and several times

27

28    Case No.: 5:20-cv-06846-EJD
      ORDER GRANTING DEFENDANTS ANCHOR SEMICONDUCTOR, INC. AND CHENMIN
      HU'S MOTION TO DISMISS

United States District Court
Northern District of California

1  thereafter to download source code and system architecture documents from the ESI server.  *Id.* ¶¶

2  45, 52.  According to ESI, Lin did this to transfer ESI's trade secrets to the Anchor Defendants

3  who knew of and encouraged the taking and using of ESI's trade secrets to develop its own defect

4  detection products.  *Id.* ¶¶ 46, 67.  ESI claims Lin and the Anchor Defendants made direct and

5  deliberate use of ESI's trade secrets in order to develop Anchor's competing products, including

6  its HPA detection tool.  *Id.* ¶¶ 70, 76.  Anchor's use of ESI's trade secrets is alleged to have

7  dramatically sped up the timeline for the development and production of its products.  *Id.* ¶ 70.

8  Lin served as ESI's CTO until January of 2013, when he transitioned to a senior consultant

9  position within the company.  *Id.*  ¶ 24.  According to ESI, Lin left his position as CTO so "he

10  could join Defendant Anchor and pillage trade secret information from ESI. . . ."  *Id.* ¶ 83.  He

11  continued to serve as a senior consultant until January of 2017 when he resigned.  *Id.* ¶ 24.  As

12  part of his resignation, Lin agreed to and signed a Confidentiality Agreement and Departure

13  Clearance Checklist (collectively "Departure Agreement") which asked Lin to indicate whether he

14  had taken any source code.  *Id.* ¶ 61.  By signing, Lin asserted that he had not taken any ESI

15  source code with him and agreed to not disclose any of ESI's trade secrets or intellectual property.

16  *Id.*

17  ESI now asserts claims for (1) misappropriation of trade secrets in violation of California's

18  Uniform Trade Secrets Act (CUTSA), California Civil Code § 3426 *et seq*. against all defendants,

19  (2) violation of the Defense of Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. against all Defendants,

20  (3) breach of contract against Lin, (4) tortious interference with contract against the Anchor

21  Defendants, and (5) conversion against all Defendants.

## II.  LEGAL STANDARDS

### A.  Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

24  Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short

25  and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that

26  fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.    Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading

United States District Court
Northern District of California

1    could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks

2    omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment

3    would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party

4    has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

### A.    CUTSA Supersession Standard

The Anchor Defendants move to dismiss ESI's common law claims for tortious

interference with contract and conversion on the grounds that they are superseded by CUTSA.

CUTSA permits civil recovery of "actual loss" or other injury caused by the

misappropriation of trade secrets.  *See* Cal. Civ. Code § 3426.3.  It defines "misappropriation" as

the improper acquisition, or non-consensual disclosure or use of another's trade secret.  Cal. Civ.

Code § 3426.1(b).  "Trade secret" is defined as information that derives "independent economic

value" from its confidentiality and "[i]s the subject of efforts that are reasonable under the

circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

CUTSA includes a savings clause that "preempt[s] claims based on the same nucleus of

facts as trade secret misappropriation."  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations,*

*Inc.*, 171 Cal. App. 4th 939, 962 (2009); *see also* Cal. Civ. Code § 3426.7(b).  The savings clause

does not supersede "contractual remedies" and civil remedies "that are not based upon

misappropriation of a trade secret."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233

(2010), *disapproved on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011).

Following the nucleus of facts test, numerous courts have held that CUTSA supersedes

other state-law claims where the wrongdoing alleged is the misappropriation of trade secret

information.  *See, e.g., SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL

6160472, at *13 (N.D. Cal. Dec. 11, 2012) (dismissing common law unfair competition claims as

superseded by CUTSA where "while stated in various ways, each [claim] alleges in essence that

Defendants [misappropriated] . . . proprietary information"); *K.C. Multimedia, Inc.*, 171 Cal. App.

United States District Court
Northern District of California

1    4th at 960 (holding breach of confidence, interference with contract, and common law unfair

2    competition claims were superseded because "the conduct at the heart of" the common law and

3    CUTSA claims was "the asserted disclosure of trade secrets").  In other words, common law tort

4    claims are displaced by CUTSA where they "do not genuinely allege 'alternative legal theories'

5    but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as

6    something else." *Silvaco*, 184 Cal. App. 4th at 240.  However, a common law tort claim is not

7    displaced by CUTSA where the alleged wrongdoing "is not based on the existence of a trade

8    secret." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013).  Additionally,

9    where a cause of action also arises from misconduct besides misappropriation, it can survive

10   CUTSA supersession.  *See Loop Al Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2015 WL

11   5158461, at *3 (N.D. Cal. Sept. 2, 2015) (finding, among other things, that the operative

12   complaint adequately alleged that defendant fraudulently induced plaintiff to offer defendant

13   employment based on misrepresentations).

14         Although the California Supreme Court has not clearly defined the scope of CUTSA's

15   supersession of claims arising from the alleged misappropriation of non-trade secret information,

16   "the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes

17   claims based on the misappropriation of information that does not satisfy the definition of trade

18   secret under CUTSA." *SunPower Corp.*, 2012 WL 6160472, at *6; *see also Heller v. Cepia,

19   L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (holding that

20   common law claims premised on "the wrongful taking and use of confidential business and

21   proprietary information, regardless of whether such information constitutes trade secrets, are

22   superseded by the CUTSA"); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal.

23   2011) ("[T]he Court concludes that CUTSA supersedes claims based on the misappropriation of

24   confidential information, whether or not that information meets the statutory definition of a trade

25   secret.").  Although a handful of decisions have held otherwise, the substantial majority of

26   contrary decisions were either decided before the California Court of Appeals' *Silvaco* decision or

27

28

1  failed to consider *Silvaco* entirely.  *See SunPower Corp.*, 2012 WL 6160472, at \*7 (collecting

2  cases).

3          **i.**     **ESI's Tortious Interference with Contract Claim**

4        The Court finds that ESI's tortious interference with contract claim is superseded by the

5  CUTSA because it significantly overlaps with ESI's misappropriation of trade secrets claims.[2]

6  The crux of ESI's tortious interference claim is that the Anchor Defendants "aided, abetted,

7  encouraged, and assisted Defendant Lin to use, take, or disclose [ESI's] confidential proprietary

8  information" and "[t]rade [s]ecrets."  Compl. ¶¶ 131, 134.  ESI alleges that to accomplish this, the

9  Anchor Defendants interfered with the Confidential Agreement between Lin and ESI "caus[ing]

10  Defendant Lin to breach the Confidentiality Agreement by disclosing confidential information to

11  one or more third parties, and/or to use confidential information for purposes not permitted under

12  the Confidentiality Agreement."  *Id*. ¶ 132.

13        ESI posits that the CUTSA does not supersede its tortious interference claim because the

14  Anchor Defendants not only misappropriated ESI's trade secrets but also other confidential

15  information that does not meet the definition of "Trade secret."  Opp'n at 4-5.  According to ESI,

16  because Lin's Confidentiality Agreement covers intellectual property and "business secrets" which

17  may be classified as confidential but not be considered trade secrets, the wrongdoing alleged is

18  distinct from its misappropriation claims.  *Id*.  ESI contends that its tortious interference claim is

19  also distinct because it "specifically refers to the Confidentiality Agreement [wherein] Defendant

20  Lin agreed not to disclose any of [ESI's] trade secret[s] and intellectual property."  *Id.* at 5.

21        ESI's arguments are unavailing.  The gravamen of the wrongful conduct asserted here is

22  the acquisition and use of ESI's trade secrets and separate confidential information.  This falls

23  directly within the CUTSA's definition of misappropriation.  Cal. Civ. Code § 3426.1(a)-(b)

24

25  _____

  [2] The parties use the term "preempted."  In *Silvaco Data Systems v. Intel Corp.*, "[t]he [California]

26  Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by

another."  184 Cal. App. 4th at 232 n.14 (internal quotations and citations omitted).  The *Silvaco*

27  Court went on to state that "[f]or present purposes we favor [the term] 'supersede[.]'"  *Id*.  Where

applicable, the Court follows *Silvaco* and uses the term 'supersede.'

Case No.: 5:20-cv-06846-EJD

28  ORDER GRANTING DEFENDANTS ANCHOR SEMICONDUCTOR, INC. AND CHENMIN
HU'S MOTION TO DISMISS

United States District Court
Northern District of California

(misappropriation involves acquisition, disclosure, or use of a trade secret by improper means).

The conduct alleged also falls within the CUTSA's definition of acquiring a trade secret by

"improper means," which includes "breach or inducement of a breach of a duty to maintain

secrecy." *Id.*; *see also K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 960-61 (interpreting the

CUTSA to supersede claim for tortious interference with contract); *Gabriel Techs. Corp. v.*

*Qualcomm, Inc.*, No. 08 CV 1992 MM (POR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009)

(same) (citation omitted). Moreover, "the majority of district courts that have considered *Silvaco*

have held that CUTSA supersedes claims based on the misappropriation of information that does

not satisfy the definition of trade secret under CUTSA." *SunPower Corp.*, 2012 WL 6160472, at

*6 (collecting cases); *see also Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2016 WL

199796, at *8 (N.D. Cal. Jan. 16, 2016) ("to the extent Total Recall's claims rely on the alleged

misappropriation of Confidential Information, any such claims are superseded by CUTSA").

Thus, the Court finds that ESI's claim based on its additional non-trade secret proprietary

information is superseded by CUTSA.

The Court also rejects ESI's argument that its tortious interference claim alleges

wrongdoing distinct from its CUTSA claim because of its reference to the Confidentiality

Agreement. As discussed above, the wrongdoing ESI alleges in both its tortious interference with

contract and CUTSA claims is the misappropriation of ESI's trade secrets and confidential

information. *See* Compl. ¶ 132 ("Defendants . . . coordinated and orchestrated Defendant Lin to

cause Defendant Lin to breach the Confidentiality Agreement by disclosing confidential

information to one or more third parties, and/or to use confidential information for purposes not

permitted under the Confidentiality Agreement."); ¶ 134 ("Defendants . . . participated in this

conduct in order to shortcut the hard work of building [ESI's] source code and software

architecture. In doing so, [Dr. Hu] was able to acquire valuable and confidential ESI business

information to help Defendant Anchor roll out HPA product in record time."). Thus, "stripped of

facts supporting trade secret misappropriation," the remaining allegations do not constitute any

1   independent injury and therefore the claim is superseded by CUTSA.  *Waymo LLC v. Uber Techs.,*

2   *Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).

3          Because ESI's claim for tortious interference is superseded by CUTSA, the Court

4   GRANTS the Anchor Defendants' motion to dismiss this claim.  Furthermore, because the Court

5   finds that amendment of this claim would be futile in light of the supersession, the Court DENIES

6   ESI's request for leave to amend this claim.  *See Leadsinger*, 512 F.3d at 532.

7              **ii.    ESI's Conversion Claim**

8          ESI next alleges in its conversion claim that Defendants "intentionally and substantially

9   interfered with ESI's trade secrets by stealing ESI's invention disclosures and including [them] in

10  Anchor's Patent Application . . ., which later was also included in Anchor's HPA 2013 product."

11  ¶ 138.  A claim for conversion must be based on "an actual interference with [the plaintiff's]

12  ownership or right of possession."  *Moore v. Regents of Univ. of California*, 51 Cal. 3d 120, 136

13  (1990).  Conversion "traditionally required a taking of tangible property, and thus was not

14  available to remedy the misappropriation of something like a trade secret."  *Silvaco Data Systems*,

15  184 Cal. App. 4th at 239.

16         Under *Silvaco*, if the only property identified in the complaint is confidential or proprietary

17  information, and the only basis for any property right is trade secrets law, then a conversion claim

18  predicated on the theft of that property is superseded.  *See Language Line Servs., Inc. v. Language*

19  *Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 780 (N.D. Cal. 2013) (citing *Silvaco Data Systems*, 184

20  Cal. App. 4th at 238).  Courts have found that this rule applies even if the information at issue is

21  embodied in tangible property such as documents, computer disks or physical models, unless these

22  physical objects have "some value apart from the information they embod[y]."  *Mattel, Inc*, 782 F.

23  Supp. 2d at 997 (holding that conversion claim "predicated upon the physical documents allegedly

24  misappropriated by [the defendant] [was superseded by the CUTSA] because [the defendant]

25  [could not] show that the documents had any value 'apart from the information contained

26  therein.'")(citing *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 973 (N.D. Ill.

27

28  Case No.: 5:20-cv-06846-EJD
    ORDER GRANTING DEFENDANTS ANCHOR SEMICONDUCTOR, INC. AND CHENMIN
    HU'S MOTION TO DISMISS

United States District Court
Northern District of California

1    2000)).

2         Here, ESI has not identified in its conversion claim any value the patent invention

3    disclosure documents have apart from the confidential information they contain.  ESI may not

4    evade CUTSA supersession simply by alleging that the confidential information at issue was

5    written in a document where there are not allegations suggesting that the tangible property

6    described in the complaint had any value apart from the confidential information disclosed in it.

7    Still, ESI argues that its allegations survive CUTSA supersession because the patent invention

8    disclosure documents are "confidential and proprietary information that is a protectable interest

9    other than a trade secret."  Opp'n at 7.  Additionally, ESI claims that its conversion claim does not

10   arise from the same core of operative facts as its trade secret claims and thus it survives CUTSA

11   supersession.

12        ESI's arguments are not persuasive.  As explained, California courts have rejected the

13   argument that conversion claims are not superseded by the CUTSA when the information is not a

14   trade secret but still valuable.  *See Silvaco Data Systems*, 184 Cal. App. 4th at 239 ("We

15   emphatically reject the . . . suggestion that [CUTSA] was not intended to supersede 'common law

16   conversion claims based on the taking of information that, though not a trade secret, was

17   nonetheless of value of the claimant.'").  Moreover, the unlawful conduct alleged in ESI's

18   conversion claim is not distinct from the unlawful conduct alleged in the CUTSA claim.  *See*

19   Compl. ¶ 137 ("[ESI] was in possession of and own [ESI's] trade secrets."); ¶ ("Defendants

20   intentionally and substantially interfered with [ESI's] trade secrets . . . ."); ¶ 139 ("Plaintiff did not

21   consent to Defendants' misappropriation of trade secrets."); ¶ 140 ("Defendants . . . directed and

22   coordinated with Defendant Lin to acquire ESI's trade secret improperly . . . ."); ¶ 143

23   ("Defendants' unlawful misappropriation has damages ESI. . . .").

24        Therefore, the Court concludes that ESI's conversion claim, as currently alleged is

25   superseded by CUTSA and is subject to dismissal.  Although the Anchor Defendants ask the Court

26   to dismiss ESI's conversion claim with prejudice, the Court declines to do so.  Rather, ESI will be

27

28   Case No.: 5:20-cv-06846-EJD
     ORDER GRANTING DEFENDANTS ANCHOR SEMICONDUCTOR, INC. AND CHENMIN
     HU'S MOTION TO DISMISS

given the opportunity to amend its conversion claim to address the specific deficiencies that this Court has identified.

### IV.   CONCLUSION

For the foregoing reasons, the motion is **GRANTED**.  ESI's fourth claim for tortious interference with contact is **DISMISSED** without leave to amend.  ESI's fifth claim for conversion is **DISMISSED** with leave to amend.  Should ESI choose to amend its conversion claim, ESI must do so within **thirty (30) days** of this Order.  ESI is directed to file a redlined complaint as an attachment to its amended complaint.

**IT IS SO ORDERED.**

Dated: July 19, 2021

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California