UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELITE SEMICONDUCTOR, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANCHOR SEMICONDUCTOR, INC., et al.,<br><br>　　　　Defendants. | Case No.　5:20-cv-06846-EJD<br><br>**ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. Nos. 109, 125 |

Elite Semiconductor, Inc. ("ESI") brings this suit against its former employee Chin-Hsen Lin ("Lin"), Anchor Semiconductor, Inc. ("Anchor"), and the Chairman and President of Anchor China, Chenmin Hu ("Hu"), in connection with the alleged misappropriation of ESI's trade secrets. Anchor and Hu ("the Anchor Defendants") move to dismiss ESI's fourth cause of action for conversion pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 109 ("MTD"). ESI filed an opposition, Dkt. No. 113 ("Opp."), and the Anchor Defendants filed a reply, Dkt. No. 115 ("Reply"). Defendant Lin separately moves to dismiss the claims asserted against him pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5). *See* Dkt. No. 125 ("PJ MTD"). ESI filed an opposition, Dkt. No. 132 ("PJ Opp."), and Lin filed a reply, Dkt. No. 137 ("PJ Reply"). The Court **GRANTS** the respective defendants' motions to dismiss.[1]

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), the Court finds these motions suitable for consideration without oral argument.
Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
1

## I. BACKGROUND

ESI is a Taiwanese based software company known for its semiconductor manufacturing verification tools. First Amended Complaint ("FAC"), Dkt. No. 101 ¶ 33. ESI has developed defect identification technology which allows for defects in an inspection image to be reviewed automatically by a machine, system, or computer such that a defect judgment can be achieved accurately in a small period of time. FAC ¶¶ 33–36.

To protect its work, ESI secured patent protection for its inventions and enacted and followed internal and external security measures to protect the company's trade secrets. FAC ¶ 37. ESI is the owner of all rights and title to fifteen patents, including U.S. Patent Nos. 8,095,895; 8,312,401; 8,473,223; and 9,129,237 ("the ESI Patents"). FAC ¶ 37. For its trade secrets, ESI's security measures include both physical security for its facilities and electronic measures to limit access to its trade secret information. FAC ¶ 53. ESI set up specific username and password controls for each authorized user to ensure compliance with electronic security measures. FAC ¶ 53. ESI also implemented additional security measures for accessing ESI source code, such as restricting access to three top company executives and creating an intellectual property management system. FAC ¶¶ 57, 59.

In March 2009, ESI hired Defendant Lin as its chief technology officer ("CTO"). FAC ¶ 42. ESI alleges that as CTO, Lin had access to ESI's trade secrets because, by virtue of his position, he was able to access ESI's electronic source code repository, confidential software architectural plans, and patent invention disclosures. FAC ¶¶ 43, 45 ("Defendant Lin had access to all of ESI's most sensitive and highly confidential projects, products, and all of the company's trade secret electronic and paper files."). In January 2010, ESI began creating the Killer Defect Screen System, which would become a primary product for the company. FAC ¶ 48. Lin helped create ESI's trade secret software code for the Killer Defect Screen System and continued to have access to all electronic and paper records related to ESI's trade secrets. FAC ¶¶ 48–49. However, ESI maintains that Lin did not keep the company's innovations confidential. While serving as

CTO, ESI believes that Lin was "secretly hired" by Anchor, a competitor of ESI. FAC ¶¶ 7, 30, 69. ESI contends that the Anchor Defendants hired Lin so that they could access and steal ESI's intellectual property. FAC ¶ 69.

ESI alleges that in April 2011, Lin accessed and made illicit copies of patent invention disclosure documents related to the ESI Patents so that he could transmit the disclosure documents to Anchor. FAC ¶¶ 68–69, 88. After receiving the patent invention disclosure documents, Anchor allegedly copied the ESI technology described in the documents and incorporated the information into its own U.S. Patent Application, which Anchor filed in April 2011. FAC ¶ 94. ESI also alleges that Lin visited its Taiwan offices after hours in June 2012 and several times thereafter to download source code and system architecture documents from the ESI server, which he then transferred from his ESI laptop to Anchor or to an external device or system. FAC ¶¶ 1, 61–64. The Anchor Defendants allegedly encouraged Lin to take ESI's trade secrets to aid Anchor in developing defect detection products. FAC ¶¶ 70, 86, 102. To hide his misconduct, Defendant Lin purposely damaged his ESI laptop. FAC ¶¶ 65–66. ESI claims Lin and the Anchor Defendants made direct and deliberate use of ESI's trade secrets to develop Anchor's competing products, including its HPA detection tool. FAC ¶¶ 88, 91, 100. Anchor's use of ESI's trade secrets dramatically sped up the timeline for the development and production of Anchor's competing products. FAC ¶ 88.

Lin served as ESI's CTO until January 2013, when he transitioned to a senior consultant position in the company. FAC ¶ 101. During Lin's employment, he stayed at a dormitory room in Taiwan that was provided to him by ESI. FAC ¶ 44. ESI contends that Lin left his position so that he "could join Defendant Anchor and pillage trade secret information from ESI to Defendant Anchor." FAC ¶ 101. Lin served as a senior consultant from January 2013 until January 2017, when he resigned. FAC ¶ 76. As part of his resignation, Lin agreed to and signed a Confidentiality Agreement and Departure Clearance Checklist (collectively "Departure Agreement") which asked Lin to indicate whether he had taken any source code. FAC ¶ 79. By

signing, Lin asserted that he had not taken any ESI source code and that he would not disclose any of ESI's trade secrets or intellectual property. FAC ¶ 79.

On July 19, 2021, this Court granted Anchor Defendants' motion to dismiss EMI's tortious interference and conversion claims and Lin's motion to dismiss for insufficient service of process and lack of personal jurisdiction. *See* Dkt. No. 94 ("Order Granting Anchor's MTD"), Dkt. No. 93 ("Order Granting Lin's MTD").

The Court dismissed without leave to amend ESI's tortious interference claim after determining that it was superseded by the California's Uniform Trade Secrets Act ("CUTSA"). Order Granting Anchor's MTD at 7, 11. The Court similarly concluded that ESI's conversion claim was superseded by CUTSA but allowed ESI the opportunity to amend the conversion claim. *Id.* at 10–11.

In a separate order, the Court determined that Lin had not been properly served with process as required by Federal Rule of Civil Procedure 4(f). Order Granting Lin's MTD at 12. The Court also concluded that it lacked both specific and general personal jurisdiction over Lin. *Id.* at 12–18. The Court allowed ESI to amend its complaint "with respect to general jurisdiction," but did not allow amendment for specific jurisdiction. *Id.* at 18. To the extent ESI asks the Court to reconsider or amend its prior ruling as to the lack of specific personal jurisdiction, the Court declines and directs the Parties to pages 13 through 18 of its earlier order for an analysis of why the Court lacks specific personal jurisdiction over Defendant Lin.

In its first amended complaint, ESI asserts claims for (1) misappropriation of trade secrets in violation of CUTSA, California Civil Code § 3426 *et seq.* against all defendants; (2) violation of the Defense of Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* against all defendants; (3) breach of contract against Defendant Lin; and (4) conversion against all defendants.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
4

## II. DISCUSSION

### A. Anchor Defendants' Motion to Dismiss

#### 1. Legal Standard

##### a. Rule 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not accept as true allegations contradicted by judicially noticeable facts, see *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### b. CUTSA Preemption Standard

CUTSA permits civil recovery of "actual loss" or other injury caused by the misappropriation of trade secrets. *See* Cal. Civ. Code § 3426.3. It defines "misappropriation" as the improper acquisition, or non-consensual disclosure or use of another's trade secret. *Id.* § 3426.1(b).

CUTSA includes a savings clause that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009); *see also* Cal. Civ. Code § 3426.7(b). The savings clause does not supersede "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2010).

Numerous courts have held that CUTSA supersedes other state-law claims where the wrongdoing alleged is the misappropriation of trade secret information. *See, e.g.*, *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012) ("[T]he Court concludes that the wrongdoing alleged in connection with each of the Non-Trade Secret Claims is in essence the same wrongdoing as was alleged in connection with SunPower's Trade Secret Claim. The Non-Trade Secret Claims are therefore supersed[ed]."). However, a common law tort claim is not displaced by CUTSA where the alleged wrongdoing "is not based on the existence of a trade secret." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013); *see also Loop AI Labs Inc. v. Gatti*, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (declining to apply CUTSA's savings clause to the plaintiff's conversion claim because the claim was based on the employee's "alleged theft of tangible property").

Although the California Supreme Court has not clearly defined the scope of CUTSA's supersession of claims arising from the alleged misappropriation of non-trade secret information, "the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

6

secret under CUTSA." *SunPower Corp.*, 2012 WL 6160472, at *6; *see also Heller v. Cepia, L.L.C.*, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (holding that common law claims premised on "the wrongful taking and use of confidential business and proprietary information, regardless of whether such information constitutes trade secrets, are superseded by the CUTSA"); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[T]he Court concludes that CUTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.")

### 2. Analysis

ESI alleges in its amended conversion claim that Anchor Defendants "intentionally and substantially interfered with ESI's exclusive ownership of the Products and Tools by stealing ESI's invention disclosures and including it in Anchor's [patent applications]." FAC ¶¶ 156–57; *see also* FAC ¶ 156 (defining "Products and Tools" as the ESI "software platform and software tools that are essential to inline defect CAA analysis"). ESI maintains that these "Products and Tools" have value independent from related confidential information because they function as an "operative, functioning ecosystem that is adaptable and can be applied to potential customers' semiconductor manufacturing processes." FAC ¶ 161 ("Confidential information alone does not provide this.").

Under *Silvaco*, if the only property identified in the complaint is confidential or proprietary information, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is superseded. *See Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 780 (N.D. Cal. 2013) (citing *Silvaco*, 184 Cal. App. 4th at 238). This rule applies even if the information at issue is embodied in tangible property such as documents, computer disks or physical models, unless these physical objects have "some value apart from the information they embod[y]." *Mattel, Inc.*, 782 F. Supp. 2d at 997 (holding that conversion claim "predicated upon the physical documents allegedly misappropriated by [the defendant] [was superseded by the CUTSA] because [the defendant] [could not] show that the

documents had any value 'apart from the information contained therein.'" (citing *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 973 (N.D. Ill. 2000))).

In its earlier order, this Court dismissed ESI's conversion claim because ESI had not identified "any value the patent invention disclosure documents have apart from the confidential information they contain." Order Granting Anchor's MTD at 10. That is, the Court determined that ESI's conversion claim failed because it was based on a claim that Anchor Defendants violated ESI's rights by misappropriating ESI's proprietary information (*i.e.*, its patents). ESI repeats the same error here. ESI argues that the "Products and Tools" are separate and distinct software from the "trade secrets" software because the "Products and Tools" are the ultimate outcome of using and finetuning the ESI trade secrets. This argument fails for three reasons.

First, this Court has already considered and rejected ESI's argument that the CUTSA's savings clause does not apply when the confidential information is a "protectible interest rather than a trade secret." Order Granting Anchor's MTD at 9; *cf.* Opp. at 5. The nucleus of fact test does not focus on whether a non-CUTSA claim requires the pleading of different elements than the CUTSA claim, but rather on whether "there is [a] material distinction between the wrongdoing alleged in [the] CUTSA claim and that alleged in [the non-CUTSA] claim." *SunPower Corp.*, 2012 WL 6160472, at *12 (quotation marks and citations omitted) (first and third alterations in original).

Second, the Court notes that ESI's conversion claim incorporates the same factual allegations regarding ESI's trade secret claims. *See* FAC ¶¶ 154; *SunPower Corp.*, 2012 WL 6160472, at *13 (noting that prior cases finding non-CUTSA claims that incorporated earlier trade secret allegations were preempted under the CUTSA savings clause).

Third, contrary to ESI's argument that "the amended conversion claims make clear the trade secrets are separate and distinct from the Products and Tools," ESI's conversion claim relies on the same misappropriation of proprietary information as the trade secret claim. *See* FAC ¶¶ 127–4 (trade secret claim that relies on Defendants' misappropriation of ESI's confidential

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
8

information); FAC ¶ 157 ("Defendants *intentionally and substantially interfered* with ESI's *exclusive ownership* of the Products and Tools by *stealing* ESI's invention disclosures and including it in Anchor's Abandoned Patent Application . . . , which later was also included in Anchor's HPA 2013 product." (emphasis added)); FAC ¶ 158 ("Defendants further *intentionally and substantially interfered* with ESI's exclusive ownership of the Products and Tools by *stealing* the Products and Tools, which were later included in Anchor's HPA 2013 product and others." (emphasis added)); Cal. Civ. Code § 3426.1 ("'Misappropriation' means: (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent . . . ."). At bottom, ESI argues that Defendants *misappropriated* the proprietary "Products and Tools" software. *See Language Line Servs.*, 944 F. Supp. 2d at 780.

Indeed, ESI's trade secret software and source code are the "architecture" and "blueprints" that produce the finished, ready-to-go, and marketable "Products and Tools." FAC ¶¶ 161–62; *see also SunPower Corp.*, 2012 WL 6160472, at *13. Thus, contrary to ESI's argument, the value of the "Products and Tools" is subsumed in the value of the alleged trade secrets and ESI's conversion claim is therefore superseded. *See Controltec, Inc. v. MCT Tech., Inc.*, 2011 WL 13227734, at *7 (C.D. Cal. June 3, 2011) ("The complaint's fifth claim alleges that MCT converted the KinderTrack software when it 'illegally cop[ied] the system and install[ed] it on a computer system in Shanghai, China for [MCT's] own use and benefit. This claim, based upon the unauthorized acquisition and use of the KinderTrack software, *is squarely superseded by [CUTSA].*" (emphasis added) (alterations in original)).

The Anchor Defendant's motion to dismiss ESI's conversion claim is therefore **GRANTED**. The Court declines to allow leave to amend as it finds amendment would be futile. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

### B. Lin's Motion to Dismiss for Insufficient Service of Process/Jurisdiction

#### a. Service of Process

On September 30, 2022, ESI filed a complaint asserting claims against Mr. Lin and others for misappropriation of trade secrets and breach of contract. *See* Dkt. No. 1. Thereafter, ESI attempted to serve Lin by (1) leaving a copy of the summons and complaint with Mr. Lin's adult son at 985 Joshua Place, Fremont, CA 94539 ("the Fremont Residence"); and (2) mailing a copy of the summons and complaint to a residence in Taiwan. Order Granting Lin's MTD at 10–12. This Court determined that these attempts failed to "substantially comply" with Federal Rule of Civil Procedure 4. *Id.* at 12.

On August 18, 2021, ESI filed its First Amended Complaint. *See* Dkt. No. 101. ESI argues that it effected hand delivery of the summons and complaint on Defendant Lin at his last known address in Taipei, 2F., No. 3-1, Ln. 19, Sec. 3, Xinsheng S. Rd., Da'an Dist., Taipei City 106, Taiwan (R.O.C.), on September 1, 2021, when it delivered the summons and amended complaint to Ms. Yu-Jie Yang at 2F. Dkt. No. 111 at ECF 2. Ms. Yang, a relative of Defendant Lin, said she would deliver the documents to Lin. *Id.* Defendant Lin argues this service was insufficient as it did not comply with Federal Rule of Civil Procedure 4(f)(2).

#### i. Legal Standard

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Thus, before a court may exercise personal jurisdiction over a defendant, there must "be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum." *Id.* That is, there must be a basis for the "defendant's amenability to service of summons." *Id.* Without consent, there must be authorization under the Federal Rules of Civil Procedure for service of summons on the defendant. *Id.*

If service is challenged, the plaintiff bears the burden of establishing that service was valid under Federal Rule of Civil Procedure 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
10

Upon a finding of improper service, it is within the district court's discretion whether to quash the service of process or dismiss the case. *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

Because ESI attempted to serve Defendant Lin in a foreign country, rather than in California, this Court focuses its analysis on Federal Rule of Civil Procedure 4(f)(2).[2] Rule 4(f)(2) allows that an individual in a foreign country may be served "by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Several provisions of Taiwan's Code of Civil Procedure are relevant:

- Article 132—Where there is no limitation on an advocate's authority to receive service, service shall be effectuated upon the advocate, except where the presiding judge may order the service to be effectuated upon the party represented when he/she considers it necessary to do so.
- Article 136—Service shall be effectuated in the domicile or residence, office or place of business of the person to be served; but service may also be effectuated at the place where the person to be served is found.
- Article 137—When the person to be served cannot be found in his/her domicile/residence, office, or place of business, service may be effectuated by leaving the paper with his/her housemate or employee of suitable age and discretion.
- Article 145—Where service is to be made in a foreign country, it shall be effectuated by the competent authorities of such country requested to do so, or the relevant R.O.C. ambassador/minister/envoy/consul, or other authorized institutes or organizations in that country.

Taiwan Code of Civil Procedure, https://law.moj.gov.tw/ENG/LawClass/

---

[2] For an analysis of why Federal Rule of Civil Procedure 4(e) was not satisfied, see Order Granting Lin's MTD at 6–10.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
11

LawParaDeatil.aspx?pcode=B0010001&bp=18 (last visited December 15, 2021).

### ii. Analysis

ESI argues that it effected service on Defendant Lin through: (1) service in the United States on Defendant Lin's attorney and (2) hand delivery on Defendant Lin's niece in Taiwan. The Court addresses each argument in turn.

First, service on Defendant Lin's attorney did not comply with either Taiwan or U.S. law and thus does not constitute sufficient service of process. Read in full, Article 132 allows for service on a party's attorney only "where there is no limitation." Here, service through Defendant Lin's attorney was not effective because Defendant Lin has not authorized his counsel to accept service on his behalf. *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, 2013 WL 12064538, at *3 (S.D. Cal. Jan. 23, 2013) ("Service of process on an attorney who is not authorized to accept service for his client is ineffective."). ESI's citation to *Rang Dong Joint Stock Co. v. J.F. Hillebrand USA, Inc.*, 2020 WL 3841185, at *8–10 (E.D. Cal. July 8, 2020) does not change this analysis. There, the plaintiff moved the court to allow service through an alternative method, service on the defendant's U.S.-based counsel after two unsuccessful attempts to serve the defendant personally, pursuant to Federal Rule of Civil Procedure 4(f)(3).

Second, ESI did not effect service of process under either Taiwan or U.S. law by leaving a copy of the summons and complaint with Defendant Lin's niece in Taiwan. ESI argues that pursuant to Article 145 of the Taiwan Code of Civil Procedure, if service of process was completed in Taiwan in a manner considered effective by United States law, it is effective by Taiwan law. ESI cites to Rule 4(e)(2)(A) which allows a party to serve another by leaving a copy of the complaint and summons at the party's usual place of abode with someone of suitable age and discretion who resides there. PJ Opp. at 8. ESI argues that Ms. Yang satisfies this standard.[3] However, for this theory to function, ESI must establish either that Defendant Lin owned the

---

[3] While ESI does not argue this, Articles 136 and 137 would permit the same type of service and this analysis establishes why service was not effective under these articles.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
12

1  residence such that it would be reasonable to determine it was his abode or that he lives with Ms.

2  Yang.  Problematically, ESI knew that Defendant Lin sold this residence to his sister in April 2015

3  and ESI has not alleged any facts from which this Court can infer that Defendant Lin continues to

4  remain at the residence.  *See* Dkt. No. 47-1 (ESI declaration it "underst[ood] that on or about April

5  9, 2015 Defendant Lin sold his Taiwan residence located at 2F., No. 3-1, Ln. 19, Sec. 3, Xinsheng

6  S. Rd., Da'an Dist., Taipei City 106, Taiwan (R.O.C.)").  ESI argues that this Court can presume

7  that Defendant Lin lives at the Taipei Address because "[a] party's old domicile is not lost until a

8  new one is acquired."  PJ Opp. at 8 (citing *Int'l Venture Assocs. V. Hawayek*, 2013 WL 2646188,

9  at *2 (N.D. Cal. June 12, 2013).  This principle is not applicable to this case—domicile remains

10 for the purpose of determining diversity for jurisdictional purposes, not for determining a party's

11 "usual place of abode" for service of process.  Because ESI has not demonstrated that the Taiwan

12 Residence was Defendant Lin's "usual abode," service on Ms. Yang was also ineffective.

13       In the alternative, ESI asks for the Court to order service on Defendant Lin through his

14 counsel.  PJ Opp. at 9.  Alternative service under Rule 4(f)(3) must comport with "constitutional

15 notions of due process," meaning "the method of service crafted by the district court must be

16 'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford

17 them an opportunity to present their objections." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d

18 1007, 1016 (9th Cir. 2002) (citation omitted).  ESI's proposed method of service satisfies due

19 process and is not forbidden by an international agreement.  *See* PJ Opp. at 9–10.  As in *Rang*

20 *Dong*, ESI has made two prior, reasonable, and unsuccessful attempts to serve Defendant Lin.

21 Service on Defendant Lin's counsel is reasonably calculated to apprise Defendant Lin of this

22 action because his counsel is aware of the procedural posture of this action and the substantive

23 issues related to Lin's status as a named party.  Counsel is familiar with the pleadings and with

24 ESI's counsel.  *See Rang Dong*, 2020 WL 3841185 at *11–12.

25       Accordingly, because ESI's proposed alternative method of service is not prohibited by

26 international agreement and is reasonably calculated to apprise Defendant Lin of this action and

27 Case No.: 5:20-cv-06846-EJD
28 ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
13

1   afford Defendant Lin an opportunity to be heard, the Court exercises its discretion under Rule

2   4(f)(3) and orders service of process upon Defendant Lin through his U.S.-based counsel, Mary

3   Ann Novak.

### b. General Personal Jurisdiction

#### i. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), defendants may move to dismiss for lack of personal jurisdiction. While the plaintiff bears the burden of showing that the Court has personal jurisdiction over the defendant, the court "resolves all disputed facts in favor of the plaintiff." *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quotation marks and citation omitted). The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). *But see Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." (citations omitted)). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation marks and citation omitted). "The Court may not assume the truth of allegations that are contradicted by affidavit." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014) (citing *Data Disc, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

If jurisdiction is proper under California's long-arm statute and if the exercise of that jurisdiction does not violate federal due process, a court may exercise personal jurisdiction over a non-resident defendant. *Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). Because California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution,

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
14

the statutory and constitutional inquiry merge into a single due process test. *See* Cal. Code Civ. Proc. § 410.10.

Due process requires that a non-resident defendant have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *In re Cathode*, 27 F. Supp. 3d at 1008 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). If a defendant has sufficient contacts with the forum, personal jurisdiction may be either general or specific. *See id.* The relevant forum for this case's minimum contacts analysis is California and the Court only analyzes Defendant Lin's contacts for general jurisdiction purposes.

General personal jurisdiction confers "all-purpose jurisdiction." That is, it allows a court to exercise personal jurisdiction over a defendant to adjudicate any claim asserted against the defendant, regardless of whether the claim arises from the defendant's contacts with the forum. *Coremetrics, Inc. v. Atomic Park.com*, 370 F. Supp. 2d 1013, 1016 (N.D. Cal. 2005). The standard is limited and only allows a court to exercise personal jurisdiction over a non-resident defendant who has such substantial, "continuous and systematic" contacts with the forum such that it is fair to render the defendant "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted); *see also id.* at 137 ("*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."); *see also Int'l Shoe*, 326 U.S. at 318 (allowing all-purpose jurisdiction in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*" (emphasis added)).

For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Id.* However, in rare instances, courts have exercised general jurisdiction over an individual when the individual's contacts with the forum are "so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes."

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
15

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). An individual's frequent visits to a forum, or even his owning property in the forum, do not, alone, justify the exercise of general jurisdiction. *See Span Constr. & Eng'ging, Inc. v. Stephens*, 2006 WL 1883391, at *5 (E.D. Cal. July 7, 2006) (collecting cases); *see also Cardenas v. McLane FoodService, Inc.*, 2010 WL 11465450, at *2 (C.D. Cal. Oct. 25, 2010) ("Courts in this Circuit have required far more than property ownership prior to the exercise of general jurisdiction."). This Court is mindful that the Ninth Circuit has "regularly declined to find general jurisdiction even where the contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993).

### ii. Analysis

ESI argues that this Court may exercise general personal jurisdiction over Defendant Lin. Defendant Lin argues that general personal jurisdiction over him is improper because he is currently domiciled in Taiwan and has not returned to the United States, or California, since 2011. Declaration of Chin-Hsen Lin in Support of Motion to Dismiss ("Lin Decl.") ¶ 8, Dkt. No. 125-1.

ESI contends that Defendant Lin's contacts with California have been so substantial, continuous, and systematic that it would be fair for this Court to exercise general personal jurisdiction over Defendant Lin. ESI points out that Defendant Lin (1) attended U.C. Berkeley, a California university, from 1983 to 1985, FAC ¶ 15; (2) worked at multiple Bay Area companies from 1985 through 2009, FAC ¶¶ 16–22; (3) owned and financed a residence in Milpitas, which he sold in 2000, PJ Opp. at 11; (4) owns and finances the Fremont Residence, where he worked remotely from 2013 through 2017, FAC ¶¶ 14, 23; (5) maintains financial accounts in California, FAC ¶ 28; (6) benefited from California resources, including the health care provided to his ailing wife, FAC ¶ 25; and (7) sought and received the benefits of California's robust educational and employment opportunities, FAC ¶ 27.

These contacts do not render Defendant Lin "fairly at home" in California. First, property ownership and the payment of property taxes alone are insufficient. *See Cardenas*, 2010 WL

1  11465450, at *2.  Second, none of these allegations demonstrate that Defendant Lin continues to
2  use or enjoy the Fremont Residence.  On the contrary, the declarations submitted to the Court
3  show that Defendant Lin's ex-wife and son reside at the property and pay the taxes, utilities, and
4  upkeep on the residence.  Lin Decl. ¶ 9.  Third, while mail has been sent to the Fremont Residence
5  for Defendant Lin, his son has stated that he accepts the mail on Defendant Lin's behalf.
6  Declaration of Derek Lin in Support of Motion to Dismiss ("Derek Lin Decl.") ¶ 13.  Fourth,
7  ESI's assertions that Defendant Lin worked remotely from the Fremont Residence from 2013–
8  2017 contradict their allegations that they paid for a dorm room for Defendant Lin in Taiwan and
9  that Defendant Lin entered company headquarters *during this time period* to take trade secrets.
10  There is thus no reason for the Court to find that Defendant Lin's declaration stating that he has
11  not entered California since 2011 is fraudulent.  *See Krypt, Inc. v. Ropaar LLC*, 2020 WL 32334,
12  at *5 (N.D. Cal. Jan. 2, 2020) ("Nor is the court required to accept as true allegations that
13  are . . . unwarranted deductions of fact, or unreasonable inferences." (quoting *In re Gilead Scis.*
14  *Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008))).

15        To be sure, Defendant Lin has ties to California.  But his connection to California is not so
16  substantial, continuous, and systematic that it can be said that Defendant Lin is "at home" in the
17  state.  The fact that he went to college, worked in, and lived in California *years* before the relevant
18  time period further demonstrate that general personal jurisdiction is not appropriate.  *Compare In*
19  *re Wireless Facilities, Inc. Derivative Litig.*, 562 F. Supp. 2d 1098, 1103 (S.D. Cal. 2008) (finding
20  the exercise of general personal jurisdiction appropriate where the nonresident defendant "own[ed]
21  and pa[id] property taxes, own[ed] and register[ed] a car, maintain[ed] a driver's license,
22  continu[ed] to maintain and wires money into a checking account, paid state income taxes . . . and
23  visits 30 times per year"); *Coremetrics, Inc.*, 370 F. Supp. 2d at 1021–24 (high volume of business
24  contacts and sales within California, among other things, supported exercise of general personal
25  jurisdiction).  Accordingly, the Court **DISMISSES** Defendant Lin from this action.  *See Laub v.*
26  *U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (district court need not allow

27  Case No.:   5:20-cv-06846-EJD
28  ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING
DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

jurisdictional discovery when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction").

### III. CONCLUSION

The Court **GRANTS without leave to amend** Anchor Defendants' motion to dismiss ESI's conversion claim and Defendant Lin's motion to dismiss for lack of personal jurisdiction. ESI is ordered to refile a second amended complaint consistent with this Order no later than January 24, 2022.

**IT IS SO ORDERED.**

Dated: December 21, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING THE ANCHOR DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT LIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
18