William A. Hector (SBN 298490)
wahector@venable.com
Amit Rana (SBN 291912)
arana@venable.com
Harry Libarle (SBN 346020)
hllibarle@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA  94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

*Attorneys for Defendants*
*Anchor Semiconductor, Inc. and Chenmin Hu*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ELITE SEMICONDUCTOR, INC. a Taiwan Corp., <br><br> Plaintiff, <br><br> v. <br><br> ANCHOR SEMICONDUCTOR, INC., a California corporation, Chenmin Hu, and DOES 1 through 10, <br><br> Defendants | Case No. 5:20-cv-06846-EJD (NC) <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT PURSUANT TO RULE 15(a)(2)** <br><br> Date:  June 13, 2024 <br> Time:  9:00 a.m. <br> Dept:  Courtroom 4, 5th Floor <br> Judge:  Hon. Edward J. Davila <br><br> Complaint filed:  September 30, 2020 <br> Trial date:  None <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. RELEVANT PROCEDURAL BACKGROUND .......................................................... 2

    A.    ESI's Allegations in the Operative Complaint ................................................. 2

    B.    ESI's First Motion for Leave to Amend ........................................................ 3

    C.    Summary of Relevant Discovery .................................................................... 4

III. LEGAL STANDARD ..................................................................................................... 5

IV. LEGAL ARGUMENT ..................................................................................................... 6

    A.    Leave to Amend Should Be Denied Because ESI Fails to Apply the Correct Legal Standard Despite This Court's Repeated Clear Directives ......................................................................................................... 6

    B.    ESI's Motion Should Be Denied Under Rule 16(b)(4) for Lack of Diligence and Undue Delay ........................................................................... 8

        1.    ESI Has Long Known It Would Need to Amend the SAC to Conform to Its New Indirect Misappropriation Theory ................ 9

        2.    ESI Fails to Establish Good Cause for the Delay ............................ 12

    C.    ESI's Motion Should Also Be Denied Under Rule 15(a) ............................ 15

        1.    ESI Unduly Delayed Bringing Its Motion ....................................... 15

        2.    ESI's Motion Is Brought in Bad Faith .............................................. 15

        3.    Allowing the Proposed Amendment Will Prejudice Anchor ................................................................................................ 17

        4.    ESI's Proposed Amendments Are Futile .......................................... 18

        5.    ESI's Previous Motion for Leave to Amend Failed .......................... 20

V. CONCLUSION ................................................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
5
    781 F.2d 1393 (9th Cir. 1986) ...................................................................16

6

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
    465 F.3d 946 (9th Cir. 2006) ...............................................................5, 15
7

8

*Arebalo v. Apple, Inc.*,
    No. 19-cv-03034-EJD, 2021 U.S. Dist. LEXIS 69628 (N.D. Cal. Apr. 9, 2021).............17, 18

9

*Armas v. USAA Cas. Ins. Co.*,
10
    No. 5:17-cv-06909-EJD, 2019 U.S. Dist. LEXIS 123652 (N.D. Cal. July 24,
    2019) .........................................................................................................5

11

12

*Carrico v. City & Cnty. of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) .................................................................18

13

*Coleman v. Quaker Oats Co.*,
14
    232 F.3d 1271 (9th Cir. 2000) .................................................................16

15

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir. 1987) ...................................................................15

16

*Foman v. Davis*,
17
    371 U.S. 178 (1962).............................................................................8, 15

18

*Fresno Unified Sch. Dist. v. K.U.*,
19
    980 F. Supp. 2d 1160 (E.D. Cal. 2013)..........................................15, 16, 17

20

*Hayward Prop. v. Commonwealth Land Title Ins. Co.*,
    No. 17-cv-06177 SBA, 2021 U.S. Dist. LEXIS 205379 (N.D. Cal. Sep. 28,
21
    2021) ..........................................................................................................7

22

*Hendrix v. Novartis Pharm. Corp.*,
    No. CV 13-02402-MWF (PLAx), 2013 U.S. Dist. LEXIS 198475 (C.D. Cal.
23
    Aug. 27, 2013) ............................................................................................7

24

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) .................................................................14
25

26

*Johnson v. Knight Transp., Inc.*,
    No. 1:18-cv-01674-JLT, 2019 U.S. Dist. LEXIS 209316 (E.D. Cal. 2019).......................8, 12

27

*Johnson v. Mammoth Recreations, Inc.*,
28
    975 F.2d 604 (9th Cir. 1992) ...........................................................2, 6, 14

ii

*Kamal v. Eden Creamery, LLC*,
    88 F.4th 1268 (9th Cir. 2023) .............................................................6, 9, 11, 12, 14

*In re LinkedIn ERISA Litig.*,
    No. 5:20-cv-05704-EJD, 2021 U.S. Dist. LEXIS 187282 (N.D. Cal. Sept. 29,
    2021) ........................................................................................................................12

*Lyon v. U.S. Immigr. & Customs Enf't*,
    308 F.R.D. 203 (N.D. Cal. 2015).............................................................................6

*M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*,
    No. 22-cv-04345-AMO, 2024 U.S. Dist. LEXIS 47566 (N.D. Cal. Mar. 18,
    2024) .........................................................................................................................6

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ..................................................................................18

*Mir v. Fosburg*,
    646 F.2d 342 (9th Cir. 1980) ..................................................................................15

*Navigation Holdings, LLC v. Molavi*,
    445 F. Supp. 3d 69 (N.D. Cal. 2020) ......................................................................19

*Reg'l Care Servs. v. Companion Life Ins. Co.*,
    No. CV-10-2597-PHX-LOA, 2012 U.S. Dist. LEXIS 40441 (D. Ariz. Mar.
    26, 2012) ...................................................................................................................8

*Rodarte v. Alameda Cty.*,
    No. 14-cv-00468-KAW, 2015 U.S. Dist. LEXIS 123900 (N.D. Cal. Sept. 15,
    2015) .........................................................................................................................6

*Safeco Ins. Co. of Am. v. Betenbaugh*,
    No. 2:21-cv-01761-TLN-CKD, 2023 U.S. Dist. LEXIS 175522 (E.D. Cal.
    Sep. 28, 2023) ...........................................................................................................6

*Sanger v. Ahe Ahn*,
    No. 18-cv-07204-JCS, 2019 U.S. Dist. LEXIS 166180 (N.D. Cal. Sep. 26,
    2019) .........................................................................................................................8

*Scheller v. Nutanix, Inc.*,
    No. 19-cv-01651-WHO, 2021 U.S. Dist. LEXIS 154016 (N.D. Cal. Aug. 16,
    2021) .........................................................................................................................6

*Swanson v. U.S. Forest Serv.*,
    87 F.3d 339 (9th Cir. 1996) ......................................................................................6

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) ..................................................................................15

iii

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) ......................................................................5

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ....................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......................................................18

Federal Rule of Civil Procedure 15 ...................................................... *passim*

Federal Rule of Civil Procedure 16 ...................................................... *passim*

1    **I.    <u>INTRODUCTION</u>**

2        Almost three years ago, this Court issued a case management order expressly stating that

3    all amendments to the pleadings must be brought by October 11, 2021. Dkt. 92 ("Scheduling

4    Order"). The Scheduling Order was unambiguous that "[a]mendments sought after the deadline

5    must comply with Federal Rule of Civil Procedure 16." *Id.* When Plaintiff Elite Semiconductor,

6    Inc. ("ESI") filed its first motion for leave to amend (Dkt. 207), it ignored the Scheduling Order

7    requirement that Rule 16 govern and instead relied on the lower Rule 15 amendment standard.

8    The Court issued an order admonishing ESI and re-confirming that "[b]ecause the deadline to

9    add parties to this litigation lapsed on October 11, 2021, Plaintiff's motion must satisfy the 'good

10    cause' standard of Rule 16." Dkt. 297.

11        In its current motion, ESI has ignored not just one, but two of this Court's orders, and

12    presents a motion for leave to amend that is devoid of any mention of Rule 16's "good cause"

13    standard, let alone any explanation of how ESI's eleventh-hour request to fundamentally alter the

14    claims at issue satisfies this stringent standard. ESI's indifference to the Court's orders on this

15    precise issue reflects a profound disregard for party and judicial resources. That is reason alone

16    to deny its motion.

17        ESI has had all the information it claims justify an amendment for months, and in some

18    cases, years. But curiously, ESI waited until days before Defendants Anchor Semiconductor,

19    Inc.'s and Dr. Chenmin Hu's (collectively, "Anchor") motion for summary judgment was filed to

20    bring the request to the Court. There is no reasonable explanation for the delay but for a dilatory

21    motive, and the law is abundantly clear that under such circumstances the good cause standard is

22    not met, and leave should be denied.

23        Even assuming *arguendo* that ESI could satisfy the threshold requirements of Rule 16 (it

24    has not even attempted to do so), its motion would still fail because each of the factors governing

25    leave to amend under Rule 15 weigh against granting ESI's tardy request. *First*, ESI's timing and

26    explanation for seeking leave to amend at this late stage evince a transparent dilatory motive and

27    undue delay in bringing the motion. *Second*, for that very reason, allowing the proposed

28    amendment would severely prejudice Anchor and throw into disarray the Court's schedule given

that fact discovery closed more than a year ago and expert discovery has now too closed. *Third*, ESI's proposed amendment would be futile. ESI attempts to shift its theory of the case to one of indirect misappropriation, but its proposed complaint does not even acknowledge this distinct cause of action, let alone plead any plausible facts to support it. *Finally*, ESI's prior failures in amending weigh against allowing this amendment now.

Again, however, the Court need not even assess the factors governing its discretion because ESI has failed to satisfy the threshold requirement of "good cause." As a result of that failure, "the inquiry should end" and ESI's motion should be denied. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

## II.    RELEVANT PROCEDURAL BACKGROUND

### A.    ESI's Allegations in the Operative Complaint

ESI commenced this action in September 2020 alleging that that its former employee, Defendant Chin-Hsen Lin, stole ESI's trade secrets and technology and provided them to Anchor. Dkt. 1 ¶¶ 24, 45, 46. This theory of direct misappropriation—that Anchor "secretly hired" Mr. Lin to gain access to ESI's intellectual property and misappropriate ESI's technology—was pled again in ESI's First Amended Complaint and remains in its Second Amended Complaint ("SAC")—the operative complaint.[1] Dkt. 139 (SAC) ¶¶ 55, 60, 78, 86, 101, 102, 116.

However, the evidence produced in discovery—including Anchor's source code from 2010 through 2020—demonstrates that Anchor had been developing the technology at issue independently and long before 2012 or 2013 (when the SAC alleges that the misappropriation

---

[1] On July 13, 2021, the Court issued the Scheduling Order setting a "deadline for joinder of any additional parties, or other amendments to the pleadings" for October 11, 2021. Dkt. 92 at 1:20-24. "Amendments sought after the deadline must comply with Federal Rule of Civil Procedure 16." *Id.* Although the parties have requested—and the Court has granted—numerous modifications of the deadlines in the Scheduling Order, ESI has never requested a modification of the deadline to join additional parties or amend pleadings. Hector Decl. ¶ 2.

2

occurred). *See* Dkt. 318-2 ¶¶ 89, 520-521, 669, 674; Dkt. 313 at 2:12-14. Evidence also shows that Anchor never hired Lin and had no connection to Lin whatsoever. Dkt. 50-8 ¶¶ 3-5; Dkt. 50-9 ¶¶ 10, 11, 14-15.

Faced with this reality, ESI manufactured a new theory of the case in July 2023 when it contended for the first time—in a lawyer's declaration accompanying its first sanctions motion, made two months after the fact discovery cutoff, and denied for failure to meet and confer—that Anchor received ESI's technology not from Lin, but from ESI's supposed former customers, ██████████████ (though it did not specify which one). *See* Dkt. 242-1 ¶¶ 13, 22; Dkt 274.

## B.    ESI's First Motion for Leave to Amend

On March 3, 2023, while the Court was considering Anchor's motion for reconsideration of its early Motion for Summary Judgment, ESI filed its first Motion for Leave to File a Supplemental Pleading under Rule 15(d). Dkt. 207. In that motion ESI proposed to join KLA Corporation ("KLA") (Anchor's parent company) as a party, asserting new claims and allegations against it. *Id.* The new factual allegations ESI proposed stated only that "[t]echnology used in the HPA product . . . was incorporated into other Anchor products and [is] still in use today," and "the plan was for the Anchor name to disappear [from Anchor's website], and [for] all products KLA acquired from Anchor [to] be sold by KLA or its technology incorporated into existing KLA products." Dkt. 206-7 ¶¶ 7(a), (d). Based on these allegations, ESI proposed stating claims for indirect misappropriation and successor liability against KLA. *See* Dkt. 206-7.

The Court denied ESI's request. Dkt. 297. The Court ruled that "[b]ecause the deadline to add parties to this litigation lapsed on October 11, 2021, Plaintiff's motion must satisfy the 'good cause' standard of Rule 16 before the Court has any occasion to consider . . . amendment under Rule 15." *Id.* at 4. The Court found that ESI failed to show "good cause" under Rule 16 because ESI: (1) "was not diligent in creating a workable case management order"; (2) "ha[d] not presented an explanation for why it could not have complied with the Court's Rule 16 deadline"; (3) "did not seek amendment of the Rule 16 order once it knew that it could not comply with its deadlines"; and (4) because "Plaintiff's belated supplementation and the consequent expansion

1  of the litigation's scope would result in prejudice to Defendants." *Id.* at 5-6.

2      In its instant motion, ESI likewise ignores the Court's admonition that Rule 16 applies,

3  and the same reasons for denying ESI's first motion for leave apply with equal force now.

4      **C.    Summary of Relevant Discovery**

5      ESI identified Anchor's "Local CAA" feature as the specific technology containing its

6  alleged trade secret for the first time in July 2023 (months after discovery closed). Hector Decl. ¶

7  3, Ex. A; *see* Dkt. 260 at 1. Anchor objected to this late and inconsistent disclosure, and

8  separately disputed that Anchor's independently developed Local CAA feature includes any of

9  ESI's technology. The parties still dispute which of Anchor's products include the accused Local

10  CAA functionality. Anchor's Research and Development Director testified that Anchor's PCYM

11  product and D2DB product do not include Local CAA functionality. Dkt. 286-11.[2] In any case,

12  when the Special Master allowed ESI to expand the case to include additional products, Anchor

13  complied and provided robust discovery including invoices and additional source code

14  inspections. Hector Decl. ¶ 3.

15      Around the same time, ESI began "suggest[ing] that the way [Local CAA] reached

16  Defendants was via an unauthorized transfer of Plaintiff's code from UMC to Anchor in early

17  September of 2010." Dkt. 260 at 1. Anchor responded to the Special Master that:

18          Elite's new theory of liability should not be considered for purposes of this
19  dispute for several reasons. First, this theory was disclosed three years after the
litigation was filed and two months after the close of fact discovery. If Elite
20  included this theory in its complaint, Anchor would have strong grounds for
dismissal, as these allegations are wholly insufficient to state a claim for trade secret
21  misappropriation. Anchor also would have pled additional defenses. But these
allegations are not within the scope of Elite's complaint. And respectfully it would
22  be improper to expand the scope of discovery based on unpled allegations. Second,
Elite's eleventh-hour allegations are false. There is no evidence such a disclosure
23  ever occurred. . . . Third, it strains credulity that Elite would have provided its trade
secret source code or a version of software that could be "decompiled" to a *potential*
24  customer.

25  _____

26  [2] HPA was not rebranded as PCYM and D2DB, as ESI contends. Dkt. 313 at 5-6. ESI's only

27  citation for this point is its attorney declaration (Dkt. 313-1 ¶ 9), which cites no evidence of

28  rebranding.

OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO AMEND                      Case No. 5:20-CV-06846-EJD (NC)

Elite's new theory and shifting definitions of the trade secrets is completely at odds with the intent behind CCP 2019.210. Elite appears to be pushing this new unsupported theory because there is no evidence to support its prior theory about Chin-Hsen Lin. [T]his new theory of events is improper, unsupported, and should be disregarded . . . .

Hector Decl., Ex. B (August 10, 2023 Letter to the Special Master) (referring to ESI as "Elite").

Notwithstanding Anchor's arguments, the Special Master allowed ESI discovery into its new unpled theory of the case, ruling that: "Defendants must produce all documents dated between March 1, 2010, and February 28, 2011, that reflect or refer to communications to or from UMC and that are in any way related to or have any implications for the acquisition or development of Local CAA." Dkt. 280 ¶ 3. The Special Master's ruling forced Anchor to respond to both ESI's pled (Lin) and ill-defined, unpled (UMC) theories of the case, resulting in in substantial added costs and fees, particularly as related to expert discovery and motions practice. Hector Decl. ¶ 4. But ESI did not seek to amend its pleadings in the wake of the Special Master's ruling, and instead, inexplicably, waited well over six months to file this motion for leave to file a third amended complaint. *Compare* Dkt. 260 (August 15, 2023) *and* Dkt. 280 (October 18, 2023) *with* Dkt. 313 (May 6, 2024).

## III.    **LEGAL STANDARD**

When a motion to amend a pleading is made after the time set out in a court order has passed, "the moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4), . . . rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013); *see also AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006) (A party who fails to seek amendment within the timeframe set by court order cannot merely "appeal to the liberal amendment procedures afforded by Rule 15," but must also "satisfy the *more stringent* 'good cause' showing required under Rule 16") (emphasis in original). This Court has confirmed that "[o]nly where Rule 16's good cause standard is met must a court consider whether amendment is proper under Federal Rule of Civil Procedure 15." Dkt. 297 at 3 (quoting *Armas v. USAA Cas. Ins. Co.*, No. 5:17-cv-06909-EJD, 2019 U.S. Dist. LEXIS 123652, at *6

5

1   (N.D. Cal. July 24, 2019) (Davila, J.)).

2       "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party

3   seeking the amendment." *Mammoth Recreations*, 975 F.2d at 609. "If that party was not diligent,

4   ***the inquiry should end***." *Id.* (emphasis added). To meet the good cause standard, the moving

5   party must show that despite its diligence, it could not reasonably have met the Scheduling Order

6   deadline. *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *M.A.*

7   *Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*, No. 22-cv-04345-AMO, 2024 U.S. Dist.

8   LEXIS 47566, at \*10 (N.D. Cal. Mar. 18, 2024) (citing *Kamal v. Eden Creamery, LLC*, 88 F.4th

9   1268, 1277 (9th Cir. 2023)). If the moving party establishes that the good cause requirement of

10  Rule 16 is met, "it must then demonstrate that its motion is also proper under Rule 15." *Rodarte*

11  *v. Alameda Cty.*, No. 14-cv-00468-KAW, 2015 U.S. Dist. LEXIS 123900, at \*5 (N.D. Cal. Sept.

12  15, 2015).

13      "Granting or denying leave to amend [under Rule 15] rests in the sound discretion of the

14  trial court." *Safeco Ins. Co. of Am. v. Betenbaugh*, No. 2:21-cv-01761-TLN-CKD, 2023 U.S.

15  Dist. LEXIS 175522, at \*21 (E.D. Cal. Sep. 28, 2023) (citing *Swanson v. U.S. Forest Serv.*, 87

16  F.3d 339, 343 (9th Cir. 1996)). "When assessing whether leave [under Rule 15] is appropriate,

17  courts generally consider five factors: '(1) undue delay, (2) bad faith or dilatory motive on the

18  part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the

19  opposing party, and (5) futility of the amendment.'" *Scheller v. Nutanix, Inc.*, No. 19-cv-01651-

20  WHO, 2021 U.S. Dist. LEXIS 154016, at \*6 (N.D. Cal. Aug. 16, 2021) (quoting *Lyon v. U.S.*

21  *Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015)).

22  **IV.    LEGAL ARGUMENT**

23          **A.    Leave to Amend Should Be Denied Because ESI Fails to Apply the Correct
24                  Legal Standard Despite This Court's Repeated Clear Directives**

25      The Court's July 13, 2021 Scheduling Order set an October 11, 2021 "deadline for

26  joinder of any additional parties, or other amendments to the pleadings." Dkt. 92. ESI has never

27  asked the Court to modify that deadline. Now, more than two and half years after the deadline

28  has passed, ESI seeks to amend the SAC, but its Motion does not cite Rule 16(b), does not apply

6

1  the good cause standard, and does not attempt to demonstrate diligence. These facts by

2  themselves warrant denial of ESI's motion. *See Hayward Prop. v. Commonwealth Land Title*

3  *Ins. Co.*, No. 17-cv-06177 SBA, 2021 U.S. Dist. LEXIS 205379, at *10 (N.D. Cal. Sep. 28,

4  2021) (denying leave to amend where plaintiff did not address Rule 16's good cause standard

5  and "[did] not move to modify the scheduling order, as required to bring an untimely motion for

6  leave to amend"); *Hendrix v. Novartis Pharm. Corp.*, No. CV 13-02402-MWF (PLAx), 2013

7  U.S. Dist. LEXIS 198475, at *4 (C.D. Cal. Aug. 27, 2013) ("[Plaintiff] also fails to request that

8  the Court modify its scheduling order, a deficiency that in itself is fatal to the Motion.").

9      ESI's failure to apply the correct legal standard is particularly egregious because this is

10  the second time ESI has asked the Court for leave to amend the SAC after the deadline to do so

11  and without citing Rule 16 or asking for an extension of the deadline in the Scheduling Order.[3]

12  ESI casts aside the Court's orders on this issue and in doing so reflects a repeated contempt for

13  this Court's orders.

14      The Scheduling Order is clear: "Amendments sought after the deadline must comply with

15  Federal Rule of Civil Procedure 16." *Id.* Nonetheless, on March 3, 2023, ESI filed its first motion

16  to amend the SAC. This Court denied the motion on November 27, 2023, and in doing so,

17  reminded ESI of the appropriate application of Rule 16 to future requests to amend the

18  pleadings: any motion for leave "must [first] satisfy the 'good cause' standard of Rule 16." Dkt.

19  297 at 4. The Court exercised leniency and construed ESI's motion under the correct standard.

20  Nonetheless, it concluded ESI had not demonstrated good cause. *Id.*

21      Now, ESI again asks the Court to modify the Scheduling Order without even attempting

22  to make the requisite showing of good cause. Rather than addressing Rule 16(b), ESI again

23  focuses its Motion on the more liberal amendment standard in Rule 15(a). *See* Mot. at 6–11

24  _____

25  [3] As discussed below, ESI's disregard for the Court's prior order is one of many circumstances

26  indicating this Motion was brought in bad faith. For this reason (and others), should the Court get

27  past ESI's failure under Rule 16, the Court should also exercise its discretion under Rule 15(a)

28  and deny the Motion. *See* Sec. IV.C.2, *infra.*

1    (applying the five 'Foman factors' adopted by the Ninth Circuit from *Foman v. Davis*, 371 U.S.

2    178, 182 (1962)). ESI ignores the material difference between these two standards. The Court

3    should not condone ESI's gamesmanship by affording leniency on this second attempt. *See Reg'l*

4    *Care Servs. v. Companion Life Ins. Co.*, No. CV-10-2597-PHX-LOA, 2012 U.S. Dist. LEXIS

5    40441, at *2 (D. Ariz. Mar. 26, 2012) (denying plaintiff's motion for leave to amend under Rule

6    15 after the court had repeatedly "made plain to counsel" that a showing of good cause would be

7    required, including in a prior order denying plaintiff's request to extend the discovery deadlines).

### B.    ESI's Motion Should Be Denied Under Rule 16(b)(4) for Lack of Diligence and Undue Delay

10       Diligence of the party seeking amendment is the critical issue in the good cause

11   determination. This Court explained the relevant considerations in its November 27, 2023 Order:

12       In assessing diligence under Rule [16], courts consider whether (1) the party
         was diligent in creating a workable Rule 16 order; (2) the noncompliance with
13       a Rule 16 deadline occurred, notwithstanding diligent efforts to comply,
         because of the development of matters which could not have been reasonably
14       foreseen or anticipated at the time of the Rule 16 scheduling conference; and
         (3) the party was diligent in seeking amendment of the Rule 16 order, once it
15       became apparent that it could not comply with the order.

16   Dkt. 297 at 4 (citing *Sanger v. Ahe Ahn*, No. 18-cv-07204-JCS, 2019 U.S. Dist. LEXIS 166180,

17   at *5-6 (N.D. Cal. Sept. 26, 2019)).

18       As to the first factor, this Court has already determined that ESI was "not diligent in

19   creating a workable case management order" because it "gave no indication" that it may need an

20   extension of the normal deadline prior to bringing a motion for leave to amend. Dkt. 297 at 5.

21   ESI's position has not improved on this factor, and in fact its arguments are weaker now.

22   Although the parties have filed several joint stipulations to modify the case management

23   deadlines based on ESI's purported need to broaden the scope of discovery, ESI never once

24   signaled its intent to amend the SAC or modify the case schedule as it pertains to amendments.

25       To satisfy the second and third factors, the party requesting leave has the burden to show,

26   among other things, that it was diligent in seeking amendment once it became apparent that it

27   could not comply with the deadline. *Johnson v. Knight Transp., Inc.*, No. 1:18-cv-01674-JLT,

28   2019 U.S. Dist. LEXIS 209316, at *6 (E.D. Cal. Dec. 4, 2019). Thus, a motion to amend a

1   complaint should be denied where the movant bases its request on facts it learned during

2   discovery and did not promptly move to amend after learning those facts. *See, e.g.*, *Kamal*, 88

3   F.4th at 1278 (finding plaintiffs had "not met their burden to demonstrate good cause" where

4   their proposed amendments were based on information in documents obtained during discovery

5   and plaintiffs "failed to account for the five months [that elapsed] between the production of

6   those key documents and their motion to amend the complaint"). Here ESI has been anything but

7   prompt.

8         ESI claims it "seeks to amend the [SAC] with information of which it learned in the last

9   month." Mot. at 8. That is a demonstrative misrepresentation to the Court. The proposed

10  amendments consist of allegations supporting a new theory of misappropriation that differs from

11  that alleged in the operative SAC in two ways. First, ESI's new theory is that the

12  misappropriation occurred in 2010 and not in 2012-2013, as currently pled. *See* Dkt. 313-21

13  ¶ 60; Dkt. 313 at 2:12-14. Second, the proposed amendments allege an indirect misappropriation

14  theory—i.e., abandoning its claim that Anchor received ESI's technology from Lin, and asserting

15  it was received indirectly through ESI's supposed former client UMC in cooperation with ███.

16  Dkt. 313-21 ¶¶ 58–66. The record is abundantly clear that ESI presented these allegations to the

17  Court long ago (in summer 2023) and failed to act diligently in seeking to amend the SAC. *See*

18  Dkt. 241-1 ¶ 13 (Declaration of John van Loben Sels in Support of ESI's Motion for Sanctions)

19  ("Plaintiff believes ███████████ transferred Plaintiff's technology to Defendants.");

20  Dkt. 260 at 1 (August 15, 2023 Special Master's Ruling) ("In its moving papers, Plaintiff

21  suggests that the way their proprietary source code . . . reached Defendants was via an

22  unauthorized transfer of Plaintiff's code from UMC to Anchor in early September of 2010.").

### 1.    ESI Has Long Known It Would Need to Amend the SAC to Conform to Its New Indirect Misappropriation Theory

25        ESI argues that leave to amend is warranted because "through fact and expert discovery

26  completed on April 11, 2024,[4] Plaintiff learned of at least one method of Defendants'

27  _____

28  [4] Expert discovery closed on May 3, 3024 and fact discovery closed more than a year ago on

9

1  misappropriation that began in 2010 . . . ." Mot. at 3. As an initial matter, beyond simply saying

2  so, ESI does not identify any specific facts or documents it obtained "last month" (*id.* at 8) in the

3  Motion itself or the supporting Declaration of John van Loben Sels ("JvLS Declaration"). It

4  could not. To support its claim that Anchor's April 2024 document production somehow

5  prevented ESI from timely moving to amend the SAC or modify the Scheduling Order, ESI

6  twice refers to Paragraph 4 of the JvLS Declaration. *See* Mot. at 3, 5. There, the JvLS

7  Declaration identifies a number of documents supposedly showing UMC and ███ discussing

8  ESI's technology with Anchor, which he claims provide "the basis for Plaintiff's amended

9  complaint" and, in some cases, provided a basis for "further discovery." However, ***every***

10 ***document discussed was produced on or before November 17, 2023***. *See* Dkt. 313-1 at ¶ 4

11 (JvLS Declaration, itemizing documents that allegedly support ESI's 2010 misappropriation

12 theory).

13     ESI's justification primarily consists of a supposed "tranche" of documents produced on

14 April 11, 2024. Dkt. 313-1 at ¶ 8. The so-called tranche was a single email and its attachments,

15 which were produced because Anchor identified a human error coding issue that held this single

16 document back from prior productions. Dkt. 318-1 ¶ 18. But more fundamentally, ESI does not

17 identify any new information relating to any of the proposed allegations contained in the single

18 email produced on April 11, 2024. *See id.*

19     Other than the expert reports, whose relevance to this motion ESI does not attempt to

20 explain, the email produced on April 11 is the only document discovery conducted ***this year***, let

21 alone "last month," even mentioned in the Motion or the JvLS Declaration. Also missing is ***any***

22 discussion regarding the contents of the email that Anchor produced on April 11. The omission

23 was likely an intentional attempt to keep the Court in the dark, as this single email cuts directly

24 against ESI's proposed new theory of misappropriation. *See* Dkt. 318-1 ¶ 18 (explaining that the

25 document, which ESI contends is spoliated, is ███████████████

26 ───────────────

27 May 15, 2023. *See* Dkts. 218 at 5, 233 at 2:4, 310 at 5. ESI's conflating these deadlines is yet

28 another attempt to misdirect the Court.

OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO AMEND                                    Case No. 5:20-CV-06846-EJD (NC)

1    [REDACTED] indicating that it belongs to [REDACTED], not ESI). Accordingly, ESI fails to a

2    "articulate what new facts uncovered [in discovery] were critical to [its] new request" in this

3    Motion, as it must to "meet its burden to demonstrate good cause." *Kamal*, 88 F.4th at 1278

4    (affirming district court order denying leave to amend).

5        More fundamentally, the record before the Court demonstrates ESI knew of the facts that

6    form the basis of its latest theory long ago. As to the proposed allegations that the

7    misappropriation occurred in 2010, ESI admits it became aware of this fact no later than January

8    21, 2023, when its source code expert completed its initial review of source code documents

9    produced by Anchor. *See* Mot. at 4. Additionally, the Interrogatory responses ESI served on May

10   17, 2023 reflect that ESI, presumably in response to mounting evidence that its misappropriation

11   theory was untenable, abandoned its theory that the misappropriation occurred in 2012 or 2013

12   and manufactured the new theory the misappropriation occurred in 2010. *See* Dkt. 254-1 at 2.

13       Moreover, ESI abandoned the "direct misappropriation" theory in the SAC and began

14   pursuing discovery based on the proposed "indirect misappropriation" theory reflected in its

15   proposed amendments as early as June 2023. Dkt. 307-1, Ex. 30. Then, in its first sanctions

16   motion, filed in July 2023, ESI claimed that Anchor received ESI's technology not from Lin, but

17   from ESI's supposed former customers, [REDACTED]. *See* Dkt. 242. The motion and

18   supporting JvLS Declaration discuss a battery of discovery that would have provided a basis for

19   ESI to move to amend the SAC. Critically, the JvLS Declaration filed with that motion describes

20   finding support for the indirect misappropriation theory in documents produced by Anchor ***on***

21   ***October 27, 2022***. Dkt. 242-1 ¶ 64. ESI claims to have identified three witnesses from these

22   documents, all of whom it deposed by ***June 2023***. *Id.* ¶¶ 64, 95, 107. Almost a year ago, ESI

23   questioned each witness on the topic of ESI's alleged transfer of the supposed trade secrets to its

24   customers, including [REDACTED]. *Id.*

25       Finally, ESI knew about [REDACTED] such that it could have sought leave to add allegations

26   consistent with this theory long ago also. The JvLS Declaration identifies documents Anchor

27   produced as early as ***August 31, 2021*** that show [REDACTED] purportedly working with UMC and

28   Anchor, which ESI admits "served as the basis for further discovery, and is the basis for

11

1    Plaintiff's amended complaint." Dkt. 313-1 at ¶ 4(a); *see also id.* ¶¶ 4(b)-(c), (e)-(f).

2          Accordingly, the record shows ESI was on notice of the supposedly newly discovered

3    "facts" it relies on years ago, not "last month," as ESI disingenuously claims. ESI clearly could

4    have brought a motion to amend or sought modification of the deadlines in the Scheduling Order

5    when it began conducting discovery on these topics years ago. Instead, it delayed. Courts in the

6    Ninth Circuit routinely deny leave to amend under Rule 16's 'good cause' standard for shorter

7    delays. *See Kamal*, 88 F.4th at 1278 (finding no good cause to amend where defendants

8    "produced the 'key documents' that Plaintiffs cited as the basis for their new fraud theory . . .

9    five months before Plaintiffs sought leave to amend their complaint"); *In re LinkedIn ERISA*

10   *Litig.*, No. 5:20-cv-05704-EJD, 2021 U.S. Dist. LEXIS 187282, at *7-8 (N.D. Cal. Sept. 29,

11   2021) (Davila, J.) (plaintiffs failed to demonstrate diligence in seeking leave to amend where

12   "there [was] no evidence … that would explain why Plaintiffs further delayed three months

13   between receiving Defendants' production in June 2021 and moving for leave to amend");

14   *Knight Transp.*, 2019 U.S. Dist. LEXIS 209316, at *12-13 (determining plaintiff did not act

15   diligently in seeking leave to amend one month after relevant facts were revealed for the first

16   time in a deposition). ESI offers no reason this Court should depart from such overwhelming

17   precedent.

18         **2.     ESI Fails to Establish Good Cause for the Delay**

19         ESI repeats two meritless excuses that this Court already rejected in denying its prior

20   motion for leave to amend. First, ESI blames Anchor for prolonging discovery, but does attempt

21   to explain its own failure to immediately pursue further discovery or seek relief from the

22   Scheduling Order when it first learned of the facts allegedly justifying the proposed amendments.

23   Second, ESI argues it could not have sought leave to amend earlier because discovery was

24   ongoing, disregarding the Court's clear finding that diligence under Rule 16 required ESI to

25   bring its motion ***while it pursued discovery relating to the allegedly 'new' information***. Neither

26   excuse had any merit when raised in its first motion for leave and neither have any merit now.

27         In its first motion for leave to amend, ESI had accused Anchor of "fail[ing] to respond to

28   discovery requests" regarding KLA's acquisition of Anchor" and other supposed delay tactics.

1    Dkt. 207 at 2–3. The Court found ESI's attempt to blame Anchor for its own delay unavailing:

2    "Although Plaintiff strenuously points a finger at Defendants' discovery tactics," ESI had not

3    shown why it "waited over two months" after learning of KLA's acquisition to "propound

4    discovery regarding Anchor's post-acquisition structure." Dkt. 297 at 5. Additionally, the Court

5    noted that ESI could have requested relief from the scheduling order while working out

6    discovery issues. "Plaintiff did not request an extension in September 2021 when it served

7    document requests . . . seeking information relating to KLA's acquisition." Dkt. 297 at 5.

8    Moreover, after waiting a year to pursue the matter further, Plaintiff argued it acted diligently in

9    filing the motion to amend "within two months of discovering 'new information'" in a January

10   2023 deposition. *Id.* at 6. "None of the 'new' information, however, provided any explanation as

11   to why Plaintiff did not request an earlier extension of the deadline to add parties." *Id.*

12        Nothing has changed. ESI again fails to show it acted diligently in bringing this Motion,

13   and therefore fails to show good cause under Rule 16.[5]

14        <u>HPA Source Code:</u> ESI claims it was only after "Plaintiff's expert's review of

15   Defendants' codebases for HPA, PCYM, and D2DB, that Plaintiff could have known how and

16   when Defendants misappropriated Plaintiff's trade secrets." Mot. at 5. Not so. ESI ignores the

17   indisputable fact that it has had access to Anchor's entire code base since January 2023. Hector

18   Decl. ¶ 5. And, ESI's argument that it was not able to bring its Motion until "the Special Master

19   ordered the inspection of Defendants' PCYM and D2B2 codebases" (Mot. at 5) is inconsistent

20   with this Court's order on the earlier motion for leave: ESI's desire to further develop these

21   theories is not an excuse for failing to at least request that the Court modify the deadline to

22   amend in the Scheduling Order.

23        <u>Shanghai Employees:</u> Additionally, ESI now accuses Anchor of "delay[ing] [its]

24   document production literally for years through multiple Special Master orders compelling

25   compliance so Defendants' PRC counsel [*i.e.*, Anchor's counsel in the People's Republic of

26   ─────────────────

27   [5] Construing the arguments in ESI's motion under Rule 16's good cause standard, which ESI

28   failed to address.

13

China] could unlawfully screen Defendants' document productions." Mot. at 6.[6] ESI first

identified these employees in November 2022, and continued to seek production of records

relating to those employees after it changed its misappropriation theory in July 2023. *See* Dkt.

242-1 at ¶¶ 22–38; Dkt. 262. ESI does not explain how discovery relating to Anchor's Shanghai-

based employees prevented it from bringing the proposed amendments a year ago. Moreover,

Plaintiff deposed these employees in May 2023 (and again in January 2024). Hector Decl. ¶ 6.

ESI does not, and cannot, account for the delay between then and now.

      <u>UMC and ███ Documents</u>: Although not argued in ESI's Motion, ESI also fails to

explain why it could not sooner amend the SAC to reflect that UMC and ███ were allegedly

participants in the misconduct. ESI's supporting declaration identifies documents produced on

August 31 and November 4, 2021, which it claims, "served as the basis for further discovery, and

. . . for Plaintiff's amended complaint." Dkt. 313-1 at ¶ 4(a), (c).

      Even if ESI had established that it adduced new information relevant to its proposed

allegations in discovery, the Court's earlier order makes clear that 'new information' is not an

excuse for delay. This is consistent with Ninth Circuit precedent. In *Jackson v. Bank of Hawaii*,

the Ninth Circuit affirmed denial of leave to amend under Rule 15's more liberal standard,

finding plaintiffs had failed to adequately explain their delay in seeking leave to amend after

initially discovering the facts allegedly justifying amendment about seven months earlier. 902

F.2d 1385, 1388 (9th Cir. 1990). The plaintiffs argued that "evidence of the Bank's

representations, promises, and non-disclosures [was] not 'fully flushed out'" until later in the

discovery process. *Id.* However, like ESI, the plaintiffs "cite[d] no facts or theories gleaned from

the additional discovery period to support this contention." *Id.*; *see also Kamal,* 88 F.3d at 1278

("although Plaintiffs deposed Eden Creamery just prior to filing the motion to amend the

---

[6]Again, ESI's finger-pointing is irrelevant under Rule 16. Even if it is true that Anchor showed

"extreme resistance" to ESI's requests (it is not), under Rule 16(b), "the focus of the inquiry is

upon the moving party's reasons for seeking modification." *Mammoth Recreations*, 975 F.2d at

609.

OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO AMEND           Case No. 5:20-CV-06846-EJD (NC)

1   complaint, the [district] court observed that Plaintiffs 'fail[ed] to articulate what new facts

2   uncovered at the deposition were critical to their request'").

3   ### C.  ESI's Motion Should Also Be Denied Under Rule 15(a)

4       Because ESI's motion fails under Rule 16, the inquiry should end there.  But should the

5   Court get to the Rule 15(a) inquiry, ESI's motion also fails as well. In the Ninth Circuit, courts

6   apply the five '*Foman* factors' when assessing a motion for leave to amend under Rule 15(a).

7   Under this analysis, a court is authorized to deny leave to amend for "(1) undue delay, (2) bad

8   faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments,

9   (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon*, 208 F.R.D.

10  at 214. District courts have discretion to refuse amendment on any of these grounds, and that

11  discretion is "especially broad" where, as here, "'the court has already given a plaintiff one or

12  more opportunities to amend his complaint.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

13  186 n.3 (9th Cir. 1987) (quoting *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980)).

14  ### 1.  ESI Unduly Delayed Bringing Its Motion

15      For all the reasons discussed *supra* at Section IV.B, the first factor—undue delay—is met

16  here. Courts have held that unexplained delay is enough to deny leave to amend under the Rule

17  15 standard. *See, e.g.*, *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991);

18  *AmerisourceBergen*, 465 F.3d at 953 (eight-month delay "between the time of obtaining a

19  relevant fact and seeking a leave to amend is unreasonable" and sufficient to justify denial of

20  leave to amend under Rule 15(a)). ESI's delay of over a year constitutes undue delay and weighs

21  against leave to amend.

22  ### 2.  ESI's Motion Is Brought in Bad Faith

23      ESI's timing and explanation for seeking leave to amend this late in the case evidence

24  bad faith. "Bad faith includes amendments filed frivolously or for an improper purpose," such as

25  to prolong litigation or to harass the opposing party, and/or amendments based on false

26  allegations. *Fresno Unified Sch. Dist. v. K.U.*, 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013). Bad

27  faith also includes instances when a party asserts a claim "without alleging any newly discovered

28  facts." *Id.* Additionally, courts consider amendments brought merely for the purpose of

15

1   circumventing a dispositive motion, like a motion for summary judgment, to be in bad faith.

2   *Fresno Unified Sch. Dist.*, 980 F. Supp. 2d at 1179; *see also Acri v. Int'l Ass'n of Machinists &*

3   *Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986).

4           The timing of this Motion suggests ESI brought this Motion to prolong the litigation and

5   avoid a ruling on Anchor's motion for summary judgment. Anchor filed an early summary

6   judgment motion in January 2022 on two narrow issues, including its statute of limitations

7   defense, which was denied without prejudice. On February 24, 2023, Anchor moved for leave to

8   file a motion for reconsideration of this Court's order denying its motion for summary judgment

9   based on evidence produced by ESI one month earlier unequivocally proving the statute of

10  limitations had lapsed when ESI filed this case. Dkt. 201. Approximately one week later on

11  March 3, 2023, before the Court could rule on the reconsideration motion, ESI filed its first

12  motion for leave to amend. *See* Dkt. 220. The Court denied Anchor's reconsideration motion on

13  April 4, 2023, but allowed it to "refile their motion for summary judgment at the close of

14  discovery." Dkt. 226.

15          Since April 2023, the parties have been engaged in extensive fact and expert discovery

16  and motions practice. The discovery cut-off has been extended multiple times, and consequently,

17  so has the deadline for Anchor to re-file its summary judgment motion. Ultimately, the summary

18  judgment deadline was set to May 15, 2024 and as that day approached ESI ran out of excuses

19  for extending the litigation and avoiding adjudication. So, on May 6, 2024—again, days before

20  Anchor filed its summary judgment motion—ESI finally brought its motion to amend the

21  pleadings that it has known about for over a year. This Motion is ESI's second attempt to raise

22  the same arguments this Court has already rejected in an attempt to avoid an adverse summary

23  judgment ruling.

24          Indeed, ESI's concessions prove there could be no other purpose. "A complaint guides

25  the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order

26  to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292

27  (9th Cir. 2000). But ESI admits the amendment "does not change or add parties to the case, does

28  not change or add claims." Mot. at 6. Tellingly, ESI adds new factual allegations related to a

16

theory of indirect misappropriation, but ESI does not modify its direct misappropriation causes of action or add a cause of action for indirect misappropriation. Mot. at 10. Either ESI is misrepresenting its intention not to conduct additional discovery and claims, in which case this Motion would cause ever further undue prejudice to Anchor (*see infra* Section IV.C.3), or the proposed pleading's only purpose is a dilatory one—to delay adjudication of its baseless claims.

ESI has spent more than three and half years in discovery searching for a colorable theory of misappropriation, and still has failed to adduce meaningful support for its claims. ESI should not be allowed to delay things yet again.

### 3.   Allowing the Proposed Amendment Will Prejudice Anchor

The "most important" factor for the Court to consider in ruling on ESI's proposed amendment under Rule 15 "is prejudice to the nonmoving party." *See Armas*, 2019 U.S. Dist. LEXIS 123652, at *7. "When after a period of extensive discovery, a party proposes a late-tendered amendment that would fundamentally change the case to incorporate new causes of action and that would require [new] discovery . . ., the amendment may be appropriately denied as prejudicial to the opposing party." *Fresno Unified Sch. Dist.*, 980 F. Supp. 2d at 1178. This Court has found undue prejudice when allowing an amendment would render a pending summary judgment motion moot, as is what ESI is attempting here. *See Arebalo v. Apple, Inc.*, No. 19-cv-03034-EJD, 2021 U.S. Dist. LEXIS 69628, at *7 (N.D. Cal. Apr. 9, 2021) (Davila, J.).

In its first motion for leave to amend, filed March 3, 2023, ESI sought to add KLA as a party and propose new causes of action. As Anchor explained in its opposition, the proposed amendments would have expanded discovery to implicate KLA products, effectively requiring the Court to re-open discovery. Dkt. 220 at 12. Indeed, ESI had "failed for two years to persuade the Special Master that its case involves products beyond HPA," and sought to bring a new pleading that "would effectively re-open discovery." *Id.* Having failed in its attempt to bring in KLA as a defendant, ESI now claims to have discovered that UMC and ███ conspired to misappropriate ESI's alleged trade secret and provide it to Anchor.

As discussed above, ESI has been unable to manufacture any more excuses for prolonging discovery. This Court refused ESI's first attempted amendment, in part, because

17

1   "such a dramatic expansion [of discovery] would be clearly prejudicial to Defendants, who had

2   operated under a narrower scope of discovery for nearly two years." Dkt. 297 at 6. ESI's claims

3   that "there will be no need for further discovery" if its Motion is granted rings hollow. Dkt. 313

4   at 10. ESI is correct that "discovery has centered for months and years" on the subject of the

5   proposed amendment. Still, ESI has adduced no meaningful support for its claims or for the

6   participation of UMC and ████ in the alleged wrongdoing. Thus, ESI's claim that it will not

7   seek additional discovery or later move for leave to add new claims or parties is not credible and

8   says nothing about Anchor's right to pursue additional discovery if ESI is permitted to amend its

9   pleadings.

10      Moreover, there is no evidence that would negate or otherwise have any bearing on the

11  statute of limitations defense, which Anchor presented in its May 15 summary judgment motion.

12  *See* Dkt. 328 at 10-14. As was the case in *Arebalo*, "[a]llowing amendment would mean

13  discarding that pending motion, requiring Defendant to file a new responsive pleading, including

14  a motion to dismiss, and then require Defendant to file a new motion for summary judgment.

15  This motion practice will result in considerable additional time and expense and is prejudicial to

16  Defendant." 2021 U.S. Dist. LEXIS 69628, at *7. And none of that would alter the inevitable:

17  that Plaintiff's claims are barred, conclusively, by the statute of limitations.

18      This late-stage amendment will seriously prejudice Anchor without facilitating a

19  resolution on the merits, and this Motion should therefore be denied.

20              **4.    ESI's Proposed Amendments Are Futile**

21      Leave to amend is properly denied if the proposed amendment is futile or would be

22  subject to dismissal. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir.

23  2011). When determining futility, the Court must apply the same standard as would apply in a

24  motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.

25  1988). A "proposed amendment is futile if no set of facts can be proved under the amendment

26  that would constitute a valid claim." *Armas*, 2019 U.S. Dist. LEXIS 123652, at *9 (quoting *In re*

27  *Cir. Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997)).

28      ESI's proposed amendments introduce an entirely new theory of liability—one of indirect

18

1  misappropriation. Courts "distinguish between direct trade secret misappropriation claims and

2  indirect trade secret misappropriation claims, depending on whether a plaintiff alleges that a

3  defendant obtained the trade secrets directly from the plaintiff or indirectly from someone other

4  than plaintiff." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020)

5  (internal quotation marks and citation omitted). To state a claim for indirect trade secret

6  misappropriation under DTSA and CUTSA, "a plaintiff must allege facts showing that a

7  defendant: (a) knew or had reason to know before the use or disclosure that the information was

8  a trade secret and knew or had reason to know that the disclosing party had acquired it through

9  improper means or was breaching a duty of confidentiality by disclosing it; or (b) knew or had

10  reason to know it was a trade secret and that the disclosure was a mistake." *Id.* at 78-79.

11         Here, the SAC alleges only that Anchor directly misappropriated ESI's trade secrets by

12  secretly hiring Lin, and the theory advanced by the proposed amendments is that UMC and

13  ███████ conspired to give ESI's purported trade secrets to Anchor. *See supra* Section II.A. Yet

14  ESI does not seek to add an independent cause of action under which it could pursue this new

15  indirect misappropriation theory. The proposed allegations are utterly irrelevant to the causes of

16  action in the proposed pleading, as the CUTSA cause of action alleges "Defendant Anchor,

17  acting in concert with [Defendant] Lin, improperly acquired ESI's Trade Secrets when Lin

18  improperly downloaded ESI's Trade Secrets" (Dkt. 313-21, ¶ 142) and the DTSA cause of action

19  alleges "Lin's misappropriation of trade secrets is actionable under the Defend Trade Secrets

20  Act" (Dkt. 313-21, ¶ 151). In any case, the proposed third amended complaint would not survive

21  a motion to dismiss even if an indirect misappropriation claim had been pled.

22         ESI does not even acknowledge that indirect misappropriation is a distinct cause of action

23  involving different elements and different facts. Instead of asserting this claim independently—

24  for example, in the alternative to its direct misappropriation theory—ESI proposes to drop in

25  allegations utterly irrelevant to its direct misappropriation claim without explanation. Indeed, the

26  proposed third amended complaint lacks even vague or conclusory allegations about Anchor's

27  supposed knowledge or motives, and such allegations still would be insufficient to state a valid

28  claim.

19

OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO AMEND                                    Case No. 5:20-CV-06846-EJD (NC)

1    Lastly, and as noted above, the proposed amendments are futile because they do not

2  present a cause of action that survives the statutes of limitation. Like the causes of action in the

3  operable SAC, the proposed amended causes of action are based on supposed misappropriations

4  that took place more than a decade ago, which ESI demonstrably knew about since at least 2013,

5  some seven years before it filed its original complaint. Dkt. 328 at 11-14.

6          **5.    ESI's Previous Motion for Leave to Amend Failed**

7    As established above, this Motion is ESI's second attempt to amend the pleadings by

8  raising the same arguments this Court has already rejected. If anything, ESI's argument is

9  weaker now than it was previously: after extensive additional discovery, ESI fails to identify any

10  allegations it could not arguably have raised years earlier, and the resulting prejudice to Anchor

11  will be greater than it would have been if the SAC had been amended in March 2021 prior to the

12  close of fact discovery.

13  **V.    CONCLUSION**

14    For the foregoing reasons, Anchor respectfully requests the Court deny ESI's motion in

15  its entirety.

16

17                              Respectfully submitted,

18  Dated:  May 22, 2024              VENABLE LLP

19

20                              By: */s/ William A. Hector*_____
                                    William A. Hector
21                                  *Attorneys for Defendants*
                                    *Anchor Semiconductor, Inc. and*
22                                  *Chenmin Hu*

23

24

25

26

27

28

OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO AMEND                          Case No. 5:20-CV-06846-EJD (NC)