John van Loben Sels (Bar. No. 201354)
jvanlobensels@thoits.com
Jeremy Hanika (Bar No. 261862)
jhanika@thoits.com
Brittany M. Nobles (Bar No. 343513)
bnobles@thoits.com
THOITS LAW
400 Main Street, Suite 250
Los Altos, CA 94022
Telephone: (650) 327-4200
Facsimile: (650) 325-5572

*Attorneys for Plaintiff,*
ELITE SEMICONDUCTOR, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ELITE SEMICONDUCTOR, INC. a Taiwan Corp., <br><br> Plaintiff, <br><br> v. <br><br> ANCHOR SEMICONDUCTOR, INC., a California corporation, Chenmin Hu, and DOES 1 through 10, <br><br> Defendants. | Case No. 5:20-cv-06846-EJD <br><br> **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT.................................................................................................................2
    A. Legal Standard................................................................................................2
    B. There is Good Cause to Permit Plaintiff to Amend its Complaint .........................3
    C. Each of the *Forman* Factors Favor Amendment Under Rule 15.............................6

        a. *Defendants Have Not Shown that Plaintiff Unduly Delayed in Seeking Leave to Amend* ...................................................... 6

        b. *Plaintiff's Request for Amendment is made in Good Faith*................. 6

        c. *There is Not A Deficient Complaint Requiring Amendment* ............... 8

        d. *Defendant Has Not Demonstrated it Will be Prejudiced by Amendment* ..................................................................................... 8

        e. *Plaintiff's Amended Claims are Likely to Succeed on the Merits* ............................................................................................. 9

III. CONCLUSION .........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*DCD Programs, Ltd. v. Leighton*,
　833 F.2d 183 (9th Cir. 1987) ............................................................................................2

*Downes-Covington v. Las Vegas Metro Police Dep't*,
　2023 WL 5624037 (D. Nev. Aug. 29, 2023) ..................................................................3, 4

*Grenetech, Inc. v. Abbot Labs*,
　127 F.R.D. 529 (N.D. Cal. 1989) ....................................................................................3, 6

*Johnson v. Mammoth Recreations, Inc.*,
　975 F.2d 604 (9th Cir. 1992) ...........................................................................................3, 4

*Jones v. PGA Tour, Inc.*,
　2023 WL 2173417 (N.D. Cal. Feb. 21, 2023) ..................................................................2, 6

*Lammey v. Leader Grp. Enterprises, LLC*,
　2021 WL 11107736 (C.D. Cal. Jul. 13, 2021) ...................................................................3

*O'Shea v. Epson America, Inc.*,
　2010 WL 4025627 (C.D. Cal. Oct. 12, 2010) ............................................................6, 7, 9

*Parapluie, Inc. v. Mills*,
　555 F. App'x 679 (9th Cir. 2014) ...................................................................................3, 4

*In re Phan*,
　2015 WL 4183493 (C.D. Cal. Jul. 10, 2015) ......................................................................9

*Sacrament Collective Pentecostal Church, Inc. v. County of Santa Cruz*,
　2023 WL 7178174 (N.D. Cal. 2023) ..................................................................................9

*Schaired v. Monterey Fin. Servs., Inc.*,
　2023 WL 376007 (S.D. Cal. Jan. 24, 2023) ........................................................................2

*Turrey v. Vervent, Inc.*,
　2022 WL 19001976 (S.D. Cal. Sept. 26, 2022) ..................................................................9

**State Statutes**

Cal. Civ. Code § 52.1 .................................................................................................................10

**Rules**

Fed. R. Civ.P. 15 ..................................................................................................................3, 4, 6

Fed. R. Civ. P. 16(b)(3) ............................................................................................................3

Fed. R. Civ.P. 16(b)..................................................................................................................3

Fed. R. Civ.P. 16(b)(4) .........................................................................................................1, 3

Fed. R. Civ.P. 15(a)(2) .........................................................................................................1, 2

Fed. R. Civ.P. 16 ........................................................................................................3, 4, 5, 6

# I. INTRODUCTION

Defendants Anchor Semiconductor, Inc. and Chenmin Hu ("Anchor" or "Defendant") all but admit in their opposition that they withheld and concealed materials relevant to their misappropriation of Plaintiff Elite Semiconductor, Inc.'s ("Elite" or "Plaintiff") trade secrets until long after the operative complaint was filed, long after fact discovery closed, and long after the date set forth in this Court's scheduling order for amendment of the complaint. (*See e.g.* Defendants' Opposition to Plaintiff's Motion for Leave to File Amended Complaint Pursuant to Rule 15(a)(2), ECF No. 342 ("Opp."), at 5, 9, 10-12). Indeed Defendants do not even deny that they produced materials related to Plaintiff's proposed amendment as late as April 11, 2024. (Opp. at 10).

Yet Defendants would fault Plaintiff for not immediately seeking leave to amend when it first had a suspicion, based on the dense and complex materials involved in this litigation including over forty-two thousand lines of source code, that Defendants misappropriated Plaintiff's trade secrets. (Declaration of Jeremy Hanika In Support of Plaintiffs' Reply In Further Support of Motion for Leave to File Amended Complaint ("Hanika Decl.") Exhibit A ("Krein Rebuttal Report") at ¶ 180). Had Plaintiff done so, Defendants undoubtedly would have opposed such amendment by claiming there was no factual or legal basis for such an amendment. Plaintiff also undoubtedly would have had to amend its complaint many more times if it sought leave every time Defendant's trickle of document productions contained materials or testimony indicating new potential wrongdoing by Defendants. Instead, Plaintiff did the responsible thing: it made *sure* that it had clear evidence of Defendants wrongdoing and made *sure*, as best it could, that Plaintiff would not need to amend *again* when new information was disclosed. It was Defendants' blatant and gross misconduct during discovery that put Plaintiff in this "Catch-22", and Defendants cannot now complain that Plaintiff unduly "delayed" in seeking leave to amend. Defendants' discovery misconduct should not be rewarded.

*First*, Defendants argue that Plaintiff has not demonstrated "good cause" for amendment under Federal Rule of Civil Procedure 16(b)(4). But that simply is not the case. The evidence shows that Defendants withheld documents Plaintiff relied on to form the factual bases for their proposed amendment up to, and until as late as April 2024, far after the deadline to amend set forth by this court in the scheduling order.

*Second* and relatedly, Defendants argue that Plaintiff "unduly delayed" in seeking leave to amend. That argument disregards the reality of the situation surrounding the unconscionably late production of materials and records by Defendant.

*Third*, Defendants' claim of some sort of bad faith "conspiracy" to prejudice them is not serious. The only evidence Defendants cite in support of their theory is the supposed "timing" of the request relative to the date of their Motion for Summary Judgment. Again, this argument disregards the fact that Plaintiff was paralyzed by Defendants' discovery misconduct. Furthermore, the proposed amendment will not impact the centerpiece of Defendants' summary judgment motion, the statute of limitations defense. Thus, Defendants will not be prejudiced by permitting amendment.

*Finally*, Plaintiff's proposed amendment is not futile. Defendants' opposition does not appear to dispute that Plaintiff's proposed amendment alleges *facts* which support a claim for misappropriation of trade secrets. Instead, Defendants argument is that the headings used in the Complaint do not specify that the "misappropriation" cause of action is based on "indirect misappropriation". There is no such requirement. Further, Defendants have been unable to offer any substantive reason why the proposed amendment is futile. Thus, Defendant has failed to meet their burden to establish that leave to amend should not be granted.

**II. ARGUMENT**

    **A. Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) dictates that a trial court "should freely give leave [to amend] when justice so requires." This decision rests "within the trial court's sound discretion" but must be guided by the general principle that the Court should decide issue on the merits rather than on the pleadings, or based on technicalities. *Schaired v. Monterey Fin. Servs., Inc.*, 2023 WL 376007 at *3 (S.D. Cal. Jan. 24, 2023); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). As Defendants acknowledge, this process is guided by a five part test referred to as the "Forman Factors." *Jones v. PGA Tour, Inc.*, 2023 WL 2173417, at *1 (N.D. Cal. Feb. 21, 2023). These factors are (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment." *Id*. However, it is the party <u>opposing</u> amendment (in this case,

Defendants) that has the burden of establishing each of these factors. *See Grenetech, Inc. v. Abbot Labs*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

Separate and apart from the standards dictating when pleading amendments are proper, Federal Rule of Civil Procedure 16(b) governs the Court's actions with respect to case scheduling. *Lammey v. Leader Grp. Enterprises, LLC*, 2021 WL 11107736, at *1 (C.D. Cal. Jul. 13, 2021) ("After the moving party has demonstrated diligence under Rule 16, the court applies the standard under Fed. R. Civ.P. 15 ('Rule 15') to determine whether the amendment is proper.") Under Rule 16(b), a judge is required to issue a scheduling order containing, among other things, the date on which the parties must (1) amend the pleadings, (2) complete discovery, and (3) file motions. Fed. R. Civ. P. 16(b)(3). However, these dates are not set in stone. Rule 16(b) also provides that this schedule may be modified where there is "good cause" and the judge consents. Fed. R. Civ. P. 16(b)(4). In this context, the phrase "good cause" has a specialized meaning. Specifically, the focus of this inquiry is whether the party seeking to modify the schedule could have "reasonably met" the deadline set forth in the scheduling order if they had acted diligently. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"); *Parapluie, Inc. v. Mills*, 555 F. App'x 679, 682-83 (9th Cir. 2014) (same); *Downes-Covington v. Las Vegas Metro Police Dep't*, 2023 WL 5624037, at *5 (D. Nev. Aug. 29, 2023). In other words, if the party *could have* met the deadline set in the scheduling order with diligence, the Court *may* find there is no good cause. On the other hand, if the party seeking to leave ***could not*** have met the deadline in the scheduling order even with diligence, there is "good cause" for the delay.

**B. There is Good Cause to Permit Plaintiff to Amend its Complaint**

Defendants first argue that this Court cannot exercise its discretion and permit Plaintiff to amend their complaint to conform to the facts uncovered during discovery because they supposedly lack "good cause" to do so. As set forth in Plaintiff's initial motion, Plaintiff did not unnecessarily delay in seeking leave to amend, but sought to do so when the entire factual basis

for the proposed amendment became clear.[1]  The scheduling order entered by this Court states that any amendments to the complaint must be made on or before October 11, 2021. (ECF No. 92).  However, throughout the entire course of this litigation, Defendants have engaged in a concerted effort to deny Plaintiff access to the information they would need to understand the true nature of Defendants' conduct.

For example, due to significant delays and resistance in making appropriate productions, Plaintiff was not able to complete its inspection of Defendants' source code until approximately December 6, 2023, just a few months before Plaintiff sought to amend the complaint.  Defendants contend that Plaintiff knew about the facts relevant to this claim by "no later than January 21, 2023" because that is when Plaintiff's "source code expert" completed an "initial review" of Anchor's code.  (Opp. at 11).  But this argument assumes that an "initial review" of incredibly complex source code which requires detailed analysis of abstract data and comparison to other sources on tens of thousands of lines of code is enough to unwind a complete trade secret theft scheme.  That simply is not the case.  Plaintiff's expert needed substantial time to conduct a thorough review of the source code and other comparison points before it was able to uncover the true nature of Defendants' misconduct.

But even if the Court were to accept January 21, 2023 as the date on which Plaintiff was on notice of Defendants' conduct (it should not), it cannot be disputed that January 21, 2023 is far beyond the October 11, 2021 date for amendment in the scheduling order.  Thus, no matter how quickly Plaintiff acted, it never could have made the amendment request by the date set forth in the scheduling order.  Accordingly, there can be no "undue delay" as that term is defined in these circumstances. . *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"); *Parapluie, Inc. v. Mills*, 555 F. App'x 679, 682-83 (9th Cir. 2014) (same); *Downes-Covington v. Las Vegas Metro Police Dep't*, 2023 WL 5624037, at *5 (D. Nev. Aug. 29, 2023).

---

[1] Plaintiff acknowledges that it did not specifically describe this as a Rule 16 analysis.  However, Plaintiff's discussion of the "undue delay" under the Rule 15 standard applies equally here.

But even if Plaintiff could have instantly reviewed the source code as Defendants suggests, and even if the Court inquired into any "undue delay" as that term may be used in contexts *besides* Rule 16, the source code analysis alone would not have been sufficient for Plaintiff to uncover the details surrounding Defendants' misconduct. Rather, Plaintiff needed other documentary evidence which provided the relevant *context* to that source code. Nonetheless, Defendants intentionally sabotaged Plaintiff's efforts to review that information in a timely manner. Despite multiple orders compelling their production, Defendants did not produce documentation from three key fact witnesses in China until December 2023, more than six months after fact discovery closed on May 10, 2023. And shockingly, even that production was not complete. Defendants produced an additional set of documents on April 11, 2024, over a year after the close of fact discovery and less than a month before Plaintiff filed the current motion.

The documents produced on April 11, 2024, included a coordinate conversion script that UMC obtained from Xilinx ("Xilinx script") and sent to Defendants in August 2010. (Hanika Decl. ¶ 5) This Xilinx script was the subject of Defendants' motion to compel that was granted by the Special Master on October 18, 2023. (Dkt. 280). Defendants withheld the Xilinx script until *after* the submission of the experts' opening, amended, and rebuttal reports on March 12, 2024; therefore, Plaintiff could not rely on its expert to amend its complaint with respect to the late produced Xilinx script. (Hanika Decl. ¶ 6). Plaintiff is still prejudiced with respect to the Xilinx script. These April 11, 2024 documents, including the Xilinx script, are important to the proposed amendment because they provide direct evidence that UMC transferred Plaintiff's trade secret coordinate conversion script (for Local CAA) to Defendants in August 2010. This Xilinx script shows how Defendants integrated Plaintiff's trade secrets into the Accused Products by December 31, 2010. Without these documents, and the Xilinx script, Plaintiff lacked a crucial piece of evidence that shows how its trade secrets were transferred to Defendants, and the fact that the code was written in Perl (a C++ compatible language) shows that Xilinx modified Plaintiff's trade secrets for integration into the Accused Products. In essence, the Xilinx script was the missing link between Plaintiff, UMC, and Defendants.

Without these incredibly late produced materials, Plaintiff would have been unable to

comprehend the full scope of Defendants conduct and properly amend its complaint. And there is no reasonable argument that there was "undue delay" between Defendants' completion of this production and Plaintiff's motion for leave. Thus, Defendants' argument regarding Rule 16 is meritless.

### C. Each of the *Forman* Factors Favor Amendment Under Rule 15

As set forth above, Plaintiff satisfies the "good cause" standard set forth in Section 16. Therefore, the Court's duty is to analyze whether Plaintiff satisfies the requirements under Section 15 as clarified through the *Forman* Factors. As set forth in Plaintiff's opening brief each of these requirements are satisfied. And Defendants' opposition fails to provide any meaningful response despite having the burden on this issue. *Grenetech, Inc. v. Abbot Labs*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

#### a. *Defendants Have Not Shown that Plaintiff Unduly Delayed in Seeking Leave to Amend*

Defendants first argue that Plaintiff has "unduly delayed" in seeking leave from this Court to amend its complaint. But the only "support" they provide for this position is their misleading argument that Plaintiff delayed "over a year" in seeking relief. (Opp. at 15). As explained above, that claim is baseless. Even if the Court were to disregarding the important production Defendants made just days before Plaintiff filed this motion, it cannot be argued in good faith that Plaintiff had evidence needed to amend the complaint until December 2023. Given the complexity of the legal issues presented here, the time between December 2023 and April 2024 is a reasonable "delay" on seeking amendment. *See Jones v. PGA Tour, Inc.*, 2023 WL 2173417 at *2 (N.D. Cal. Feb. 21, 2023) ("There is no undue delay where, as here, a party seeks to amend its claim based on new information received during discovery.") Accordingly, this factor weighs in favor of granting Plaintiff leave to amend. But even if the Court were to believe there were delay, it is a general rule that undue delay, "without more, usually fails to justify denial of leave to amend." *O'Shea v. Epson America, Inc.*, 2010 WL 4025627, at *2 (C.D. Cal. Oct. 12, 2010).

#### b. *Plaintiff's Request for Amendment is made in Good Faith*

Defendants next argue that Plaintiff's request should be denied because Plaintiff

supposedly did not act "in good faith."  As Defendants cannot identify any evidence that Plaintiff acted in anything but good faith, Defendants' argument on this point reads like little more than a conspiracy theory.  *Compare O'Shea v. Epson America, Inc.*, 2010 WL 4025627, at *2 (C.D. Cal. 2010) (arguing that the request to amend was in bad faith because the purpose "included tactics such as adding a defendant for the purpose of defeating diversity jurisdiction.")

Defendants only "evidence" of bad faith is the timing of this Motion.  Specifically, they argue that the timing of the filing "suggests ESI brought this Motion to prolong the litigation and avoid a ruling on Anchor's motion for summary judgment." (Opp. at 16-17).  In other words, Defendants argue that this motion is some sort of "surprise tactic" designed to catch Defendants off balance at the end of the case.  (Opp. at 16-17) (Arguing that Plaintiff's motion was filed tactically because "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

But as explained in detail above and in its opening brief, Plaintiff became aware of the facts justifying the proposed amendment only relatively recently.  That is the real reason behind the "timing" of the motion.  Defendants can produce no evidence—other than wild conjecture and conspiracy theories—demonstrating otherwise.

Furthermore, if the Court were to take Defendants' argument at face value and believe that this motion was designed to catch Defendants "off balance" by presenting new claims that they were unaware of, that argument is contradicted by arguments Defendants make elsewhere in their opposition.  Defendants argue throughout their opposition that Plaintiff somehow had all of the evidence needed to pursue this theory months, if not years, before this motion was filed.  Indeed, Defendants take the time to complain in their opposition that the special master permitted Plaintiff to conduct discovery into this theory.  (*See* Opp. at 4-5).  Defendants cannot have it "both ways.  Either Plaintiff *was* on notice of facts supporting their claim, the parties knew that was Plaintiff's theory for months, and discovery was conducted on this theory, or Defendants were caught off guard by a novel legal theory they were unaware of.  That Defendants' argument creates this paradox demonstrates that their argument of bad faith has no foundation.

-7-    Case No. 5:20-cv-06846-EJD
REPLY ISO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

### c. *There is Not A Deficient Complaint Requiring Amendment*

As set forth in Plaintiff's opening brief, there is presently no deficient complaint that requires amendment to survive the Federal Rules' pleading standard. As Defendants do not even attempt to argue in their opposition that there is, this point has effectively been conceded.

### d. *Defendant Has Not Demonstrated it Will be Prejudiced by Amendment*

Defendants' opposition concedes that the single most important factor in this analysis is whether the party opposing amendment will suffer prejudice. However, the *only* argument Defendants make to support their claim of prejudice is that Plaintiff *might* seek additional discovery into the newly pled theory. (Opp. at 17-18). But Plaintiff has never once said that it will seek additional discovery, and can say here definitively that *it will not*. Defendants' stated fear that "ESI's claim that it will not seek additional discovery . . . is not credible" is completely unfounded. And any concerns about that could be cured by this Court simply definitively stating it will not allow additional discovery to be conducted; indeed, none is needed. While Plaintiff spent years attempting to obtain reasonable discovery responses and productions from Defendants, the discovery they did conduct ultimately provided the factual basis for the newly sought cause of action. Indeed, as stated above, Defendants concede that discovery into the issues laid out in the amended complaint *already occurred*. (*See* Opp. at 4-5). Thus, Defendants present no meaningful evidence that they will suffer "prejudice."

Finally, Defendants half-heartedly argue that they would be prejudiced because there is a Motion for Summary Judgment pending, and Defendants believe they will win on their statute of limitations defense. Plaintiff's opposition to that motion for summary judgment will speak for itself, and demonstrates that Defendants' statute of limitations defense is unfounded. Without reiterating all of those points here, Plaintiff disputes Defendants' argument. But irrespective of whether Plaintiff is granted leave to amend, the crux of Defendants' motion is that they believe the statute of limitations expired, barring Plaintiff's claims. This issue applies equally to the now operative complaint and the proposed amended complaint. The proposed amendment to the complaint does not affect the statute of limitations defense, Defendants' evidence and argument in support of that defense, or Plaintiff's opposition to it. In other words, resolution of the pending

Motion for Summary Judgment will be the same irrespective of which of the two complaints is "active." Defendants' argument is simply superfluous and does not in any way demonstrate that Defendants will suffer any sort of "prejudice."

### e.  *Plaintiff's Amended Claims are Likely to Succeed on the Merits*

Defendants' last argument is that the amendments proposed by Plaintiff are "futile" and would be "subject to dismissal." (Opp. at 18). But that simply is not the case. For the purposes of this motion, a proposed amendment is deemed futile "if not set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Turrey v. Vervent, Inc.*, 2022 WL 19001976, at *1 (S.D. Cal. Sept. 26, 2022). As Defendants' opposition recognizes, this inquiry, in essence, applies standards akin to that on a motion to dismiss, looking to whether a claim can "be stated" under the newly alleged facts. *O'Shea v. Epson America, Inc.*, 2010 WL 4025627, at *4 (C.D. Cal. Oct. 12, 2010) ("Because Defendants failed to establish that no set of facts can be proved under the proposed TAC that would constitute a valid and sufficient claim against Seiko Epson, the Court therefore finds that Plaintiffs' proposed amendment is not futile.")

Defendants' stated "concern" related to futility does not appear to be substantive. Rather, the concern appears to lie in the fact that, while facts establishing a claim for indirect misappropriation claim are stated, the proposed Third Amended Complaint does not add a newly labeled "cause of action" for indirect misappropriation and instead, ties the claim to Plaintiff's First Cause of Action alleging misappropriation of trade secrets. (*See* Opp. at 19 ("Instead of asserting this [direct misappropriation] claim independently—for example, in the alternative to its direct misappropriation theory—ESI proposes to drop in allegations utterly irrelevant to its direct misappropriation claim without explanation.").)

Defendants have failed to cite any authority (as there is none) for the authority that the "heading" of the cause of action is dispositive as to which sub-type of a misappropriation claim can be pursued. Defendants seemingly acknowledge that Plaintiff's new proposed factual allegations sufficiently state a claim for indirect misappropriation. That is the end of the inquiry. *See In re Phan*, 2015 WL 4183493, at *2 (C.D. Cal. Jul. 10, 2015) (disregarding heading on cause

of action and looking to the substance of what is pled); *Sacrament Collective Pentecostal Church, Inc. v. County of Santa Cruz*, 2023 WL 7178174, at *4 (N.D. Cal. 2023) (finding Plaintiff's Fourth Cause of Action to seek relief under Cal. Civ. Code § 52.1 despite that provision never being mentioned in the description of the cause of action). There is no reason why a new cause of action needs to be added specifically identifying "indirect misappropriation" as the sub-legal theory of "misappropriation" Plaintiff will pursue when Defendants do not dispute that the elements are pled.

Finally, Defendants argue that any proposed amendment as futile because the statute of limitations prohibits Plaintiff's proposed claims. This issue will be decided on Defendants' motion for summary judgment. Plaintiff refers this Court to its upcoming briefing on this issue which demonstrates that Defendants' statute of limitations defense is meritless.

## III. CONCLUSION

Defendants should not be permitted to benefit from their systematic discovery misconduct. Plaintiff sought leave to amend its complaint to add new detailed allegations concerning Defendants' misappropriation timely after it obtained materials from Defendants supporting that claim following a painstaking discovery process. Due to Defendants' misconduct, there is no feasible circumstance under which Plaintiff could have met the deadline set forth in the Court's scheduling order to amend their complaint. Thus, it has good cause to have not moved within that timely manner. Furthermore, each and every one of the *Forman* factors favors permitting Plaintiff to amend their complaint. For the reasons set forth herein and in Plaintiff's initial motion, Plaintiff respectfully requests that this Court grant it leave to find a Third Amended Complaint.

Dated: May 28, 2024

Respectfully submitted,
**THOITS LAW**

By:  */s/ John van Loben Sels*
John van Loben Sels
*Attorneys for Plaintiff,*
ELITE SEMICONDUCTOR, INC.