William A. Hector (SBN 298490)
wahector@venable.com
Amit Rana (SBN 291912)
arana@venable.com
Philip T. Sheng (SBN 278422)
ptsheng@venable.com
Harry Libarle (SBN 346020)
hllibarle@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

*Attorneys for Defendants*
*Anchor Semiconductor, Inc. and Chenmin Hu*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ELITE SEMICONDUCTOR, INC. a Taiwan Corp.,<br><br>Plaintiff,<br><br>v.<br><br>ANCHOR SEMICONDUCTOR, INC., a California corporation, CHENMIN HU, and DOES 1 through 10,<br><br>Defendants. | Case No. 5:20-cv-06846-EJD (NC)<br><br>**DEFENDANTS ANCHOR SEMICONDUCTOR, INC.'S AND DR. CHENMIN HU'S REPY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   June 27, 2024<br>Time:   9:00 a.m.<br>Dept:   Courtroom 4, 5th Floor<br>Judge:   Hon. Edward J. Davila<br><br>Complaint filed:  September 30, 2020<br>Trial date:            None<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

Page

I. SUMMARY JUDGMENT SHOULD BE GRANTED ON THE STATUTE OF LIMITATIONS ................................................................................. 2

    A. Anchor's Statute of Limitations Arguments Are Consistent with Its Arguments Regarding No Liability for Misappropriation .......................... 2

    B. There Are No Disputed Issues of Material Fact as to the SOL ....................... 4

    C. The Anchor Application Did Not Change Between July 2013 and 2019 .................................................................................................................. 6

    D. ESI's Cited Cases Are Inapposite .................................................................... 7

    E. ESI's Circa January 2017 Letters Independently Demonstrate Awareness of the Supposed Misappropriation Over Three Years Before Case Filing ........................................................................................... 9

    F. There Was No Fraudulent Concealment ......................................................... 9

    G. ESI's Sworn Interrogatory Responses Are A Sham Affidavit ...................... 10

II. ESI CANNOT MEET ITS BURDEN OF SHOWING THAT ANCHOR HAD ACCESS TO ESI'S TRADE SECRETS ........................................................... 11

III. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE ANCHOR HAD NO KNOWLEDGE OF THE ALLEGED MISAPPROPRIATION AND THERE WAS NO DUTY OF CONFIDENTIALITY ................................... 12

IV. ESI'S ATTORNEYS' TESTIMONY SHOULD BE EXCLUDED .......................... 14

    A. The Declaration of JvLS Is Rife with Inadmissible Testimony ..................... 14

    B. Mr. Hanika's Patent Prosecution Expert Opinions Should Be Excluded ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   873 F. Supp. 2d 1192 (N. D. Cal. 2012) ...................................................................................8

*Cisco Sys., Inc. v. Chung*,
   No. 19-cv-07562-PJH, 2023 WL 2622155 (N.D. Cal. Mar. 22, 2023) ...................................12

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ................................................................................................10

*Corbrus, LLC v. 8th Bridge Cap., Inc.*,
   No. 2:19-cv-10182-CAS, 2022 WL 4239055 (C.D. Cal. Sept. 13, 2022) ...............................10

*Cypress Semiconductor Corp. v. Superior Ct.*,
   163 Cal. App. 4th 575 (2008) .....................................................................................1, 4, 5, 11

*Express, LLC v. Fetish Grp., Inc.*,
   464 F. Supp. 2d 965 (C.D. Cal. 2006) ....................................................................................14

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) .....................................................................................3

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) ....................................................................................10

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   No. 08cv1992 AJB (MDD), 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ...............................10

*Gencarelli v. Twentieth Century Fox Film Corp.*,
   No. 2:17-CV-028180ODW (AJW), 2018 WL 376664 (C.D. Cal. Jan. 11,
   2018) .........................................................................................................................................3

*Heighley v. J.C. Penney Life Ins. Co.*,
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ..................................................................................15

*Javo Beverage Co. v. California Extraction Ventures, Inc.*,
   No. 19-CV-1859-CAB-WVG, 2019 WL 6467802 (S.D. Cal. Dec. 2, 2019) ...........................3

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) .................................................................................12

*Memry Corp. v. Kentucky Oil Tech., N.V.*,
   No. C-04-03843 RMW, 2007 WL 2746736 (N.D. Cal. Sept. 20, 2007) ..................................4

*Migliori v. Boeing N. Am, Inc.*,
   114 F. Supp. 2d 976 (C.D. Cal. 2000) ....................................................................................10

*Onyx Pharms., Inc. v. Bayer Corp.*,
  No. C 09-2145 MHP, 2011 WL 7905185 (N.D. Cal. May 10, 2011) ........................................8

*OrbusNeich Med. Co., Ltd., BVI v. Boston Sci. Corp.*,
  694 F. Supp. 2d 106 (D. Mass. 2010) ...................................................................................8

*Silbersher v. Allergan Inc.*,
  506 F. Supp. 3d 772 (N.D. Cal. 2020) ...................................................................................5

*Space Data Corp. v. Alphabet Inc.*,
  No. 16-cv-03260-BLF, 2019 U.S. Dist. LEXIS 231718 (N.D. Cal. May 9,
  2019) ................................................................................................................................13

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
  No. C-04-3923 MMC, 2007 WL 420184 (N.D. Cal. May 18, 2005) ......................................8

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
  617 F. Supp. 2d 938 (N.D. Cal. 2007) ..............................................................................7, 8

*Voyager Indem. Ins. Co. v. Zalman N., Inc.*,
  668 F. Supp. 3d 990 (C.D. Cal. 2023) .................................................................................13

*Wang v. Palo Alto Networks, Inc.*,
  No. 3:12-cv-05579-WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ........................7, 8, 9

**Court Rules**

Fed. R. Civ. Proc. 8(b)(5) ................................................................................................................3

Fed. R. Civ. Proc. 11 ....................................................................................................................10

Fed. R. Civ. Proc. 56(e) ...............................................................................................................15

Fed. R. Evid. 701 ........................................................................................................................15

Fed. R. Evid. 702 ........................................................................................................................15

Fed. R. Evid. 703 ........................................................................................................................15

Local Rule 7-5...............................................................................................................................15

ESI presents no legitimate reason why defendants Anchor Semiconductor, Inc. and Chenmin Hu's ("Anchor") motion for summary judgment should not be granted. ESI spends the majority of its opposition addressing the statute of limitations ("SOL"), which is unsurprising as this is a straight-forward issue that is wholly dispositive of ESI's case. But its arguments are based on a fundamental misunderstanding of the law and a twisting of the factual record. ESI's primary argument is that the SOL defense is unavailable because Anchor disputes ESI's misappropriation allegations by arguing that it had no access to ESI's purported trade secrets and, if that is true, "the tort never occurred and the [SOL] never began to run." Dkt. 361 ("Opp.") at 7. In essence, ESI asks the Court to hold that a SOL defense is only available to a defendant who does not contest liability. This illogic is contrary to the law, which is clear that: "It is ***not*** the law that accrual of a cause of action depends upon the existence, as a matter of fact, of a winning claim." *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 585 (2008) (emphasis added).

In addition, ESI does not dispute that it was made aware of Anchor's published U.S. Patent Application No. 13/080,474 ("Anchor Application") in May 2013 when its attorneys sent ESI a letter analyzing that application. Instead, ESI argues that such knowledge was somehow insufficient to put it on notice of its claim against Anchor. But ESI completely ignores that its own operative complaint alleges that it was the Anchor Application that tipped it off to the supposed misappropriation in 2019. Dkt. 139 ("SAC") ¶¶ 85-87. What tipped ESI off in 2019 could not have failed to do so in 2013. Remarkably, ESI tries to skirt this by arguing for the first time that what made it suspicious in 2019 was "not the Application itself" but rather "the fact that [it] had been abandoned." Opp. at 22-23. That explanation makes no sense, and more fundamentally is contradicted by the SAC, which focuses repeatedly on ESI's learning of the Application, not of its abandonment.

Independent of the SOL, ESI points to no evidence to rebut Anchor's arguments on lack of access and independent development by Anchor, opting instead to circle back to its pending motion for sanctions which it speculates "may yet result in the imposition of adverse inferences" that would defeat Anchor's motion. Opp. at 27. For the reasons set forth in Anchor's opposition

(Dkt. 318), the sanctions motion has no merit.

Lastly, on the issue of no duty of confidentiality, ESI repeats its tired argument about Anchor's supposed "refus[al] to produce critical evidence" and points to what it calls evidence of "a one-way flow of technology flowing chronologically from ESI to UMC and ▮▮▮, and then to Anchor." Opp. at 29-30. These points have no merit, but more fundamentally, they are irrelevant to and in no way address the fact that there is no evidence of a confidential relationship between ESI and Anchor, UMC or ▮▮▮. There is also no evidence that Anchor had any reason to know that any technology it may have received was subject to a duty of confidentiality to ESI (assuming arguendo it received ESI's technology, which it did not). Absent those elements, there can be no trade secret misappropriation, providing yet another independent basis for granting summary judgment in Anchor's favor.

## I.  SUMMARY JUDGMENT SHOULD BE GRANTED ON THE STATUTE OF LIMITATIONS

ESI filed this case in September 2020. Dkt. 1. ESI's only justification for filing this case seven to ten years after its various alleged dates of misappropriation is that it "learn[ed] of" the Anchor Application in Fall 2019. Mot. at 12. There is no dispute that ESI had actual notice of and analyzed the Anchor Application in May-July 2013. Mot. at 12-14. The substance of the Anchor Application did not change between July 2013 and Fall 2019. Because ESI analyzed the Anchor Application—which ESI and its technical expert confirm put ESI on notice of the alleged misappropriation—no later than July 2013, the three-year SOL expired in July 2016 and ESI's claims are barred.

### A.  Anchor's Statute of Limitations Arguments Are Consistent with Its Arguments Regarding No Liability for Misappropriation

ESI's main contention is that Anchor's SOL argument is inconsistent with Anchor's independent derivation and no access arguments. *See* Opp. at 7–8, 13–14, 16–17, 25. As ESI would have it, Anchor's argument that it independently developed Local CAA and its SOL argument require "inherently . . . contradictory inferences" from the same evidence. Opp. at 13; *see id.* at 8. ESI's argument misstates both the law and the facts, and accepting its position would lead to the illogical result that a SOL defense is permitted only if a party admits it did, in fact,

1    violate the law in the manner alleged.

2    ESI's position that "[a]lthough the Rules allow [Anchor] to plead conflicting defenses,
3    they cannot introduce evidence and prevail on both these defenses at trial" is unsupported. Opp.
4    at 13. Tellingly, ESI cites no authority for this position. As ESI acknowledges, "the Rules allow
5    [Anchor] to plead conflicting defenses[.]" *Id.* Presumably, ESI is referring to Rule 8, which
6    permits pleading in the alternative. *See* Fed. R. Civ. Proc. 8(b)(5) ("A party may set out two or
7    more statements of a claim or defense alternatively or hypothetically."); *Gencarelli v. Twentieth
8    Century Fox Film Corp.*, No. 2:17-CV-028180-ODW (AJW), 2018 WL 376664, at *4 (C.D. Cal.
9    Jan. 11, 2018) (construing affirmative defenses that could not both pertain under the same set of
10   facts to be pleaded in the affirmative). But ESI does not explain how Rule 8 prevents a defendant
11   from pursuing "multiple" theories "reasonabl[y]" supported by the evidentiary record. Opp. at
12   13. Courts routinely consider evidence offered in support of a trade secret defendant's SOL
13   defense and evidence the alleged misappropriation never occurred in the same summary
14   judgment motion. *See, e.g.*, *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal.
15   2000) (granting summary judgment on defendant's SOL defense and concluding that "[e]ven if
16   [plaintiff's] [] claim for trade secret misappropriation were not barred by the [SOL], it still would
17   fail . . . because the undisputed facts establish that [the] alleged 'trade secrets' no longer were
18   'secret'"). ESI's position that "summary judgment is not available" where a defendant "make[s]
19   both arguments . . . on the same evidence" is made up and contrary to law. Opp. at 8.

20   Beyond that, Anchor's SOL and independent development defenses do not require
21   "contradictory" evidence or arguments. First, Anchor is not required to concede that it would
22   otherwise be liable for misappropriation of trade secrets to prevail on its SOL defense, as ESI
23   argues. *See, e.g.*, Opp. at 13, 17. Rather, Anchor need only show that ESI "discovered or by the
24   exercise of reasonable diligence should have [] discovered" the *alleged* misappropriation more
25   than three years before it filed this lawsuit. *Javo Beverage Co. v. California Extraction Ventures,
26   Inc.*, No. 19-CV-1859-CAB-WVG, 2019 WL 6467802, at *3 (S.D. Cal. Dec. 2, 2019).

27   Second, ESI plainly did "discover" facts it believes support its claims before bringing this
28   action (based on the allegations set forth in its complaint); the critical issue is when ESI should

have been put on notice of its claim. In other words, the SOL analysis ***focuses entirely on ESI's conduct***, not on the alleged conduct of Anchor. *See Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 WL 2746736, at *7 (N.D. Cal. Sept. 20, 2007) ("In the trade secret context, when there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion . . . , the limitations period begins, even though the plaintiff has not conducted such an investigation.") (internal citations omitted).

In support of its SOL defense, Anchor provides evidence that (1) ESI was aware of Anchor's patent application, which ESI admits put it on notice of Anchor's alleged misappropriation, in May-July 2013, and (2) ESI sent several notices accusing UMC and other competitors of intellectual property infringement in November 2016-January 2017, which ESI admits concerned ESI's trade secrets. That evidence relates entirely to ESI's conduct. By contrast, the crux of Anchor's independent development argument is whether Anchor misappropriated the alleged trade secrets or developed them on its own. As set forth in detail in Anchor's Motion (and discussed below), it was the latter, i.e., Anchor independently developed the allegedly misappropriated technology, and Anchor did not have access to ESI's technology. *See* Mot. at 18–21. This focuses on Anchor's conduct and has nothing to do with the question of when ESI knew of the facts that put it on notice of its purported claim. Anchor advancing its independent development and no access arguments in no way contradicts its position on the SOL. "It is not the law that accrual of a cause of action depends upon the existence, as a matter of fact, of a winning claim." *Cypress*, 163 Cal. App. 4th at 585.

**B.     There Are No Disputed Issues of Material Fact as to the SOL**

ESI tries to backstop its erroneous legal argument on the SOL by conjuring new issues of material fact, but its efforts fall short. For one, Anchor's fact witness testimony is irrelevant to the SOL and does not raise any material questions of fact. Opp. at 14-15. Anchor does not dispute that its fact witnesses testified that they have never had access to ESI's trade secrets. And Anchor's witnesses did not offer testimony regarding whether the Anchor Application would alert ESI to the purported misappropriation. As noted above, the SOL concerns ESI's awareness

1  of the alleged wrongdoing and no one else's, and is supported by ESI's own admissions in its
2  operative complaint and elsewhere. *Cypress*, 163 Cal. App. 4th at 587. Indeed, on this crucial
3  question, ESI's own technical expert has opined that ███████████████████
4  ████████████████████████████████████████████
5  ████████████████████████████████████████████████
6  █████████████████████████████████

7  While now conceding that it was aware of the Anchor Application and its substance in
8  2013, ESI claims that it had no reason to suspect trade secret misappropriation at that time. The
9  record shows the opposite. ESI does not dispute it was aware of Anchor in May 2013, when it
10 received the Anchor Application and a comparison between the Anchor Application's disclosure
11 of the allegedly misappropriated Local CAA feature and ESI's technology. *See* Dkt. 327-4 at 5
12 (citing Dkt. 200-5 at ESI_PL_000017-018; Dkt. 200-7 at ESI_PL_000017-018). ESI claims that
13 the Anchor Application could not have alerted ESI to the purported misappropriation in 2013
14 because there was nothing in "the public record" indicating the Application was assigned to
15 Anchor. Opp. at 21. Not so. The very cover of the application lists ***defendant Chenmin Hu***,
16 Anchor's CEO, as lead inventor, and the power of attorney filed with the Anchor Application is
17 signed by "***Chenmin Hu, President, Anchor Semiconductor, Inc.***" Dkt. 153-3 at 53 (emphasis
18 added). The Assignment disclosing defendant Anchor Semiconductor, Inc.'s ownership of the
19 Application was also filed with the USPTO in 2011. Dkt. 153-3 at 56-57. There was no need for
20 ESI to search the USPTO Assignment database in May 2013, as ESI suggests, because the
21 assignment was right there in the Anchor Application materials themselves on the day the
22 application was filed. *Id*. And all of these documents were together and publicly available when
23 ESI reviewed the Anchor Application in May-July 2013. *See* 153-3, Ex. 14 at 56-57 (publicly
24 accessible April 5, 2011 USPTO filing identifying "Anchor Semiconductor, Inc." as assignee of
25 Anchor Application), 43 (notice of publication); *Silbersher v. Allergan Inc.*, 506 F. Supp. 3d 772,
26 789 n.9 (N.D. Cal. 2020) ("In public PAIR, information is available relating to issued patents,
27 published patent applications . . . .") (citation omitted) (*rev'd on other grounds*).
28 ESI's contention that Anchor made "no showing comparing the substance" of the Anchor

1  Application and ESI's claims strains credulity. Anchor's Motion cites directly to ESI's technical
2  expert's statement that ███████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████████████████████
4  ██████████████████████████████████████████████████
5  Declaration of William A. Hector ("Hector Decl.") Ex. A ¶¶ 109-120. ESI's sworn interrogatory
6  responses present a chart comparing Anchor's Application and ESI's Trade Secrets. Dkt. 356-7
7  at ¶ 57 (citing ESI's Supp. Response to Dr. Chenmin Hu's Interrogatory No. 8). And years
8  before, ESI's prosecution counsel in May 2013 created a table comparing ESI's technology to
9  the Anchor Application disclosure of Local CAA and provided that table to ESI. Dkts. 200-5 at
10 ESI_PL_000017-018; Dkt. 200-7 at ESI_PL_0000017-018. From May 2013 through to now, ESI
11 has repeatedly concluded that the Anchor Application includes ESI's trade secrets. Any Anchor
12 expert testimony on this is irrelevant to ESI's awareness, which is paramount for the SOL.

13            **C.     The Anchor Application Did Not Change Between July 2013 and 2019**

14        ESI's attempts to conjure changed circumstances between July 2013, when it first
15 reviewed the Anchor Application, and Fall 2019, when it reviewed the same application again,
16 are meritless. The facts are straight-forward and easily verifiable: the Anchor Application in
17 May-July 2013 is identical to the disclosure of the Anchor Application in "October or November
18 2019." SAC ¶ 87. Anchor did not add anything to the Anchor Application record between July
19 2013 and Fall 2019. ESI was on notice of all of the information in May-July 2013 that
20 purportedly tipped off ESI to the misappropriation in the Fall of 2019.

21        In an effort to obfuscate things, ESI contends that when it filed its Complaint ESI thought
22 defendant Chenmin Hu was the former CEO of TSMC. Opp. at 12 (citing Dkt. 1 ¶ 21). That is
23 demonstrably false. ESI's Complaint states "Chenmin Hu is listed [as] one of the inventors of
24 the" Anchor Application. Dkt. 1 ¶ 78. And ESI's Complaint separately discusses TSMC's Chen
25 Ming Hu. Dkt. 1 ¶ 4. Also, in January and April 2017, ESI and its counsel sent multiple letters to
26 "Dr. Chenmin Hu Anchor Semiconductor, Inc." Dkt. 143 at 22-23; Dkt. 153-3 at 4. ESI clearly
27 knew who defendant Chenmin Hu was, knew the role he played at the helm of Anchor, and knew
28 that he was an inventor of the Anchor Application when it filed the Complaint.

1    ESI's contention that it was Anchor's decision to abandon the Anchor Application that
2 raised its suspicion is utterly meritless. Opp. at 22. First, ESI's operative complaint, where ESI
3 admits that the Anchor Application put it on notice of its misappropriation claims, does not
4 contend that abandonment of the Anchor Application put ESI on notice. Dkt. 139 ¶¶ 85-87.
5 Rather, ESI conjured this argument for the first time in a desperate attempt to defeat Anchor's
6 motion for summary judgment, and it is supported only by self-serving, after-the-fact
7 declarations by its CEO and counsel. Opp. at 22-23. Second, as ESI's CEO admits, the Anchor
8 Application was abandoned in *November 2013* and made a matter of public record. Dkt. 361-4 ¶
9 10 ("[U]pon searching the USPTO database for patents in the same prior art field as [ESI's
10 patent, I] discovered that the [Anchor Application] had been abandoned in November 2013.").
11 Thus, ESI has been on notice of the abandonment since November 2013. *Wang v. Palo Alto*
12 *Networks, Inc.*, No. 3:12-cv-05579-WHA, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014)
13 ("[A]n inventor actively practicing in the field and prosecuting his own patent application must
14 be deemed to be on constructive notice of published patent applications in the same field").
15 Finally, there is nothing "suspicious" about a patent application being abandoned at the patent
16 office, which is a commonplace occurrence. The notion that it was the abandonment of the
17 Anchor Application and not the substance of it that tipped off ESI as to the alleged wrongdoing
18 by Anchor should be recognized as the self-serving fabrication that it is.

19    **D.    ESI's Cited Cases Are Inapposite**

20    ESI's reliance on *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp.
21 2d 938 (N.D. Cal. 2007) is misplaced. In *UniRAM*, the court found a factual dispute as to
22 whether plaintiff's awareness of a third party's patent put plaintiff on notice of infringement
23 "especially given that the patent was issued to [the third party] rather than [defendant], the party
24 to whom [plaintiff] disclosed trade secrets." *UniRAM*, 617 F. Supp. 2d at 947. Here, there is no
25 such dispute. ***ESI admits that the Anchor Application put it on notice of the infringement***. SAC
26 ¶ 87. Also, the third party in *UniRAM* sent the plaintiff a letter threatening enforcement of the
27 third party's patent application. *UniRAM*, 617 F. Supp. at 947. That is not the case here, where
28 ESI sent letters, over three years before filing this case, "notifying UMC that [Anchor's] HPA

1    product contained Plaintiff's stolen trade secrets." Dkt. 307-1 ¶ 33. These letters specifically
2    accused the "Local CAA" and "coordinate conversion" features that ESI now says that Anchor
3    misappropriated. *See, e.g.*, Dkts. 328-4 at 4.
4            ESI's reliance on *Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923
5    MMC, 2007 WL 420184 (N.D. Cal. May 18, 2005) is also inapt. In *Synopsys*, the plaintiff did
6    not actually review defendant's patent application. *Id.* at *16-17 ("had [plaintiff] reviewed
7    [defendant's] application, it would have been on actual notice of the claims it now asserts against
8    Magma.") Similarly, in *Onyx Pharms., Inc. v. Bayer Corp.*, No. C 09-2145 MHP, 2011 WL
9    7905185, at *9 (N.D. Cal. May 10, 2011) and *OrbusNeich Med. Co., Ltd., BVI v. Boston Sci.
10   Corp.*, 694 F. Supp. 2d 106, 117 (D. Mass. 2010) (hereinafter "*BSC*"), plaintiff was not on actual
11   notice of the patent application or public records that would have triggered the SOL. The
12   *Synopsys*, *Onyx*, and *BSC* decisions address the requirements for constructive notice of patent
13   applications. *Synopsys*, 2007 WL 420184, at *16-19; *Onyx*, 2011 WL 7905185, at *9; *BSC*, 694
14   F. Supp. 2d at 117. And in *Onyx*, the court concluded that there was "enough for the court to
15   determine as a matter of law that [constructive notice of] the patent applications gave sufficient
16   notice" of misappropriation. *Onyx*, 2011 WL 7905185, at *9. Here, it is undisputed that ESI had
17   actual notice (not constructive notice) of the Anchor Application in May 2013. Mot. at 12-14.
18   This is the same Anchor Application that ESI's SAC says ESI "did not learn of . . . until October
19   or November of 2019," which is ESI's only justification for filing this case years beyond the
20   SOL. SAC ¶ 87.
21           This case aligns squarely with *Wang*, 2014 WL 1410346, at *6. In *Wang*, Judge Alsup
22   granted summary judgment because the defendants' application disclosing the trade secrets was
23   published in 2008, but the plaintiff's action was not filed until 2012. Because the plaintiff was
24   prosecuting a patent in the same field as of 2007, and "an inventor actively practicing in the field
25   and prosecuting his own patent application must be deemed to be on constructive notice of
26   published patent applications in the same field," the plaintiff's claims were barred by the SOL.
27   *Id.* at *6; *see also* *8 (distinguishing *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F.
28   Supp. 2d 1192 (N. D. Cal. 2012) and *UniRAM*, 617 F. Supp. 2d at 946–48). This case is even

simpler. There is no dispute that ESI had actual notice of the Anchor Application in May 2013. And ESI was actively prosecuting its own patent applications in the same field at that time. *See* Dkt. 142 at 93 (Elite's application 13/338,331 was filed on December 28, 2011). Like in *Wang*, ESI was on constructive notice of the entire contents of the Anchor Application in May 2013 and thereafter.

### E. ESI's Circa January 2017 Letters Independently Demonstrate Awareness of the Supposed Misappropriation Over Three Years Before Case Filing

ESI's lead counsel declared under oath that "Plaintiff sent UMC [letters] in January 2017 notifying UMC that [Anchor's] HPA product contained Plaintiff's **stolen trade secrets**." Dkt. 307-1 at ¶ 33; Dkts. 328-4, 328-5 (emphasis added). The circa January 2017 letters to UMC discuss "HPA Local CAA" and "coordinate conversion"—the features ESI here alleges were misappropriated. Dkts. 328-4, 328-5; Dkt. 361-8 at p. 4. January 2017 was over three years before this case was filed in September 2020. Dkt. 1 at 1.

In its Opposition, ESI tries to disavow what its counsel said, contending that the correspondence "makes no mention of trade secrets" and were exclusively related to patent infringement or defamation. Dkt. 361-3 ¶¶ 7-9. ESI should be held to the representations that its counsel made. Regardless, the record is clear that in December 2016 and January 2017 ESI was aware of the Anchor Application (which by then had become abandoned) and was threatening Anchor with intellectual property and tort claims regarding the purportedly misappropriated Anchor "Local CAA" and coordinate conversion features. These circa January 2017 letters provide an independent basis for granting summary judgment based on the SOL.

### F. There Was No Fraudulent Concealment

ESI's arguments regarding fraudulent concealment are illogical and baseless. First, Anchor did not change the name of its HPA product after 2016 as ESI alleges. Indeed, ESI's damages expert accuses between ▬▬▬▬▬▬▬ of HPA sales for each year from 2017-2021. Dkt. 315-2 at p. 36 (Exhibit 3). In fact, ESI's damages expert tabulated ▬▬▬ in HPA sales in 2021, which is more than double any yearly sales prior to 2016. *Id*. Second, Anchor did not misrepresent anything. It is unclear what evidence ESI is citing regarding the

misrepresentation. Page 24 of ESI's opposition cites to the entirety of ESI's counsel's 36-page prolix declaration in support of a prior motion and the entirety of ESI's failed motion to amend its complaint. Opp. at 24 (citing Dkts. 307-1, 207). Whatever its supposed support, by 2017, when ESI contends HPA was renamed, ESI's counsel admits it was already threatening Anchor and defendant Chenmin Hu with intellectual property litigation, including regarding ESI's "stolen trade secrets" that specifically included the HPA Local CAA and coordinate conversion features. Dkt. 307-1 ¶ 33; Dkt. 143 at 22-23; Dkt. 153-3 at 4. And ESI was aware of the Anchor Application, which had been abandoned for years. Mot. at 12-14. There was nothing for Anchor to conceal. ESI already had "actual . . . knowledge of facts" regarding the alleged misappropriation. *Corbrus, LLC v. 8th Bridge Cap., Inc.*, No. 2:19-cv-10182-CAS, 2022 WL 4239055, at *13 (C.D. Cal. Sept. 13, 2022) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). *Migliori v. Boeing N. Am, Inc.* is inapt because ESI cites no authority showing that renaming a product constitutes fraud, let alone that it is comparable to an employer concealing radiation exposure levels from its employee (as was the case in *Migliori*). 114 F. Supp. 2d 976, 986 (C.D. Cal. 2000).

### G. ESI's Sworn Interrogatory Responses Are A Sham Affidavit

ESI attempts to distinguish the sham affidavit rule are unavailing. ESI stated in a sworn interrogatory response that it "did not know of Anchor's [Application] until October or November 2019." Dkt. 142 at 216-217. This statement is directly contradicted by ESI documents (Dkts. 200-5, 200-7 at ESI_PL_000017-018), ESI CEO's deposition testimony (Hector Decl., Ex. B at 113:5-115:6), and now ESI CEO's latest declaration (Dkt. 361-4 ¶ 5). ESI's sworn interrogatory response is thus a sham affidavit. Mot. at 13 (citing *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1006 (S.D. Cal. 2012).[1]

---

[1] Notably, in *Gabriel*, the same lead counsel representing ESI here was sanctioned under Rule 11 for deciding to "go forward despite their inability to . . . overcome Defendants' statute of limitations argument." *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992 AJB (MDD), 2013 WL 410103, at *8 (S.D. Cal. Feb. 1, 2013).

## II. ESI CANNOT MEET ITS BURDEN OF SHOWING THAT ANCHOR HAD ACCESS TO ESI'S TRADE SECRETS

Anchor's showing that it has never accessed ESI's trade secrets is wholly consistent with the evidence of ESI's actions in violation of the SOL. There is no conflict. Anchor never had access to ESI's trade secrets in 2010, 2011, 2012, or ever. Anchor's lack of access to the purported trade secrets has nothing to do with ESI's awareness of the Anchor Application, which it admits put it on notice of its misappropriation claims. *Cypress*, 163 Cal. App. 4th at 576.

ESI does not dispute that it has no evidence supporting its original theory that its employee Mr. Lin misappropriated the trade secrets. *See* Mot. at 7-8; Opp. at 21. Indeed, ESI and its technical expert Dr. Hassoun did not address this theory. Mot. at 8; Opp. at 25-28.

Nor does ESI provide any evidence other than new declaration testimony appended to its opposition from its CEO regarding the purported transfer of ESI technology to UMC in ███ ████████████████. Dkt. 361-4 ¶ 12. Given that this belated declaration contradicts ESI's technical expert's testimony on the issue (Mot. at 20 (citing Dkt. 328-6 at 191:5-8)), and there is no documentation showing that any (let alone what) software was transferred from ESI to UMC, no reasonable jury could find that ESI actually provided its purported trade secrets to UMC.

ESI also does not rebut Anchor's evidence that it developed the Local CAA functionality ████████████ before ESI alleges to have transferred information to UMC. Mot. at 21. Nor does ESI rebut that Anchor had developed coordinate conversion before the alleged transfer. *Id*. Indeed, the ███ script that ESI alleges, without any basis, includes ESI code is written in ███, while ESI's code is written in ███. Opp. at 26. Anchor had completed its coordinate conversion functionality months before it received the ███ script in ████████. Mot. at 21. It makes no sense that UMC (or ███) would convert ESI's code from ████████, provide the ███ script to Anchor, and leave Anchor the task of converting the ████████, as ESI theorizes. Opp. at 9, 26. In sum, Anchor has set forth a definitive showing that the two accused features did not "simply just appear[]," as ESI contends. Anchor independently developed them before the alleged misappropriation. Mot. at 25.

The testimony of ESI's technical expert falls well short of raising any material fact

1 | issues. Indeed, ESI's expert testified that ████████████████████████████████
2 | ████████████████████████████████████████████████████████████████████████████
3 | ████████████████████████████████████████████████████████████████████████████
4 | ████ Hector Decl., Ex. C at 264:1-7. Similarly unreliable is ESI's reliance on the deposition
testimony of its CEO Iyun "Kevin" Leu for the proposition that Anchor supposedly lacked expertise in certain technological fields pre-2013. Opp. at 25 (citing Dkt. 150-1 at 123:19-124:7, 125:2-126:1).

Lacking any evidence of access, ESI relies instead on its pending motion for sanctions which in it speculates "may yet result in the imposition of adverse inferences" that would defeat Anchor's motion. Opp. at 27. For all the reasons set forth in Anchor's opposition (Dkt. 318), the sanctions motion has no merit.

### III. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE ANCHOR HAD NO KNOWLEDGE OF THE ALLEGED MISAPPROPRIATION AND THERE WAS NO DUTY OF CONFIDENTIALITY

ESI's only response to Defendant Chenmin Hu's testimony that the "first time I or anyone at Anchor heard of Plaintiff [ESI] . . . was Winter 2016" is that it is somehow unreliable. Opp. at 29; Dkt. 50-8 ¶ 3. But ESI does not point to any evidence rebutting Dr. Hu's testimony. Nor does ESI address the sworn declaration and deposition testimony from Anchor employees, including Gary Zhang, that confirm Dr. Hu's statement that no one at Anchor was aware of ESI until years after the alleged misappropriation. *See, e.g.*, Dkt. 318-21 ¶ 5. Indeed, ESI identifies no evidence—e.g., no testimony from any Anchor employee or other evidence—indicating that Anchor "knew or had reason to know" that it was receiving ESI's trade secrets or that UMC had purportedly breached a duty of confidentiality. *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012); *Cisco Sys., Inc. v. Chung*, No. 19-cv-07562-PJH, 2023 WL 2622155, at *14 (N.D. Cal. Mar. 22, 2023).

ESI's arguments regarding circumstantial evidence of knowledge fall short. For one, ESI's expert's report does not show the source code is the same (Opp. at 30); and to the contrary Dr. Hassoun admits the ████████████████████████████████████████
████████████████████████████████████████████████████████████ Hector Decl., Ex. C at

264:1-7; Dkt. 354-9 at 261:8-25. And ESI's contentions regarding the purported "one-way flow of technology" ignore Anchor's unrebutted evidence showing that Anchor had already developed Local CAA and coordinate conversion before ESI supposedly provided its technology to UMC. *See supra* Section II; Mot. at 21.

ESI's reliance on *Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260-BLF, 2019 U.S. Dist. LEXIS 231718, at *24 (N.D. Cal. May 9, 2019) is unavailing. In that case, "[plaintiff] Space Data and [defendant] Google met over a period of about six months in 2007-2008 to discuss Google's potential investment or acquisition of Space Data." *Id*. at *8. Here, there has never been any contact between Anchor and ESI, nor was Anchor aware of ESI until years after the alleged misappropriation. To "to survive summary judgment," the ESI "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations" of knowledge. *Id*. ESI has failed to do so.

ESI does not address Anchor's showing of no confidential relationship between ESI and UMC or ▇. Mot. at 16-18. ESI notes in passing in its fact section that there was a purported NDA between ESI and UMC, which it produced to Anchor for the first time on the same day it filed its opposition to this motion, long after the close of discovery. Opp. at 8. It is unclear whether ESI is looking to rely on this document to carry its burden on the confidential relationship issue, and ESI makes no mention of it in its arguments. But whatever its intentions, ESI is precluded from doing so, as it was produced after an agreed upon and Court-ordered deadline of December 8, 2023, beyond which the "producing Party [in this case, ESI] will be precluded from proffering or introducing into evidence at any juncture or for any purpose any documentary or other tangible evidence that the producing Party did not produce by this deadline." Dkt. 299 at 3.[2] ESI does not rebut Anchor's showing that there was no duty of

---

[2] In addition, California courts have precluded reliance on evidence produced during summary judgment briefing. *Voyager Indem. Ins. Co. v. Zalman N., Inc.*, 668 F. Supp. 3d 990, 998 (C.D. Cal. 2023) (excluding a document produced during summary judgment briefing where "counsel state[d] that his client contacted him the day before the Opposition was due and reported that,

confidentiality between ESI and UMC or ▮. And Anchor's motion for summary judgment should be granted on that basis.

## IV. ESI'S ATTORNEYS' TESTIMONY SHOULD BE EXCLUDED

### A. The Declaration of JvLS Is Rife with Inadmissible Testimony

John van Loben Sels ("JvLS"), ESI's lead attorney in this litigation, attempts to make himself ESI's primary fact witness. On summary judgment, "declarations *by attorneys* are only sufficient if the facts stated are matters of which the attorney has personal knowledge." *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 974 (C.D. Cal. 2006). Yet JvLS testifies extensively as to factual issues for which he lacks the requisite personal knowledge and which create a direct conflict with his role as lead litigation counsel. Because such inadmissible material permeates JvLS's declaration, it should be stricken in its entirety.

JvLS presents extensive testimony regarding the activities of Anchor, UMC, and ▮ in 2009-2011, long before he became involved in matters connected to this case in 2019. Dkt. 361-1 ¶¶ 2–3, 6, 8, 10-12, 14, 17, 18. For example, he explains that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See also id*. ¶¶ 9, 11, 17, 18. JvLS's testimony is inadmissible at least because: (1) he lacks personal knowledge of any dealings between or among Anchor, UMC, and ▮; (2) he lacks personal knowledge of

---

'after months of digging through boxes,' [his client] had located the MRB Subcontract.") Here, ESI's counsel raises this same "digging through boxes" excuse to justify the late production of the purported NDA. Dkt. 361-3 ¶ 14.

Anchor's development of its technology; and (3) he is not an expert and cannot opine on technical matters. *See* Fed. R. Evid. 701, 702, 703; FRCP 56(e). Likewise, JvLS cannot testify that ESI and UMC executed a bilateral NDA, "which is a customary practice of UMC," because he has no personal knowledge of this specific NDA or of UMC's customary practices. Dkt. 361-1 ¶¶ 7–8.

Finally, JvLS impermissibly testifies to the ultimate fact of Anchor's alleged misappropriation, stating that Anchor "integrated Plaintiff's trade secrets, including the ▮ script, into the HPA code base." *Id*. ¶ 16. Indeed, his declaration is rife with argument and laden with similar legal conclusions regarding the alleged misappropriation. *See, e.g.*, *id.* ¶ 6 ("facts necessary to succeed on a claim of misappropriation would not be available in the public domain since [Anchor] had taken affirmative steps to hide any evidence of misappropriation"). Such testimony is impermissible expert testimony, outside of JvLS's personal knowledge, and plainly violates the Local Rule 7-5 requirement that "[a]n affidavit or declaration may contain only facts, . . . and must avoid conclusions and argument."

### B. Mr. Hanika's Patent Prosecution Expert Opinions Should Be Excluded

The Declaration of Jeremy Hanika, counsel for ESI in this litigation, should also be excluded because it contains improper expert opinions and legal conclusions. *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 n.23 (C.D. Cal. 2003) (striking attorney declaration that offered "legal conclusions on matters of law and ultimate issues" and "state[d] as his qualification that he specializes in" the relevant area of law and had experience in litigation of similar matters); Fed. R. Evid. 702.

As such, the following conclusions in Hanika Declaration (Dkt. 361-2) should be stricken: (1) there was "no motivation for the applicant of the '331 application, here [] ESI, to investigate ownership of the Hu reference" (*id.* ¶ 8); (2) due diligence would not have revealed Anchor to be owner of the patent (*id.* ¶ 9); and (3) the supposed failure to record the assignment of the patent from inventors to Anchor concealed its ownership (*id.* ¶¶ 10–11).

1                                       Respectfully submitted,

2   Dated: June 14, 2024                 VENABLE LLP

3                                       By: */s/ William A. Hector*
                                              William Hector
4                                               Amit Rana
                                              Philip T. Sheng
5                                               Harry Libarle
6                                               *Attorneys for Defendants*
                                              *Anchor Semiconductor, Inc. and*
7                                               *Chenmin Hu*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28