JOHN VAN LOBEN SELS (State Bar No. 201354)
E-Mail:      *jvanlobensels@sideman.com*
BRITTANY M. NOBLES (State Bar No. 343513)
E-Mail:      *bnoble@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:      (415) 392-1960
Facsimile:      (415) 392-0827

Attorneys for Plaintiff,
ELITE SEMICONDUCTOR, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

|  |  |
|---|---|
| ELITE SEMICONDUCTOR, INC., a Taiwan Corp., | Case No. 5:20-cv-06846-EJD (NC) |
| Plaintiff, | **PLAINTIFF ELITE SEMICONDUCTOR, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES** |
| v. | Honorable Edward J. Davila |
| ANCHOR SEMICONDUCTOR, INC., a California corporation, CHENMIN HU, and DOES 1 through 10, | |
| Defendants. | Complaint Filed:      September 30, 2020 |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 3

III.  ARGUMENT AND AUTHORITIES ................................................................................. 8

A.  Standard for this Motion ............................................................................................ 8

B.  No Grounds Exist Warranting An Award Of Attorneys' Fees To Defendants.................... 8

    1.  Anchor Cannot Show Elite's Claim Was Objectively Specious ....................................... 9

    2.  Anchor's Claims Are Unsupported By The Record ........................................................ 13

    3.  Defendants' Motion is Unreasonable On Its Face ......................................................... 14

C.  Defendants' Motion Is Facially and Fatally Improper ......................................................... 15

D.  The Authorities Cited By Defendants Are Unavailing And Misleading ........................... 17

IV.   CONCLUSION ................................................................................................................. 19

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CleanFish, LLC v. Sims*,
  2020 WL 7353462 (N.D. Cal. Dec. 15, 2020) ....................................................................... 13

*Escannet v. Chavez*,
  2005 WL 8162624 (N.D. Cal. Jan. 10, 2005) ............................................................. 9, 12, 13

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
  2013 WL 410103 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir.
  2014) ..................................................................................................................... 6, 17, 18

*Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*,
  95 Cal. App. 4th 1249 (2002) ............................................................................................ 19

*JLM Formation, Inc. v. Form+Pac*,
  2004 WL 1858132 (N.D. Cal. Aug. 19, 2004) ............................................................ 8, 11, 12

*Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*,
  603 F. Supp. 3d 1374 (S.D. Ga. 2022) .............................................................................. 13

*M.A. Mobile Ltd. v. Indian Institute of Tech. Kharagpur*,
  No. 3:08-cv-02658-WHO, 2019 WL 6525752 (N.D. Cal. Dec. 4, 2019) ........................... 9, 11

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
  2019 WL 2396308 (C.D. Cal. June 3, 2019), *aff'd*, 833 F. App'x 147 (9th Cir.
  2021) .................................................................................................................................. 14

*OWLink Tech., Inc. v. Cypress Tech. Co.*,
  2023 WL 9061081 (C.D. Cal. Dec. 12, 2023) ................................................................... 8, 9

*VSL Corp. v. Gen. Techs., Inc.*,
  46 U.S.P.Q.2d 1356 (N.D.Cal.1998) .................................................................................... 8

**Statutes**

18 U.S.C. § 1836(b)(3)(D) ......................................................................................................... 8

Cal. Civ. Code § 3426.1(b)(1) .................................................................................................... 9

Cal. Civ. Code § 3426.1(d) ......................................................................................................... 9

Cal. Civ. Code § 3426.4 .............................................................................................................. 8

California Uniform Trade Secrets Act ..................................................................................... 8, 17

Defend Trade Secrets Act ............................................................................................................ 8

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

UTSA ............................................................................................................................. 9

**Other Authorities**

Rule 11 .................................................................................................................... *passim*

Rule 16 ......................................................................................................................... 11

Rule 56 ........................................................................................................................... 6

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# I.     INTRODUCTION

Plaintiff now understands, thanks to discovery of evidence to which it never previously had access, the mechanism and timing by which Defendants misappropriated Plaintiff's trade secret source code. In 2010 – unbeknownst to Plaintiff and in violation of Plaintiff's non-disclosure agreement ("NDA") with United Microelectronics Corp. ("UMC") – Plaintiff's customer, UMC, shared Plaintiff's trade secrets with Defendants. Then, Defendants incorporated Plaintiff's trade secrets into their accused products, and Defendants used Plaintiff's trade secrets to win customers and destroy Plaintiff's business. Further, it is undisputed that in 2010, Plaintiff had no knowledge of Defendants' theft and had no available means to discover Defendants' theft.

When the Court granted Defendants' summary judgment motion, the Court did not reject any of Plaintiff's foregoing contentions or evidence supporting its trade secret claims. Instead, the Court ruled as a matter of law that Plaintiff was put on inquiry notice of its claims in 2013 when it first received notice of a patent application that included Defendant Chenmin Hu as one of the named inventors.[1]  As a result, the Court ruled that the statute of limitations ran on Plaintiff's claims before Plaintiff filed its original complaint. In its summary judgment order, the Court made no comment on its view of the strength of the merits of Plaintiff's claims, and it did not grant summary judgment for Defendants on the merits of Plaintiff's claims notwithstanding their strenuous arguments against the substance of Plaintiff's claims. Likewise, the Court's summary judgment order made no suggestion that Plaintiff's opposition and its conduct of the case in general were not prosecuted in good faith. Indeed, in more than four years of litigation before the Court, its discovery magistrate and the appointed discovery master who heard more than twenty

---

[1] Defendants' motion refers to this application as the "Anchor application". Dkt. No. 328. The Court's summary judgment order does not take issue with Plaintiff's contention that Anchor's ownership of the application was not apparent on application's face. Instead, the Court held that a reasonable party in Plaintiff's position could have and should have inquired further to discover that fact. Dkt. 436 at 8. Even then, the Court did not hold or suggest Plaintiff's arguments were frivolous or presented in bad faith or for an improper purpose.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

(20) disputes never expressed the view that Plaintiff's conduct or that of its counsel were improper or worthy of sanction.

In the face of this record, Defendants demand that the Court find in hindsight that Plaintiff's entire case was objectively baseless and pursued in bad faith. Defendants' motion for attorneys' fees is filled with overheated rhetoric, but strikingly short of supporting evidence. Worse, Defendants chose to present a deliberately deceptive and incomplete factual record in hopes the Court will enter an order requiring Plaintiff to pay their defense costs. For example, Defendants argue that the Court can find Plaintiff proceeded in bad faith because Defendants' counsel sent letters and a draft motion claiming Plaintiff's claims violated Rule 11. Defendants' motion is written as if Plaintiff simply charged blindly ahead pressing the case in the face of Defendants' warnings. However, Defendants know this is simply false. The motion leaves unanswered at least these questions: 1) Why did Defendants fail to provide the Court with Plaintiff's detailed written responses to their Rule 11 threat letters?; 2) After Defendants served a Rule 11 motion in 2022 based in part on Defendants' statute of limitations arguments – and after the expiration of the required 21-day grace period – why did Defendants never file that motion and why did they fail to inform the Court Defendants expressly withdrew that motion?; and 3) Why would Defendants make the demonstrably false claim that Plaintiff's lead counsel had previously been subject to Rule 11 sanctions?

The answer to all these questions is the same. The Defendants want the Court to award them their defense costs, and they are willing to say and argue whatever it takes to get that result, even where the facts of the case and cited authority do not support such a result. For example, the motion argues that Plaintiff's discovery efforts in the case weigh in favor of awarding Defendants their fees. Of course, the record does not support their contention and that is why Defendants cited no supporting evidence. By now, the Court is very familiar with Defendants' systematic discovery intransigence and repeated failures to abide by their discovery obligations and Court orders. That

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

is why the Court granted-in-part Plaintiff's second motion for sanctions.[2] In contrast, the Court has at least thrice rejected Defendants' false claims that Plaintiff submitted perjured testimony, sham affidavits, or the like. Defendants' motion is candid in one respect. Defendants admit that they are asking the Court to make any attorneys' fee award jointly and severally against Plaintiff's lawyers because they believe Defendants would not be able to collect an award from Plaintiff. Mot. at 19-20. However, that is no grounds for sanctioning counsel millions of dollars as Defendants request. Attorneys do not stand as guarantors for their clients' obligations, and as demonstrated herein, there is no conduct of Plaintiff's counsel in this case warranting sanction of any sort.

In the end, Defendants' motion must be denied because Plaintiff at all times advanced in good faith its arguments and evidence against application of the statute of limitations under the facts of this case. At summary judgment, Plaintiff cited multiple cases from this district holding that notice of a patent or patent application by the trade secret plaintiff – without more – is not sufficient to put the plaintiff on inquiry notice of its claims. To be sure, at summary judgment the Court disagreed with Plaintiff's arguments, and distinguished Plaintiff's cited cases, but the Court did not find Plaintiff's arguments were frivolous, objectively specious, or made in bad faith. There is no reason for a different outcome with this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed its initial Complaint in this matter on September 30, 2020. Dkt. 1. Plaintiff filed its First Amended Complaint on August 18, 2021. Dkt. 101. Plaintiff filed its Second Amended Complaint on January 24, 2022 (the "Complaint") to remove Defendants Chin-Hsen Lin and Chen Ming Hu. Dkt. 139. After learning through discovery of certain facts previously unknown to Plaintiff – and unknowable – on May 6, 2024, Plaintiff sought to amend its Complaint to add those facts and conform its allegations to the proof it obtained in support of its claims. Dkt.

---

[2] Plaintiff's first sanctions motion documented Defendants' years of systematic refusal to abide by their discovery obligations and this Court's orders. Dkt. No. 242. The Court did not reach the merits of Plaintiff's first such motion as it was denied on procedural grounds. Dkt. No. 274.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

313. Throughout this litigation, as Plaintiff discovered further evidence of trade secret misappropriation by Defendant, Plaintiff continued to adapt its legal arguments for misappropriation as reasonably supported by the available evidence. Key evidence from Plaintiff's inspection of Defendants' highly confidential internal documents from Defendants' operations in the Peoples' Republic of China (PRC), Chinese witness testimony, and source code inspection completed by Plaintiff's expert on December 6, 2023, were only revealed after years of Plaintiff's efforts against intransigent Defendants intent on imposing undue costs and other burdens on a plaintiff Defendants knew lacked resources.

Specifically, on January 21, 2023, Plaintiff first learned from its source code expert after completion of Plaintiff's expert's initial review of Defendants' source code that Plaintiff had integrated Plaintiff's trade secrets into HPA as early as December 31, 2010. Through substantial efforts detailed in Plaintiff's two motions for sanctions (Dkts. 242 and 307), Plaintiff obtained discovery from Defendants' three fact witnesses in China. Moreover, Defendants' highly confidential documents, which Plaintiff fought for years to obtain, reflect that Defendants first unlawfully received and began utilizing Plaintiff's asserted trade secrets at least as early as May 2010. Dkt. 313-1 ¶ 5; Dkts. 313-3 to 313-16.

This key evidence, which goes to the heart of Defendants' misappropriation of Plaintiff's trade secrets and were uniquely known by and in possession of Defendant, were withheld by Defendant until the Special Master compelled their production on March 1, 2023. Dkt. 203. At that time, the Hon. Judge Wayne D. Brazil (Ret.) ("Special Master") first learned of the involvement of Defendants' three PRC fact witnesses in the misappropriation of Plaintiff's trade secrets and ordered the production of documents from these witnesses, that Accused Products continued to be sold to the present time, and that Defendant renamed the misappropriated systems to avoid detection. *Id*. As a result, the Special Master compelled the production of documents from 2010 through "the date of the collection." *Id*.

Defendants delayed their document production literally for years through multiple Special Master orders compelling compliance so Defendants' PRC counsel could unlawfully screen Defendants' documents before productions. As Plaintiff separately briefed, this conduct violated

ELITE SEMICONDUCTOR, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

the Federal Rules of Civil Procedure and cases construing them. *See* Dkts. 242, 307. Nevertheless, Defendants claimed to have completed their productions from the three fact witnesses in China in December 2023 (more than six months after the close of fact discovery on May 10, 2023). Even this delayed certification proved false as Defendants made an inexplicable further production of thousands of pages of responsive documents on April 11, 2024 (almost one year after the close of fact discovery, and long after the deadlines for the parties' technical and damages experts to serve their reports.

On October 20, 2023, after Plaintiff provided the Special Master with evidence that Defendants' accused HPA product had been rebranded in 2016 as PCYM and D2DB, the Special Master ordered the inspection of Defendants' PCYM and D2DB codebase. Dkt. 281. As a result of that inspection, Plaintiff's source code expert confirmed that PCYM and D2DB both utilized HPA's framework and contained licenses to Plaintiff's trade secrets therein described by Defendants as the "Local CAA" design feature. *Id*., ¶ 9. Defendants' belated document productions and witness testimony demonstrates Defendants unlawfully received Plaintiff's trade secrets by way of a common customer of both Plaintiff and Defendants, UMC, as early as May 2010 through as late as August 2010, and by December 31, 2010, Defendants had fully integrated Plaintiff's trade secrets into the HPA codebase. Dkt. 313-1 ¶ 12. Again, this key evidence, which goes directly to the merits of the trade secret misappropriation claims and was in the exclusive possession and control of Defendants, required years of discovery and constant prodding from the Special Master before it was released by Defendants.

Rather than focusing on the merits of this case, Defendants instead attempted to bully and berate Plaintiff. Defendants first attempted to use their statute of limitations theory, which was step-by-step contradicted and refuted by Plaintiff, as a basis for sanctions. As Defendants' attorneys' fees motion provides, Defendants' counsel transmitted their February 2, 2021, letter making threats under Rule 11 and other theories based in part on Defendants' statute of limitations contentions. *See* Dkt 453-6. What Defendants' motion deceptively omits is the detailed written response dated February 8, 2021, that Elite provided contradicting each of Defendants' various claims. *See* Exhibit A of Declaration of John van Loben Sels ("JvLS Decl."). As the Court can see,

but Defendants hid from its review, Elite did not simply charge ahead blindly in the face of Defendants' charges. Rather, Plaintiff answered those charges based on the facts and law available to it. *Id.* After Elite served its response, Defendants did not persist in their claims of Rule 11 violations. JvLS Decl. at ¶ 11. Nor did they serve an early summary judgment motion.

Defendants' first challenge to the merits of Elite's claims – of which again Defendants failed to inform the Court in their fees motion – came when Defendants challenged the sufficiency of Elite's trade secret identification under Section 2019.210. *See* Dkts. 69; 88. In response to that challenge, Judge Cousins required Elite to supplement its initial trade secret description with additional technical details after the Court entered its protective order. Dkt. 69. Elite did so, and Judge Cousins held that Elite's description met the requirements of Section 2019.210. Dkt. 88. This fact is an important point of distinction between this case and that of *Gabriel Techs. Corp. v. Qualcomm Inc.*, 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014) where the plaintiff never succeeded in identifying its alleged trade secrets after seven attempts to do so. *Id.*

As Defendants admit, it was not until January 28, 2022 (thirteen months after that first conference of counsel and nearly a year after their first Rule 11 threat letter) that Defendants brought their first summary judgment motion. Dkt. 141. Just as with the 2024 summary judgment motion the Court ultimately granted, Defendants' first summary judgment motion made the same statute of limitations arguments based on the same evidence. *Id*. In response, Elite argued that it needed discovery under Rule 56 in order to substantively answer Defendants' contentions that Elite had no trade secrets and that Defendants did not misappropriate them. Dkt. 150. However, Elite did ***not*** make a Rule 56 argument in response to the statute of limitations contentions. As Defendants point out, facts related to that affirmative defense were largely known to Elite. So Elite answered those arguments substantively. *Id*. The Court denied Defendants' first summary judgment motion, and in so doing did not reach the statute of limitations. Dkt. 168. However, the Court's decision to rest solely on Rule 56 grounds was not due to any fault of Elite.

As Defendants' attorneys' fees motion makes plain, Defendants persisted with their Rule 11 threats. On June 22, 2022, Defendants served Elite with a Rule 11 motion. *See* Dkt. 453-7 and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   453-8. Again, shockingly, Defendants' motion fails to advise the Court of two key facts: whether

2   and why Defendants failed to file that Rule 11 motion at that time or any other. Indeed,

3   Defendants' attorneys' fees motion offers no explanation for the decision not to file their Rule 11

4   motion after the expiration of the safe harbor period in 2022. It is obvious that Defendants

5   concluded the motion would fail in the face of the Court's order denying Defendants' first

6   summary judgment motion (ordered June 27, 2022) given that the summary judgment motion

7   made the same statute of limitations arguments that appear in the never-filed Rule 11 motion.

8   Indeed, during an early July 2022 case management conference of counsel, Defendants' lead

9   counsel expressly withdrew their Rule 11 motion (which had been served but the safe harbor

10  period had not yet expired). JvLS Decl., ¶ 15.

11      Defendants were not done threatening Elite with sanctions. *See* Dkt. 453-9. In a February

12  21, 2023 letter, Defendants made a number of false claims of perjured Elite testimony and

13  allegedly buried "smoking gun" evidence. *See* Dkt. 201 at 3 [Defendants' Motion for

14  Reconsideration]; JvLS Decl., Ex. B. Again, Defendants provided the Court with a copy of their

15  threat letter, but deliberately omitted Plaintiff's detailed response (provided here). JvLS Decl., Ex.

16  B. For now the third time, Defendants deliberately omitted evidence from the record of this

17  motion in order to suggest Plaintiff failed to acknowledge or address their sanctions threats. Three

18  days later, Defendants made the same odious and false charges in support of their motion for

19  reconsideration of the Court's first summary judgment ruling. Dkt. 201. Under the Court's local

20  rules, Elite was not permitted to a response to the motion for reconsideration until and unless the

21  Court asked for one. It did not, and simply denied Defendants' motion. Dkt. 226. In so doing, the

22  Court did not suggest it believed any of Defendants' strident claims or suggested it perceived

23  improper conduct of Elite or its counsel. *Id.*

24      The last point during the four plus years of this litigation where Defendants made express

25  charges of Elite misconduct came in the form of Defendants' motion for sanctions. Dkt. 393.

26  However, the Court denied Defendants' sanctions motion and granted them no relief. Dkt. 436.

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

### III.    ARGUMENT AND AUTHORITIES

#### A.    Standard for this Motion

Courts have discretion to award attorneys' fees for misappropriation claims under the Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA") if the claim was pursued or defended in bad faith. *OWLink Tech., Inc. v. Cypress Tech. Co.*, 2023 WL 9061081, at *6 (C.D. Cal. Dec. 12, 2023); s*ee also* Cal. Civ. Code § 3426.4; 18 U.S.C. § 1836(b)(3)(D). "Making" a trade secret claim in bad faith means bringing and maintaining that claim in bad faith. *VSL Corp. v. Gen. Techs., Inc.*, 46 U.S.P.Q.2d 1356, 1360 (N.D.Cal.1998). Thus, in evaluating whether bad faith exists, a court must examine actions taken by the plaintiff in both the commencement and the prosecution of a claim. *JLM Formation, Inc. v. Form+Pac,*  2004 WL 1858132, at *1 (N.D. Cal. Aug. 19, 2004). While neither statute defines "bad faith," courts have developed a two-prong standard to determine whether a plaintiff brought a trade secret misappropriation claim in bad faith. *OWLink Tech.*, 2023 WL 9061081, at *6. Specifically, a Defendant must show that the claim was objectively specious and brought or maintained in subjective bad faith. *See id.*

#### B.    No Grounds Exist Warranting An Award Of Attorneys' Fees To Defendants

Defendants' motion for attorneys' fees is premised in part on Defendants' contention that Elite's trade secret misappropriation claims were frivolous, and lacked evidentiary support. Mot. at 14. Here is it useful to note the limitations of the Court's summary judgment ruling, especially compared to the scope of Defendants' summary judgment motion. In addition to Defendants' statute of limitations argument, Defendants also argued the following about Elite's claims:  1) Defendants claimed ESI had no trade secrets and improperly changed their asserted secrets; 2) Defendants claimed there was no evidence Anchor had a relationship with former Elite employee Chen Hsin Lin; 3) Defendants argued that ESI's evidence demonstrating Defendants received ESI's trade secrets through an illegal transfer from Anchor customer UMC was insufficient; and 4) Defendants argued they independently derived their accused products as a matter of law. *See* Dkt. 328, Defendants' Summary Judgment Motion at 6-10 and 14-21. In contrast, the Court's summary judgment order is not based in the alternative on any of these additional grounds, and the Court

did not comment or otherwise provide its views on Defendants' contentions about the substance of Elite's claims. *See* Dkt. 436. Though the parties do not know the Court's view on the merits of Elite's trade secret claims, we do know that Defendants did not prevail on those arguments. Instead, the Court ruled Elite should have discovered and filed its claims sooner. This is not grounds for an award of attorneys' fees.

### 1.    Anchor Cannot Show Elite's Claim Was Objectively Specious

That Elite did not prevail over Anchor's motion for summary judgment does not warrant the imposition of sanctions under Rule 11. In considering Anchor's arguments for sanctions arising out of Elite's litigation of its claims, the Court must examine whether Elite's trade secret claim was objectively specious. *OWLink Tech.* at *6. Weaknesses in a claim do not establish objective speciousness. *See, e.g.*, *M.A. Mobile Ltd. v. Indian Institute of Tech. Kharagpur*, No. 3:08-cv-02658-WHO, 2019 WL 6525752, at *2 (N.D. Cal. Dec. 4, 2019). The UTSA defines as a trade secret information that derives economic value from not being generally known to the public. The owner of a trade secret must make a reasonable effort to maintain its secrecy. Cal. Civ. Code § 3426.1(d). In order to establish misappropriation, Plaintiff would have had to show that Defendants disclosed or made use of one of its trade secrets without express or implied consent, and that Defendants: (1) used improper means to acquire knowledge of the trade secret; or (2) at the time of the disclosure or use, knew or had reason to know that its knowledge of the trade secret was (a) derived from or through a person who had utilized improper means to acquire it; (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c) derived from or through a person who owed a duty to the owner to maintain its secrecy or limit its use. Cal. Civ. Code § 3426.1(b)(1). An objectively specious claim is one that is completely unsupported by the evidence or that lacks proof of one of its essential elements. *Escannet v. Chavez*, 2005 WL 8162624, at *2 (N.D. Cal. Jan. 10, 2005), citing *JLM Formation, Inc. v. Form+Pac*, 2004 WL 1858132, *2 (N.D. Cal. Aug. 19, 2004). The issue is whether there was a "total failure of proof" of any element of the UTSA claim. *Escannet v. Chavez*, 2005 WL 8162624, at *3 (N.D. Cal. Jan. 10, 2005). The record establishes there was not.

At summary judgment, the key point of disagreement between Defendants and the Court

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

ELITE SEMICONDUCTOR, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES

1  on one hand and Elite on the other is whether Elite's notice of the published Hu/Anchor

2  application in 2013 – without more – *should have* put Elite on notice of its trade secret claims

3  against Defendants. *See, e.g.*, Dkt. 436 at 9 [Summary Judgment Order]. Defendants' attorneys'

4  fees motion claims it is "undisputed" that Elite's review of the Hu/Anchor application put Elite on

5  actual notice of its claims. Mot. at 3-4. That is simply false. Elite never alleged that its review of

6  the Hu/Anchor application in 2019 – without more – put it on notice of its claims against

7  Defendants. As Elite alleged in its complaint and as its CEO testified, there was an array of

8  additional facts concerning Defendants Anchor and Hu in 2019, which were not known or

9  knowable in 2013 that contributed to Elite's suspicions and provided ***actual notice*** about

10  Defendants and their possible trade secret misappropriation. *See* Dkts. 1 [Complaint] and 361-14

11  [Objections to Statement of Undisputed Facts], and Dkt. 361-3, ¶¶ 9-11 [Decl. of C.H. Chen], and

12  Dkt. 361-2, ¶¶ 3-11 [Decl. of J. Hanika]. Defendants know this and simply misrepresented Elite's

13  complaint and its summary judgment evidence.

14      It is plain the Court appreciates the above distinction. In its summary judgment order, the

15  Court ruled that it had no reason to reach Defendants' sham affidavit arguments, because the Court

16  ruled that evidence concerning when Elite developed actual notice of its claims did not affect the

17  Court's analysis of the statute of limitations. *See* Dkt. 436 [Summary Judgment Order at 8 and

18  n.3]. Defendants trot out those same sham affidavit arguments in support of this motion. *See* Mot.

19  at 4, 14.

20      For purposes of Defendants' attorneys' fees motion, the question is not if Defendants were

21  right all along in their summary judgment arguments, but whether Elite persisted in presenting its

22  claims based on its good faith belief that under applicable law, Elite's notice of the Hu/Anchor

23  application without more was sufficient to put Elite on inquiry notice of its claims. That essential

24  point is not addressed by Defendants' fees motion at all. In its summary judgment order, the Court

25  only reaches this conclusion after finding (incorrectly, Elite believes) that Elite's alleged trade

26  secrets are apparent on the face of the Hu/Anchor application. *See* Dkt. 436 at 4.

27      Instead of demonstrating Elite's reliance on contrary authority and evidence was in bad

28  faith, Defendants simply assume that the only question is when and whether Elite first reviewed

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    the Hu/Anchor application. Defendants argue it was sanctionable for Elite to persist in its claims

2    after Defendants established Elite reviewed the Hu/Anchor application. Dkt. 453 at 9. However, it

3    is clear based on the record before the Court that even Defendants do not believe that contention.

4         As noted above, this is not a case like those upon which Defendants rely, in which there

5    was a complete lack of evidence at trial or on summary judgment as to one or more essential

6    elements of a trade secret claim. Here, the Court has not made an evidentiary finding on the merits

7    of ESI's claim. Rather, when presented with all relevant facts as litigated by the parties at

8    summary judgment the Court did not determine that Plaintiff's claim was without merit. *See, e.g.*,

9    *.JLM Formation, Inc.* 2004 WL 1858132, at *3 (N.D. Cal. Aug. 19, 2004)(finding

10   misappropriation claim not objectively specious). Rather, the Court determined Plaintiff's claims

11   were barred by the statute of limitations, a point contested throughout the litigation and never

12   conceded by Plaintiff. That Defendant's statute of limitations arguments were persuasive at

13   summary judgment may show weakness in ESI's case, but it does not evidence an objectively

14   specious claim. *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, No. 3:08-CV-02658-WHO,

15   2019 WL 6525752, at *2 (N.D. Cal. Dec. 4, 2019) (finding no objectively specious claim where

16   summary judgment ruling did not address merits of the case).

17        In December of 2020, the parties held their initial conference of counsel required by Rule

18   16 and the Court's Local Rules. During that call, Defendants former lead counsel, Tom

19   Wallerstein stated – based on the same evidence Defendants presented twice at summary judgment

20   – Defendants' belief Elite's claims were barred by the statute of limitations. *See* JvLS Decl., ¶ 10.

21   Elite's counsel disagreed, so Mr. Wallerstein stated his plan to bring an early summary judgment

22   on that defense. *Id*. It was not until 13 months later that Defendants filed their "early" summary

23   judgment motion, which included the same statute of limitations argument and evidence that

24   Defendants repeated two years later. Dkt. 141. In denying Defendants summary judgment motion,

25   the Court did not reach the merits of Defendants' summary judgment arguments. Dkt. 168. In

26   February of 2023, based on what Defendants stridently described what they claimed was new

27   "smoking gun" evidence concerning Elite's notice of the Hu/Anchor application. *See* Dkt. 201 at 3

28   [Defendants' Motion for Reconsideration]. According to Defendants, Elite no longer had any basis

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    to oppose Defendants' statute of limitations defense. *Id*. at 6. The Court denied Defendants'

2    motion for reconsideration without requiring a response from Elite, but did indicate Defendants

3    were free to bring their statute of limitations arguments in a second summary judgment motion

4    after the close of discovery. *See* Dkt. 226, Order Denying Motion for Reconsideration at 2.

5           Defendants' attorneys' fees motion makes much of the fact that at two times during the

6    more than four years from the filing of Elite's complaint until entry of summary judgment,

7    Defendants' counsel sent letters to Elite's counsel threating to pursue Rule 11 sanctions if Elite did

8    not withdraw its complaint. Mot. at 9. The two letters asserted alleged Rule 11 on several theories,

9    but including Defendants' statute of limitations defense. Inexplicably, Defendants' Motion failed

10   to include or even mention Elite's detailed responses to those letters. *See* JvLS Decl., ¶ 11; Dkt.

11   453-6, Ex. E [Hector Declaration]. This is a critical omission, of course, because Defendants never

12   explain why they failed to file ever – up until and including today – a Rule 11 motion targeting

13   Elite's complaint based on the statute of limitations (or any other theory). Similarly, Defendants'

14   attorneys' fees motion informs the Court that at one point in 2022, Defendants served a Rule 11

15   motion on Elite. Mot. at 9. However, Defendants fail to put forward any explanation for their

16   failure to file that motion after the 21-day grace period expired. *Id.* It is too late for that

17   explanation to come on reply, but the only possible explanation is that Defendants did not believe

18   sufficiently in their motion to risk filing and losing it. In any case, Defendants failure to file their

19   Rule 11 motion deprived Elite of the chance to oppose it and the Court the opportunity to rule on

20   the motion.

21          "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its

22   claim for trade secret misappropriation has no merit." *JLM Formation, Inc.*, 2004 WL 1858132, at

23   *2 (N.D. Cal. Aug. 19, 2004). A court may determine a plaintiff's subjective misconduct by

24   examining evidence of the plaintiff's knowledge during certain points in the litigation and may

25   also infer it from the speciousness of a plaintiff's trade secret claim. *Id.* The record shows that ESI

26   pressed a theory supported by case law that the statute of limitations was properly tolled. At no

27   point did ESI abandon its claim based on the allegations or arguments from Defendant. Rather,

28   ESI adapted its legal theory to the claims as supported by the evidence. *See, e.g.*, *Escannet,* 2005

at *4 (N.D. Cal. Jan. 10, 2005) (finding no bad faith where plaintiff "simply changed the legal theory under which they seek relief.") The touchstone question for subjective misconduct here is "is whether [ESI] could have reasonably believed that – although [defendant] did not possess the software product itself – there existed some software and source code that was developed [by ESI] and misappropriated by defendants." *Escannet* at *4 (finding reasonable belief held by plaintiff, and no subjective bad faith).

But Plaintiff's decision to pursue its claims despite Defendant's insistence that the claims lacked merit does not establish subjective bad faith. *CleanFish, LLC v. Sims*, 2020 WL 7353462, at *1 (N.D. Cal. Dec. 15, 2020); *see also Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*, 603 F. Supp. 3d 1374, 1383 (S.D. Ga. 2022) (refusing to find bad faith where "[Plaintiff] was mistaken about the merits of its claims against [Defendant]".).

### 2.    Anchor's Claims Are Unsupported By The Record

In arguing for the award of Defendants' defense costs (under all asserted theories) Defendants point to several grounds that they claim warrant granting the attorneys' fees motion. However, these claims lack evidentiary support.

First, to the extent Defendants' motion can be read as claiming Elite's trade secret misappropriation claims lacked evidentiary support (and were therefore frivolous), the record does not support that argument. As noted above, in deciding Defendants' summary judgment motion, the Court did not grant or express any opinion on the merits of Elite's trade secret claims. *See generally* Dkt. 436 [Summary Judgment Order].

Second, Defendants contend again that Elite "made false statements and affirmatively concealed evidence". Mot. at 2. Defendants made these false charges at least twice before – in their second summary judgment motion and in their motion for reconsideration concerning the first summary judgment. Dkts. 436; 201. The Court denied Defendants relief in response to the motion for reconsideration (without requiring or permitting a response from Elite) and did not reach the substance of Defendants charges again when it granted the second summary judgment motion. Dkt. 436. The present motion presents no new or additional evidence to warrant a different result the third time around.

ELITE SEMICONDUCTOR, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Third, Defendants also attempt to base the attorneys' fees motion on what they claim was

2    Elite's "dilatory and expansive litigation tactics". Mot. at 2. Those charges are baseless, and were

3    entirely unsupported. *Id.* Just as with Defendants' false claims that Elite lied and concealed

4    evidence, Defendants previously presented – unsuccessfully – their charges of discovery abuse by

5    Elite. Inexplicably, the attorneys' fees motion makes no mention of Defendants' prior sanctions

6    motion, Elite's response to it, and most importantly, the fact the Court denied the motion. Dkt.

7    436. Worse, the record in this case reflects Defendants' systematic and deliberate dilatory tactics

8    in all aspects of discovery in this case. In its objection to Defendants' improper attempts to tax

9    discovery costs to Plaintiff, Elite analyzed quantitatively the disputes raised to Special Master

10   Brazil and substantively the results of those proceedings. Dkt. 456. By any objective measure, it

11   was Defendants, not Elite, who dramatically increased defense costs in this case through

12   systematic and abusive discovery tactics that required more than 20 orders from the special

13   master. *Id*. Worse, it was Defendants, not Elite, who the Court sanctioned for a variety of

14   discovery abuse and violation of court orders. Dkt. 414. In sum, there is no evidence from the

15   discovery record that would support an award of attorneys' fees to Defendants. Further,

16   Defendants cite no case where such a one-sided discovery record weighed in favor of awarding

17   attorneys' fees under any legal theory, much less the California and federal trade secret acts.

18   Moreover, courts in this Circuit take note where matters are litigated contentiously by ***both***

19   parties in finding a lack of subjective bad faith. *See, e.g.*, *Mfg. Automation & Software Sys., Inc. v.*

20   *Hughes*, 2019 WL 2396308, at *2 (C.D. Cal. June 3, 2019), *aff'd*, 833 F. App'x 147 (9th Cir.

21   2021). The *Hughes* court observed, "this case was hard-fought and that both sides engaged in

22   contentious conduct which unnecessarily increased the attorneys' fees incurred by both sides," and

23   admonished Defendant's litigation tactics as requiring a finding of no bad faith by Plaintiff. *Id.*

### 3.    Defendants' Motion is Unreasonable On Its Face

24

25   Defendants' attorneys' fees motion is manifestly unreasonable in at least two respects.

26   Defendants ask the Court to hold Elite's current law firm, Sideman & Bancroft LLP, jointly and

27   severally liable for what Defendants estimate are $5 million in attorneys' fees and costs. *See*

28   Notice of Motion at (i) and Attorneys' fees motion at 19-20. Before Defendants filed this motion,

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Sideman's only involvement in the case comprised filing Elite's notice of appeal. Dkt No. 446. It

2    is undisputed that no matter what Defendants think of the merits, Elite has a right to appeal the

3    Court's summary judgment order. Similarly, there is no basis for Defendants' request that Elite's

4    prior firm, Jeffer Mangels, Butler & Mitchell ("JMBM") be held jointly and severally liable for

5    any fee award. By the time JMBM made its first appearance in the case, all discovery (fact and

6    expert) had been completed, and the summary judgment record was closed following the June 27,

7    2024, hearing. Indeed, the only substantive filings JMBM attorneys made in the case were Elite's

8    opposition to Defendants' sanctions motion (which the Court denied) and Elite's fee submission in

9    response to the Court's order granting-in-part Elite's sanctions motion against Defendants.

10    **C.    Defendants' Motion Is Facially and Fatally Improper**

11    To the extent Defendants' motion for attorneys' fees was presented as a Rule 11 motion,

12    Defendants' Motion must be denied because, as a procedural matter, a motion for sanctions under

13    Rule 11 cannot be served after the matter has been decided on the merits. *See Islamic Shura*

14    *Council of S. California v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014), discussed *infra*. Rule 11 and

15    cases construing that rule preclude its application here. As the Court is aware, Rule 11 motions

16    must be made separately from all other motions, and must first be presented to the offending party

17    before filing. That did not happen here. Indeed, Defendants never served their Motion on Plaintiff

18    or its counsel prior to filing their attorneys' fees Motion. JvLS Decl., ¶ 21. Defendants cite no

19    authority for the proposition that a different Rule 11 motion abandoned over two years ago could

20    meet the rule's requirement. *See Arnold v. Beemer Haus LLC*, 2022 WL 103524, at *1 (D. Ariz.

21    Jan. 11, 2022) ("Defendant failed to serve a motion for Rule 11 sanctions 21 days prior to filing its

22    motion with the Court. Thus, their request must be denied."); *see Radcliffe v. Rainbow Const. Co.*,

23    254 F.3d 772, 789 (9th Cir. 2001) ("although a defendant had given informal warnings to the

24    plaintiffs threatening to seek Rule 11 sanctions, these warnings did not satisfy the strict

25    requirement that a motion be served on the opposing party twenty-one days prior to filing.").

26    While it is true that the Court on its own motion could initiate Rule 11 proceedings, that

27    indisputably did not happen here.

28    The Ninth Circuit established this bar to motions made by parties where service of the

motion on the other was never made before the matter was determined on the merits:

> Motions for Rule 11 attorney's fees cannot be served after the district court has decided the merits of the underlying dispute giving rise to the questionable filing. This is because once the court has decided the underlying dispute, the motion for fees cannot serve Rule 11's purpose of judicial economy. *See* Advisory Committee's Notes to the 1993 Amendments to Rule 11 (noting that a party may not serve a motion for Rule 11 sanctions after "judicial rejection of the offending contention"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.2 (3d ed.) (noting that one purpose of Rule 11 is to "encourag[e] the withdrawal of papers that violate the rule without involving the district court, thereby avoiding sanction proceedings whenever possible and streamlining the litigation process").

*Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014). "Therefore, this decision makes clear that a motion that is served on the allegedly offending party after the merits of the underlying dispute is not timely." *Richter v. Oracle Am., Inc.*, 2023 WL 4053793, at *4 (N.D. Cal. June 15, 2023), *reconsideration denied*, 2023 WL 8586690 (N.D. Cal. Dec. 8, 2023). The court granted summary judgment for Defendants on January 13, 2025. Dkt. 436. "A summary judgment order is a decision on the merits." *Stemler v. Florence*, 350 F.3d 578, 587 (6th Cir. 2003). Defendants did not file their Motion for attorneys' fees pursuant to Rule 11 until February 21, 2025. Dkt. 453. At no time prior to the court's order granting summary judgment for Defendants did they serve the instant motion on Plaintiff. JvLS Decl., ¶ 21. As a result, Defendants' Rule 11 motion is improper on its face and must be denied.

Moreover, the Ninth Circuit has also addressed this fatal defect in the context of Rule 11 motions made after summary judgment.

> Under Ninth Circuit law, "'a party cannot wait until after summary judgment to move for sanctions under Rule 11.'" *Barber v. Miller,* 146 F.3d 707, 711 (9th Cir.1998) (quoting *Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th Cir.1997)); *see also Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC,* 339 F.3d 1146, 1151 (9th Cir.2003) ("'[A] party cannot delay serving its Rule 11 motion until conclusion of the case.'") (quoting 1993 Advisory Committee Note to Rule 11). This is because a party must have a chance to withdraw the offending pleading under Rule 11's "safe harbor" provision. Here, Defendants did not move for sanctions until after summary judgment had been granted, so they did not comply with the procedural requirements of Rule 11.

*Grober v. Mako Prods., Inc.*, 2010 WL 9115839, at *1 (C.D. Cal. July 1, 2010). "In sum, because Defendants did not move for sanctions until after the Court granted summary judgment, Rule 11

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  sanctions are not warranted." *Id.*

2      Furthermore, the court in this case has held the parties to the procedural requirements

3  underlying motions and requests for the imposition of sanctions against the other. *See* Dkt. 274

4  [Order Denying Elite's Motion for Sanctions for failure to meet and confer pursuant to the Local

5  Rules]. Those procedural requirements should be applied evenly among the parties, and

6  Defendants should not be allowed to benefit from their failure to comply with the procedural

7  prerequisites of a motion made pursuant to Rule 11.

8      **D.    The Authorities Cited By Defendants Are Unavailing And Misleading**

9      Defendants' use and misuse of the decision in *Gabriel Technologies Corp. v. Qualcomm,*

10  *Inc.*, 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) deserves special attention. It is one thing to stretch

11  the holding of a case in a brief in order to advance an argument, but quite another to blatantly

12  misrepresent the result in order to advance an improper purpose, as Defendants did in their

13  attorneys' fees motion. In specific, Defendants argue that Elite's lawyers and Elite's law firms

14  should be jointly and severally liable for Defendants' attorneys' fees because – according to

15  Defendants – Elite's lead counsel, Mr. van Loben Sels is a recidivist offender having already been

16  sanctioned by the *Gabriel Technologies* court. *See* Mot. at 19-20. Defendants claim that, "In

17  sanctioning Mr. van Loben Sels, the court in *Gabriel Technologies* intended to 'deter' counsel

18  'from filing documents without performing a reasonable inquiry under the circumstances.'" *Id*. at

19  20. The problem with Defendants' argument is that the *Gabriel Technologies* court did not

20  sanction Mr. van Loben Sels, not under Rule 11 nor any other theory, including under the court's

21  inherent power or under the California Uniform Trade Secrets Act. Defendants' distortion of the

22  case is not inadvertent. In fact, the only place Mr. van Loben Sels' name appears in that decision is

23  below the caption where he is listed as counsel for his former firm, Wang Hartmann Gibbs &

24  Cauley ("WHGC"). WHGC never served as Elite's counsel in this case.

25      Of course, there are a number of more ordinary reasons (*i.e.* reasons other than the

26  deliberate misrepresentation of the case holding) that the *Gabriel Technologies* case is

27  inapplicable to the resolution of Defendants' attorneys' fees motion. First, the *Gabriel*

28  *Technologies* court found that bad faith can be inferred where the specific shortcomings of the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    case are identified by opposing counsel and the decision is made to go forward in the case despite

2    the inability to respond to the arguments raised. *Gabriel Technologies,* 2013 WL 410103 at n.6.

3    That is decidedly not our case, but perhaps explains Defendants' failure to include with its motion

4    Elite's detailed responses to Defendants' Rule 11 threat letters. In other words, Elite had the

5    ability to respond to Defendants' identified shortcomings as Defendants tacitly admitted, because

6    they never filed the threatened Rule 11 motion.

7         Second, the *Gabriel Technologies* court found the plaintiff's claims so unlikely to prevail

8    that the court required the plaintiff to post a bond of $800,000 before allowing the case to go

9    forward. *Gabriel Techs.* *1 (S.D. Cal. Feb. 1, 2013), aff'd, 560 F. App'x 966 (Fed. Cir. 2014).

10   There is nothing like that in this case.

11        The *Gabriel Technologies* court also found that the plaintiff failed seven times to identify

12   its trade secrets under California law (*id.* at 7); not so here. Defendants falsely claim Elite's

13   alleged trade secrets changed over time. In fact, Judge Cousins ordered Elite early in the case to

14   add specificity to its trade secret identification. Dkt. 69. Elite did that. Dkt. 88. Anchor did not

15   challenge the identification after that supplementation, tacitly admitting the sufficiency of the

16   identification. Similarly, the Special Master ordered Elite to tie its trade secrets both to Elite's

17   source code line-by-line and to also identify line-by-line where Elite's trade secrets could be found

18   in Anchor's accused products. Dkt. 238. Elite did both, and after Elite supplied the information,

19   Anchor did not challenge Elite's specifications.

20        Later, Defendants moved for summary judgment claiming they never had access to Elite's

21   trade secrets and did not use them (contesting Elites showing of misappropriation on a line-by-line

22   basis). Defendants did not prevail on that issue at summary judgment.

23        As noted above, despite the fact that Defendants moved for summary judgment on the

24   substance of Elite's trade secret claims and not just the statute of limitations, the Court made no

25   findings of fact or conclusions of law on those issues at all. Dkt. 436. As noted above, the Court

26   never commented on the strength of Elite's misappropriation claim.

27        The *Gabriel Technologies* court also identified a number of instances of litigation

28   misconduct that supported the award of attorneys' fees against plaintiff. *Gabriel Techs.* at n.3.

1  There is no evidence of litigation misconduct on the part of Elite or its counsel in this case

2  notwithstanding Defendants' contrary arguments. Indeed, the Court in its summary judgment

3  order expressly did not consider, much less decide, that Elite introduced sham affidavits

4  notwithstanding Defendants' invitation that it do so. Dkt. 436. Moreover, the Court already

5  rejected Defendants' prior attempts to cast aspersions on Elite and its counsel by Defendants'

6  sanctions motion and its motion for reconsideration of the Court's order denying the first summary

7  judgment motion. Dkt. 168. There is nothing new on this front in Defendants' attorneys' fees

8  motion, so no reason for the Court to revisit is prior findings.

9       The procedural posture of further cases upon which Defendants rely renders them

10  inapposite to the instant case. For example, in *Gemini* the plaintiff pursued its trade secret claim

11  through trial, even though it knew it lacked proof that its alleged trade secret had economic value.

12  *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1263 (2002). The

13  jury in *Gemini* further rendered an advisory verdict that the plaintiff had pursued its trade secret

14  misappropriation claims in bad faith. *Id.* at 1255.

15       As a result of the foregoing, Defendants' Motion lacks any merit, both procedurally and

16  substantively. Therefore, Defendants Motion should be denied in its entirety.

17                          **IV.    CONCLUSION**

18       For the foregoing reasons, Defendants' Motion should be denied in its entirety.

19

20

21  DATED:  March 28, 2025                    Respectfully submitted,

22                                            SIDEMAN & BANCROFT LLP

23

24                          By: _____

25                                            John van Loben Sels
                                              Attorneys for Plaintiff,
26                                            ELITE SEMICONDUCTOR, INC.

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711