William A. Hector (SBN 298490)
wahector@venable.com
Amit Rana (SBN 291912)
arana@venable.com
Philip T. Sheng (SBN 278422)
ptsheng@venable.com
Harry Libarle (SBN 346020)
hllibarle@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

*Attorneys for Defendants*
*Anchor Semiconductor, Inc. and Chenmin Hu*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ELITE SEMICONDUCTOR, INC. a Taiwan Corp., <br><br> Plaintiff, <br><br> v. <br><br> ANCHOR SEMICONDUCTOR, INC., a California corporation, CHENMIN HU, and DOES 1 through 10, <br><br> Defendants. | Case No. 5:20-cv-06846-EJD (NC) <br><br> **DEFENDANTS ANCHOR SEMICONDUCTOR, INC.'S AND DR. CHENMIN HU'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES** <br><br> Date: May 15, 2025 <br> Time: 9:00 a.m. <br> Dept: Courtroom 4, 5th Floor <br> Judge: Hon. Edward J. Davila <br><br> Complaint filed: September 30, 2020 <br> Judgment entered: January 13, 2025 |

# TABLE OF CONTENTS

Page

I. THE SUMMARY JUDGMENT ORDER DOES NOT PRECLUDE A FEE AWARD ................................................................................................. 2

II. AN AWARD OF FEES IS WARRANTED UNDER THE FACTS AND CIRCUMSTANCES OF THE CASE ................................................................. 3

    A. Elite's Claims Were Objectively Specious ........................................ 4

    B. The Court's Statute of Limitations Analysis Supports a Finding of Objective Speciousness .................................................................. 6

    C. Elite Filed a Sham Affidavit in Bad Faith ......................................... 7

    D. Elite Suppressed Evidence in Bad Faith ........................................... 8

III. ELITE'S ALLEGATIONS REGARDING ANCHOR'S CONDUCT ARE UNFOUNDED AND IRRELEVANT ................................................................. 9

    A. Anchor Did Not Withdraw its Rule 11 Motion ............................... 10

    B. Anchor Did Not Misrepresent Elite's Responses to Rule 11 Correspondence ........................................................................... 11

IV. *GABRIEL TECHS.* IS DIRECTLY APPLICABLE ................................................ 11

V. SUMMARY JUDGMENT DOES NOT SAVE ELITE FROM RULE 11 ............... 12

VI. ANCHOR'S JOINT AND SEVERAL LIABILITY CLAIM IS SUPPORTED BY THE RECORD AND CASE LAW ................................................................. 13

VII. ELITE'S LITIGATION FUNDER LEGALIST, INC. MAY BE JOINTLY AND SEVERALLY LIABLE FOR ANCHOR'S ATTORNEYS' FEES ................. 14

VIII. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Arnold v. Beemer Haus LLC*,
   No. CV-21-01450-PHX-SMB, 2022 U.S. Dist. LEXIS 5364
   (D. Ariz. Jan. 11, 2022)...................................................................................................12

*CRST Van Expedited, Inc. v. E.E.O.C.*,
   578 U.S. 419 (2016).........................................................................................................3

*Escannet v. Chavez*,
   No. C 04-02935 SI, 2005 U.S. Dist. LEXIS 60722
   (N.D. Cal. Jan. 10, 2005) ..................................................................................................6

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   560 Fed. App'x. 966 (Fed. Cir. 2014)..........................................................................3, 5

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   No. 08cv1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105
   (S.D. Cal. Feb. 1, 2013) ............................................................................................ *passim*

*Grober v. Mako Prods., Inc.*,
   No. 2:04 CV 8604 JZ, 2010 U.S. Dist. LEXIS 144743
   (C.D. Cal. July 1, 2010) ...................................................................................................13

*GSI Tech., Inc. v. United Memories, Inc.*,
   No. 5:13-cv-01081-PSG, 2015 U.S. Dist. LEXIS 129568
   (N.D. Cal. Sept. 21, 2015) ................................................................................................7

*Islamic Shura Council of S. California v. F.B.I.*,
   757 F.3d 870 (9th Cir. 2014) ...........................................................................................12

*JLM Formation, Inc. v. Form+Pac*,
   No. C 04-1774 CW, 2004 U.S. Dist. LEXIS 30369
   (N.D. Cal. Aug. 19, 2004)............................................................................................5, 6

*M.A. Mobile, Ltd. v. Indian Inst. of Tech. Kharagpur*,
   400 F. Supp. 3d 867 (N.D. Cal. 2019) ..............................................................................5

*Radcliffe v. Rainbow Const. Co.*,
   254 F.3d 772 (9th Cir. 2001) ....................................................................................12, 13

*Raniere v. Microsoft Corp.*,
   887 F.3d 1298 (Fed. Cir. 2018).........................................................................................3

*Segan LLC v. Zynga Inc.*,
   131 F. Supp. 3d 956 (N.D. Cal. 2015) ............................................................................14

*Stan Lee Media, Inc. v. Walt Disney Co.*,
   No. 12-CV-02663-WJM-KMT, 2015 U.S. Dist. LEXIS 119086
   (D. Colo. Sept. 8, 2015) ............................................................................................................15

*Teetex LLC v. Zeetex, LLC*,
   No. 20-cv-07092-JSW, 2022 U.S. Dist. LEXIS 117769
   (N.D. Cal. July 5, 2022) ..........................................................................................................4, 9

*Tradeline Enters. Pvt v. Jess Smith & Sons Cotton, LLC,*
   No. LA CV15-08048 JAK (RAOx), 2019 U.S. Dist. LEXIS 221924
   (C.D. Cal. Apr. 15, 2019) .........................................................................................................15

*Twin Falls NSC, LLC v. Southern Idaho Ambulatory Surgery Ctr., LLC*,
   No: 1:19-cv-00009-DCN, 2020 U.S. Dist. LEXIS 168764
   (D. Idaho Sept. 14, 2020) .........................................................................................................14

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*,
   No. 2:16-cv-04502-MLH, 2018 U.S. Dist. LEXIS 227749
   (C.D. Cal. Apr. 23, 2018) ...........................................................................................................7

*Urenia v. Pub. Storage*,
   No. CV 13-01934 DDP, 2015 U.S. Dist. LEXIS 60185
   (C.D. Cal. May 7, 2015) ...........................................................................................................13

**California Cases**

*Cypress Semi. v. Maxim Integrated Prod., Inc.*,
   236 Cal. App. 4th 243 (2015) .................................................................................................7, 8

*FLIR Sys., Inc. v. Parrish*,
   174 Cal. App. 4th 1270 (2009) ...................................................................................................7

*SASCO v. Rosendin Elec., Inc.*,
   207 Cal. App. 4th 837 (2012) .....................................................................................................8

**Federal Statutes**

28 U.S.C. § 1927 ..............................................................................................................................14

18 U.S.C. § 1836(b)(3)(D) ................................................................................................................3

**California Statutes**

Cal. Civ. Code § 3426.4 ....................................................................................................................4

**Federal Rules**

Fed. R. Civ. P. 11 ..................................................................................................................... *passim*

Fed. R. Civ. P. 16 ............................................................................................................................10

Fed. R. Civ. P. 26 ................................................................................................................. 9

Fed. R. Civ. P. 45 ................................................................................................................. 9

Fed. R. Civ. P. 56 ................................................................................................................. 8

Instead of addressing the merits of its own conduct in this case, Plaintiff Elite Semiconductor Inc. ("Elite") again attempts to distract with unfounded complaints about Defendants Anchor Semiconductor, Inc. and Dr. Chenmin Hu (collectively, "Anchor"). But the key points on which Anchor bases its attorney's fees motion remain unrebutted. Elite analyzed the Anchor Application in 2013, but filed this case in 2020, long after the limitations period for its claims expired. Elite made material misrepresentations in its Complaint that it first reviewed the Anchor Application in 2019. Ultimately it was forced to admit that was not true when Elite's own documents (which it indisputably had in its possession since at least when the Complaint was filed) proved that it reviewed the Anchor Application in 2013. Years into the litigation Elite finally admitted this fact in response to Anchor's second MSJ, but only after imposing unnecessary and dilatory litigation on this Court, Magistrate Judge Cousins, and Special Master Wayne Brazil. Anchor informed Elite of the statute of limitations ("SOL") defects in its case early and often, through two Rule 11 letters, a Rule 11 motion, and two summary judgment motions. Ignoring them all, Elite marched forward with ever shifting misappropriation theories, aggressive discovery tactics, and meritless arguments as to why the SOL had not run. These are precisely the facts under which an award of attorney's fees is justified.

To distract from the merits, Elite's Opposition posits three questions, which Elite may have meant to be rhetorical, but which Anchor is happy to address. Elite's first question faults Anchor for not enclosing Elite's responses to Anchor's Rule 11 letters. ECF No. 461 ("Opp.") at 2. Anchor's Motion includes a detailed description of the serious misconduct that Elite engaged in both before and after the Rule 11 letters were sent, and never represents or even so much as suggests that Elite did not respond to them. *See* ECF No. 453 ("Mot.") at 18. Nothing prevented Elite from providing its letters to the Court (as it did). They change nothing, as Elite's written responses include the same faulty arguments that failed at summary judgment. *See* ECF Nos. 461-2 at 2-3, 461-3 at 2; ECF No. 436 ("MSJ Order") at 6; ECF No. 139 ("SAC") ¶ 87.

Elite's second question asks why Anchor did not file its Rule 11 motion in 2022 and falsely contends that Anchor withdrew the motion. Anchor did not withdraw the motion. And Anchor's decision to not file the Rule 11 motion in 2022 is precisely because the purpose of

1. serving the motion was to put Elite on notice and provide an opportunity for Elite to withdraw its
2. offending complaint as an avenue to escape sanctions. Elite never did so, forcing Anchor to incur
3. significant expense to dispose of the meritless case.
4.     Elite's third question contends that Anchor falsely accused Elite's lead counsel of
5. previously being sanctioned under Rule 11 for violating the SOL. Anchor raised this point
6. because Elite's counsel indisputably was sanctioned. In *Gabriel Techs. Corp. v. Qualcomm Inc.*,
7. Mr. van Loben Sels, Elite's lead counsel here, was the only attorney of record from the WHGC
8. law firm. *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992 AJB (MDD), 2013 U.S. Dist.
9. LEXIS 14105, at *1 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014). The
10. WHGC law firm was sanctioned under Rule 11 for failing to "undertake a reasonable
11. investigation into the merits of the case" and "continu[ing] to file documents . . . without
12. performing the requisite reasonable inquiry under the circumstances." *Id.* at *43-44. As the only
13. attorney from the WHGC firm, the *Gabriel Techs.* Rule 11 sanctions were directed at Elite's
14. counsel.
15.     Ultimately, Elite filed this case knowing that the SOL on its claims had long since lapsed.
16. To keep its case alive, Elite made false statements and affirmatively concealed evidence showing
17. that it became aware of the Anchor Application in May 2013. And to distract the Court from the
18. defects on the merits, Elite unnecessarily duplicated and expanded the litigation by filing at least
19. 15 motions to compel. Elite's defective litigation campaign was of course also highly disruptive
20. to the Silicon Valley resident startup Anchor Semiconductor, Inc., and its employees, many of
21. whom personally funded the defense of this litigation through an escrow account. Elite, its
22. lawyers, and its funder's decision to pursue this baseless litigation at the cost of Anchor and its
23. employees should have consequences.

24. **I.     THE SUMMARY JUDGMENT ORDER DOES NOT PRECLUDE A FEE AWARD**
25.     Elite's Opposition argues that because Anchor moved for summary judgment on multiple
26. grounds, and the Court only ruled on the SOL, Anchor is not entitled to an award of attorney's
27. fees. Opp. at 9. Elite further argues that its arguments on the merits of its case weigh against an
28. award of attorney's fees. *See, e.g.*, Opp. at 1. Neither argument presents any reason that fees

should not be awarded.

To start, Elite mischaracterizes the grounds of Anchor's MSJ, which were the following: (1) Elite's claims are barred by the SOL; (2) Anchor had no knowledge of Elite nor any duty of confidentiality to Elite; and (3) Anchor did not have access to Elite's trade secrets, and Elite cannot prove otherwise. *See* MSJ at 2. The Court ruled for Anchor on ground one, and declined to address grounds two and three because they were moot. *See* MSJ Order at 1 ("Although Defendants raise several arguments in support of their motion, the Court need only address one of them: the statute of limitations."). The Court did not reach the other grounds because this case never should have been filed, but the Court did not decide or even suggest that Elite's opposition to those grounds have merit.[1] *See id.* at 9 ("[F]or Elite's claims to be timely, they needed to be filed by May 2016.").

What matters is that Anchor is undisputably a "prevailing party" as defined by the Defend Trade Secrets Act ("DTSA"), and as a result, the Court can and should award "reasonable attorney's fees." 18 USCS § 1836(b)(3)(D); Cal. Civ. Code § 3426.4 (mirroring language in the California Uniform Trade Secrets Act ("CUTSA")); *see CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 421 (2016) ("[A] favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed."); *see also, e.g.*, *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303-1308 (Fed. Cir. 2018). Because Elite "obstinately refused to abandon [its] trade secret claims even in the face of unequivocal evidence that those claims were barred by [the] three-year statute of limitations," it must be held accountable even if it believes (incorrectly) that it could have prevailed had the claims been brought timely. *See Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 Fed. Appx at 974.

## II. AN AWARD OF FEES IS WARRANTED UNDER THE FACTS AND CIRCUMSTANCES OF THE CASE

"[C]ourts have developed a two-prong standard to determine whether a claim for trade

---

[1] Nor is Elite suggesting that the Court should decide those issue in its favor in the context of adjudicating this motion. Rather, it is trying to use the Court's decision to in essence treat those other grounds as moot (a common practice in situations like this) to avoid sanctions.

3

secret misappropriation was made in bad faith: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, *i.e.*, for an improper purpose." *Teetex LLC v. Zeetex, LLC*, No. 20-cv-07092-JSW, 2022 U.S. Dist. LEXIS 117769, at *11 (N.D. Cal. July 5, 2022) (quoting *Cherokee Chem. Co. v. Frazier*, No. CV 20-1757-MWF (ASx), 2022 U.S. Dist. LEXIS 77319, at *3 (C.D. Cal. Apr. 27, 2022)). Both prongs are satisfied here.

### A. Elite's Claims Were Objectively Specious

Elite's claims were objectively specious because they were unsupported by evidence and time barred. "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *Gabriel Techs.*, 2013 U.S. Dist. LEXIS 14105, at *25 (citations omitted). "An award for attorney's fees should not be precluded simply because at the time of filing the action, it appeared that some evidence would be obtained during discovery to support a misappropriation claim." *Teetex LLC*, 2022 U.S. Dist. LEXIS 117769, at *11-14 (quotations omitted).

Importantly, and as discussed in the Motion, Elite possessed all evidence relevant to Anchor's SOL defense on the day it filed suit. ECF No. 361-4 ¶ 5; Opp. at 6; Mot at 5-6. Indeed, the two central facts that form the basis of the Court's MSJ Order—that the Anchor Application described the alleged trade secrets and Elite had actual notice of the Anchor Application in May 2013—were ultimately admitted by Elite. *See* ECF No. 361 at 10. By the time Elite finally admitted these facts it knew all along, it had intentionally inflicted years of dilatory tactics and millions of dollars of wasteful litigation.

The objective speciousness of Elite's claims is further demonstrated by the fact that Elite had no evidence to support its allegations in the operative complaint that its employee Chin-Hsen Lin stole Elite's trade secrets and brought them to Anchor. *See* ECF No. 142, Ex. 1; SAC ¶¶ 34, 53–56, 60–61, 78–80, 86; ECF No. 388 at 46 (Counsel for Elite admitting that they had no idea whether Defendant Mr. Lin had gone to work for Anchor). Elite also repeatedly shifted its theory of the case, but ultimately was unable to produce any evidence to support any theory. *See* MSJ at 6-7, 20, 25-26. Moreover, Elite withheld critical evidence only to produce it long after discovery was closed with its MSJ opposition. *See* ECF No. 361-4 ¶ 11; ECF No. 393.

1     Elite's primary response is that this case is not like *Gabriel Techs.* because Elite identified its trade secrets "early in the case." Opp. 18. That is false. The record is clear that Elite did not identify its purported trade secrets until January 11, 2023, well over two years into the litigation, and only after court orders required it to do so. *See* ECF No. 184 at 2; ECF No. 355-3. It then continued to change its definition of what exactly the alleged trade secrets were, until August of 2023, when the Special Master noted that Elite's alleged trade secrets were "identified for the first time here as 'Local CAA'" but that Elite's timeline of events "appears inaccurate and unreliable." ECF No. 260 at 1 & 2 n.1. Elite's statements in its Opposition regarding the sufficiency of its trade secret disclosure are contradicted by the record.

    Elite then cites *M.A. Mobile Ltd. v. Indian Institute of Tech. Kharagpur* for the proposition that weaknesses in its case are not evidence of speciousness. Opp. at 9, 11. In that case, unlike this one, the plaintiff and defendant collaborated for two years. *M.A. Mobile, Ltd. v. Indian Inst. of Tech. Kharagpur*, 400 F. Supp. 3d 867, 870 (N.D. Cal. 2019). And *M.A. Mobile Ltd.*, hinged on whether the plaintiff provided authority for disclosures that were indisputably made. *Id.* at 891. Here, in contrast, Anchor was not even aware of Elite until it accused Anchor's customers of patent infringement in 2016. Mot. at 3. And despite alleging that Anchor misappropriated its trade secrets in 2010, Elite did not file this lawsuit until 2020. MSJ Order at 2. There were no disclosures from Elite to Anchor, direct or indirect. In fact, *M.A. Mobile Ltd.*, supports a finding of objective speciousness because Elite proceeded despite no connection to Anchor and in the face of unambiguous evidence that its claims were time barred. *See also Gabriel Techs.*, 560 Fed. Appx. at 973-74.

    Elite also cites *JLM Formation, Inc. v. Form+Pac* for the proposition that: "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *JLM Formation, Inc. v. Form+Pac*, No. C 04-1774 CW, 2004 U.S. Dist. LEXIS 30369, at *4 (N.D. Cal. Aug. 19, 2004) (quotations omitted). In *JLM Formation*, the plaintiff and defendants had a business relationship that soured when they began bidding for the same jobs. *Id.* at *1-2. The plaintiff sued alleging misappropriation of trade secrets and immediately moved for a temporary restraining order. *Id.* at *2. One month later, the

1  plaintiff voluntarily dismissed the case, and the defendants filed a motion for attorney's fees. *Id.*
2  In contrast here, Elite litigated this case for four years without a "reasonable" belief that Anchor
3  misappropriated its alleged trade secrets or a "reasonable" belief that it had not filed its claim in
4  violation of the SOL. *Id.* at *7-8 (emphasis added) (plaintiff "could have reasonably believed that
5  Defendant misappropriated its trade secrets" based in part on the business relationship); *See* ECF
6  No. 142, Ex. 1; SAC ¶¶ 34, 53–56, 60–61, 78–80, 86; *compare* ECF No. 150-21 ¶¶ 7-9, 12 *with*
7  ECF No. 361-4 ¶ 5.

8  Elite's reliance on *Escannet v. Chavez* is also unfounded. Opp. at 12-13 (citing *Escannet v. Chavez*, No. C 04-02935 SI, 2005 U.S. Dist. LEXIS 60722, at *10 (N.D. Cal. Jan. 10, 2005)). In *Escannet*, the plaintiff dismissed its case early after reviewing its own documents, and the court distinguished "the cases on point [finding claims objectively specious as] involve[ing] fee awards made after the cases were fully litigated, either through trial or dispositive motions." *Escannet*, 2005 U.S. Dist. LEXIS 60722, at *10. Here, Elite did not dismiss its case early after re-reviewing its own documents regarding the SOL; it recklessly and knowingly pressed forward with the litigation through summary judgment.

**B.  The Court's Statute of Limitations Analysis Supports a Finding of Objective Speciousness**

Elite's attempts to re-litigate the Court's SOL findings by positing there was "an array of additional facts" that contributed to Elite's suspicions about the misappropriation. Opp. at 10 (citing the original Complaint, Separate Statement of Undisputed Facts, Declaration of C.H. Chen, and Declaration of Jeremy Hanika). Elite's suggestion is meritless, but more important for the purpose of this motion, the time to raise arguments against Anchor's SOL defense has passed. So too has Elite's opportunity to seek reconsideration of the Court's SOL order.

Even if that weren't the case, the sources cited identify no "additional facts" that put Elite on notice of the alleged misappropriation. Elite argues—once again citing attorney declarations—that the SOL should not have begun to accrue in 2013 because Elite purportedly did not realize that Anchor owned the Anchor Application until 2019. *See* Opp. at 1 n.1, 9-10. The Court rejected this argument on summary judgment. MSJ Order at 8.

Elite also contends that because it did not concede that its knowledge in 2013 of the Anchor Application created notice of its misappropriation claims, Elite did not proceed in bad faith. Opp. at 10. But the Court did make that finding and a party's concession on a point is not required for a Court to award attorney fees. *See, e.g., GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2015 U.S. Dist. LEXIS 129568, at *36 (N.D. Cal. Sept. 21, 2015) ("A plaintiff's 'subjective belief in the merits' does not preclude a finding of bad faith.") (quoting *Cypress Semi. v. Maxim Integrated Prod., Inc.*, 236 Cal. App. 4th 243 (2015)); *see also Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. 2:16-cv-04502-MLH (MRWx), 2018 U.S. Dist. LEXIS 227749, at *43-44 (C.D. Cal. Apr. 23, 2018) (ruling in the patent context that "[s]ubjective bad faith 'requires proof that the lack of objective foundation for the claim was either known **or so obvious that it should have been known** by the party asserting the claim'" and that "[a]ctual knowledge of baselessness is not required.") (emphasis added) (quoting *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013)). Here, the Court adjudicated that Elite did in fact have knowledge of the Anchor Application in 2013, and that is enough on which to base a finding of bad faith.

### C.     Elite Filed a Sham Affidavit in Bad Faith

Elite's attempt to put a sham affidavit before the Court is another indicium of objective speciousness and subjective bad faith. Subjective bad faith "may be inferred from the evidence that a party 'intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored an improper motive.'" *Gabriel Techs.*, 2013 U.S. Dist. LEXIS 14105, at *26 (quoting *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1278 (2009)); *see also SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 847 (2012) (subjective bad faith "means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition").

The MSJ Order states that because "[e]vidence about Elite's actual knowledge or suspicions does not disturb" the fact that "Elite *should* have suspected misappropriation" in May 2013, the Court had "no occasion to consider whether the sham affidavit rule applies to Elite's interrogatory responses and testimony." MSJ Order at 8 n.3. Elite's CEO submitted a sham

affidavit, and the Court now has occasion to consider it. ECF No. 150-21 ¶ 9 (Elite's CEO claiming unequivocally that he "did not receive the [Anchor Application], did not review the [Anchor Application], and did not discuss the [Anchor Application] with Taiwan Counsel" in 2013.). Indeed, Mr. Leu only admitted that he had reviewed the Anchor application in 2013 **after** Elite produced conclusive evidence that he had. *See* ECF No. 361-4 ¶ 11; ECF No. 201. Even then, Elite continued to litigate its claims up until the Court granted Anchor's SOL defense. Elite continued the litigation for an improper purpose—because it thought it could explain away the evidence and obtain a money judgment for its specious claims—and in bad faith. *See SASCO*, 207 Cal. App. 4th at 847.

### D. Elite Suppressed Evidence in Bad Faith

Elite also acted in bad faith by suppressing key evidence and delaying the litigation. Elite attempted to hide the smoking gun evidence in a privilege log it produced in April 2022. Mot. at 5-6. Elite's conduct required Anchor to brief the issue with the Special Master and for the Special Master to order Elite to amend the log and produce the core evidence which shows that Elite reviewed the Anchor Application in detail in 2013. *See* ECF No. 453-2; ECF No. 183 ¶¶ 7-8; MSJ Order at 5; ECF No. 201-1 ¶ 4, Exs. 2–5. When Anchor filed a motion for leave to file a motion for reconsideration of its first motion for summary judgment based on the suppressed evidence (ECF No. 201), the Court denied Anchor's motion for reconsideration based on Federal Rule of Civil Procedure 56(d) so that discovery could continue. ECF No. 226 at 1.

Elite suppressed the key evidence so it could expand and delay the litigation in hopes of forcing a settlement or manufacturing a dispute and seeking terminating sanctions. There is no question that Elite's aggressive discovery tactics expanded and extended the dispute. Elite's Opposition tries to flip the narrative by claiming that it was Anchor's "abusive discovery tactics . . . required more than 20 orders from the special master." Opp. at 14. Its response on this point is a transparent effort to distract and muddy the water. But the record is clear. Magistrate Judge Cousins' referral of discovery disputes to a special master was the result of Elite's expansive and unduly burdensome discovery conduct that was repeatedly found to violate rules and be beyond the scope of reasonable discovery contemplated by Rule 26. And Elite brought virtually all the

unnecessary discovery motion practice unsuccessfully. *See e.g.*, ECF No. 69 (quashing subpoenas for Elite's violation of Rule 45); ECF No. 117 (appointing special master in response to Elite's refusal to limit discovery requests); ECF 127 (rejecting Elite's expansive discovery demands); ECF No. 158 (declining to grant Elite's request that Anchor produce its entire source code base); ECF No. 183 (ordering Elite to supplement incomplete interrogatory responses regarding its purported trade secrets and denying Elite's request for irrelevant discovery); ECF No. 186 (finding that Elite's deposition requests were "unreasonable"); ECF No. 193 (limiting duplicative deposition requests by Elite); ECF No. 204 (rejecting Elite's requests for irrelevant discovery); ECF No. 238 (ordering Elite to identify its purported trade secrets and ordering Elite to identify search terms used in its incomplete production); ECF No. 260 at 2 n.1 (noting that the timeline of Elite's allegations "appears inaccurate and unreliable"). Contrary to Elite's assertion, the discovery history in this litigation has not been one-sided. Rather, Elite litigated aggressively for over four years without ever making a settlement offer to Anchor or indicating any willingness to resolve the case.[2]

### III. ELITE'S ALLEGATIONS REGARDING ANCHOR'S CONDUCT ARE UNFOUNDED AND IRRELEVANT

Elite devotes much of its Opposition brief to again accusing Anchor of discovery misconduct. *See, e.g.*, Opp. at 4-5. Elite has taken the approach of avoiding accountability for its specious claims by falsely accusing Anchor of misdeeds that *Elite* committed or planned to commit. This has been Elite's strategy throughout the course of this lawsuit, and it has created a waste of party and judicial resources that is probative of objective speciousness and bad faith and justifies an award of fees. Elite never intended to face the merits of its case because it knew the matter was meritless. Instead, Elite's game plan has been to pursue scorched-earth discovery, falsely accuse Anchor of discovery misconduct, and file iterative motions for terminating

---

[2] Elite also "evaded its discovery obligations" throughout this litigation, as evidenced by the fact that it produced just 126 documents prior to the close of fact discovery and continued to withhold documents until summary judgment briefing. *Teetex*, 2022 U.S. Dist. LEXIS 117769, at *14; *see* ECF No. 393 at 3; *see generally* ECF No. 393.

sanctions based upon the supposed misconduct. *See* ECF Nos. 242, 307. Indeed, Elite filed at least 15 motions to compel. *See, e.g.,* ECF Nos. 52, 59, 87, 99, 106, and 157; Declaration of William A Hector ("Hector Decl.") ¶ 4. Elite formed this strategy at the outset, knowing well that it lacked evidence and that its claims were time barred. *See, e.g.*, ECF No. 361 at 10, 28. These are exactly the type of bad faith litigation tactics attorney fee shifting statutes were established to discourage.

Elite also faults Anchor for waiting 13 months after the parties' Fed. R. Civ. P. 16 Conference to file its first summary judgment motion. Opp. at 11:17-24. Anchor's motion was based not only on the SOL, but also on the theory that Anchor did not have access to Elite's trade secrets, which Anchor confirmed through discovery. *See* ECF No. 141 at 15. Any delay in the litigation was prejudicial primarily to Anchor, the most obvious instance of which was caused by Elite's suppression of evidence that conclusively proved Elite's claims were time barred.

### A.     Anchor Did Not Withdraw its Rule 11 Motion

Elite falsely contends that Anchor orally withdrew its Rule 11 motion during a meet and confer call in July of 2022. Opp. at 2, 7. The assertion is false, but it is also beside the point. *See* Hector Decl. ¶ 3 ("Anchor never withdrew its Rule 11 motion.") Elite sent Anchor's counsel an email asking Anchor to withdraw the motion, but Anchor never agreed to withdraw it. *See id.*, Ex. A. And Anchor certainly would never withdraw a motion orally without confirmation in writing.

Elite's theory that Anchor "did not believe sufficiently in their motion to risk filing and losing it" lacks merit. Opp. at 12. Anchor did not file a Rule 11 motion in 2022 because the Court denied without prejudice Anchor's first motion for summary judgment to allow for more discovery. ECF No. 168. Anchor was confident it would prevail on the SOL defense (as it ultimately did), and to avoid burdening the Court while Elite pursued the discovery that the Court ordered it was entitled to, Anchor waited to file the motion. Regardless, it is irrelevant why Anchor did not file a Rule 11 motion in 2022. The Rule 11 motion put Elite on further notice that its claims were time barred. Elite did not withdraw its meritless claims, and now should be held accountable for the needless burden and expense it imposed on the Court, the Magistrate Judge

overseeing the matter, the appointed Special Master, and Anchor. Elite's claims were always time barred because Elite had notice of the Anchor Application in 2013. MSJ Order at 9. Elite had the opportunity to present a justification for why the SOL was not applicable, or to voluntarily dismiss the case, but it never did either.

### B. Anchor Did Not Misrepresent Elite's Responses to Rule 11 Correspondence

Elite suggests that "[r]ather than focusing on the merits of this case," Anchor "attempted to bully and berate Plaintiff" by serving Rule 11 letters and a Rule 11 motion. Opp. at 5-6. Utilizing the Federal Rules of Civil Procedure to professionally explain to Elite the obvious reasons its case lacked merit is not bullying. Upon receiving Anchor's Rule 11 letters, Elite should have reassessed its claims in good faith. Instead, Elite responded with the same meritless arguments that were later rejected in the MSJ Order.

Elite also suggests that Anchor should have provided the Court with the letters that Elite sent in response to Anchor's Rule 11 letters. Opp. at 2. Anchor never suggested that Elite did not respond to the Rule 11 letters. Rather, Anchor was clear that Elite "proceed[ed] with its claims," "affirmatively misrepresent[ed] facts to the Court," and "conceal[ed] evidence . . . that this Court ultimately relied upon in granting Anchor's second motion for summary judgment." Mot. at 18. Regardless, Elite's written responses contain the same faulty arguments that failed at summary judgment, namely: (1) that a defendant must admit liability before invoking the SOL; (2) that Anchor's abandonment of its patent, allegedly unbeknownst to Elite until 2019, was the crucial detail that defeated the SOL discovery rule; and (3) that Anchor had not established any similarity between Anchor's patent and Elite's purported trade secret. ECF Nos. 461-2 at 2-3, 461-3 at 2. The Court rejected these arguments. MSJ Order at 6. Furthermore, the third argument contradicts Elite's technical expert's testimony (ECF No. 328-12 ¶ 25) and Elite's allegations in the complaint that the Anchor Application alone put it on notice of its trade secret claims. *See* ECF No. 139 ("SAC") ¶ 87.

### IV. *GABRIEL TECHS.* IS DIRECTLY APPLICABLE

Elite argues that Anchor misrepresented the fact that Elite's lead counsel was previously sanctioned for virtually identical conduct. The public record is unambiguous on this point. In

11
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES
CASE NO. 5:20-CV-06846-EJD (NC)

*Gabriel Techs.*, the court sanctioned the WHGC law firm, and Mr. van Loben Sels was the ***only attorney of record from the WHGC firm***. 2013 U.S. Dist. LEXIS 14105, at *1 ("Counsel: For Gabriel Technologies Corporation, Plaintiff: John D Van Loben Sels, LEAD ATTORNEY, Wang Hartmann Gibbs & Cauley, Mountain View, CA"). The *Gabriel Techs.* court "found that [the plaintiff's trade secret] misappropriation claims were barred by the statute of limitations and granted summary judgment in Defendants' favor." *Id.* at *29. In sanctioning Mr. van Loben Sels' law firm (WHGC), the court stated:

> WHGC[] . . . unreasonabl[y] fil[ed] documents with the Court. . . . WHGC had an obligation to . . . undertake a reasonable investigation into the merits of the case. WHGC did not do so, and instead continued to file documents with the Court without performing the requisite reasonable inquiry under the circumstances. . . . Accordingly, the Court finds sanctions to be warranted under Rule 11.

*Id.* at *43-44. Given that Mr. van Loben Sels was the only attorney in the case for WHGC, he was responsible for the sanctions issued by the court. That the above references WHGC as opposed to Mr. van Loben Sels by name is a distinction without a difference.

## V.  SUMMARY JUDGMENT DOES NOT SAVE ELITE FROM RULE 11

Elite claims that Anchor's motion is improper because "a motion for sanctions under Rule 11 cannot be ***served*** after the matter has been decided on the merits." Opp. at 15 (emphasis added). But that is not the case here, where Anchor served a Rule 11 motion regarding the SOL before summary judgment briefing. Elite cannot escape sanctions on such a technicality.

The cases cited in the Opposition are inapposite. In *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870 (9th Cir. 2014), sanctions were denied because the party requesting sanctions "*served* its motion after the district court decided the merits of the underlying dispute." *Id.* at 872 (emphasis added). Similarly, in *Arnold v. Beemer Haus LLC*, No. CV-21-01450-PHX-SMB, 2022 U.S. Dist. LEXIS 5364 (D. Ariz. Jan. 11, 2022), the court denied sanctions because the defendant "failed to serve a motion for Rule 11 sanctions 21 days prior to filing its motion with the Court" *Id.* at *3. In *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001), the Ninth Circuit rejected a Rule 11 sanctions motion because the party seeking sanctions "did not serve the plaintiffs with the motion in advance of filing and thus did not comply with the twenty-one day advance service provision." *Id.* at 789. Similarly, in *Grober*

12
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES
CASE NO. 5:20-CV-06846-EJD (NC)

*v. Mako Prods., Inc.*, No. 2:04 CV 8604 JZ, 2010 U.S. Dist. LEXIS 144743 (C.D. Cal. July 1, 2010), the court denied sanctions because the party to be sanctioned never had "a chance to withdraw the offending pleading under Rule 11's 'safe harbor' provision." *Id.* at *3.

None of these cases are applicable because it is not disputed that Anchor served its Rule 11 motion on Elite on June 22, 2022, long before the Court granted Anchor's motion for summary judgment. *Urenia v. Pub. Storage*, No. CV 13-01934 DDP (AJWx), 2015 U.S. Dist. LEXIS 60185, at *6 (C.D. Cal. May 7, 2015) (Rule 11 motion draft served need not be identical to filed motion because "courts have tended to emphasize the importance of adequate notice, not identical form or language"). Elite had years to comply with its obligations and withdraw its knowingly meritless claims. It chose not to, and now Elite and its counsel must be held accountable.

## VI. ANCHOR'S JOINT AND SEVERAL LIABILITY CLAIM IS SUPPORTED BY THE RECORD AND CASE LAW

Elite's Opposition argues that it would be inappropriate to hold Elite's counsel jointly and severally liable for Anchor's fees. *See* Opp. at 3, 14, 15. It is unclear whether this argument is being advanced on behalf of Elite or its counsel. Regardless, Elite does not dispute that counsel had the ultimate responsibility for making multiple false representations in opposition to Anchor's first motion for summary judgment and unsuccessfully asserting privilege claims over documents that exposed those misrepresentations. It was Elite's counsel who: (1) brought the Anchor Application to Elite's attention again in 2019; (2) failed to adequately press Elite's leadership about whether they had seen the Anchor Application before; and (3) proposed filing a trade secret lawsuit against Anchor based on an incorrect guess that Elite's former employee had gone to work for Anchor. ECF No. 461-1 ¶¶ 2-4; ECF No. 388 at 46 (Elite's counsel admitting that Elite "didn't know that [Defendant Chin Hsen Lin] had gone to work at Anchor or didn't"). It was also Elite's counsel who convinced Legalist to provide litigation funding. *Id.* ¶ 9. These facts support joint and several liability. *See* Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Twin Falls NSC, LLC v. Southern Idaho*

*Ambulatory Surgery Ctr., LLC*, No: 1:19-cv-00009-DCN, 2020 U.S. Dist. LEXIS 168764, at *45 (D. Idaho Sept. 14, 2020) ("Imposing sanctions against a party and counsel jointly and severally is appropriate where it is unclear based on the record which is less blameworthy than the other.") (citing *In re George*, 322 F.3d 586, 592 (9th Cir. 2003) and *Int'l Union of Bricklayers & Allied Craftsmen Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1407 n. 8 (9th Cir. 1985)); *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 964 (N.D. Cal. 2015) (awarding attorney's fees against counsel and putting "similarly-situated attorneys on notice of the possibility that they could be held jointly and severally liable" for an entire fee award "if they file such an objectively baseless patent infringement suit in the future").

Elite argues that two of the four law firms that have represented Elite during this litigation (Sideman & Bancroft LLP and Jeffer Mangels, Butler & Mitchell LLP) were only involved at the end of the litigation and minimally so. Regardless, counsel for Elite has indisputably "multiplie[d] the proceedings . . . unreasonably and vexatiously" and thus should be ordered to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

### VII.  ELITE'S LITIGATION FUNDER LEGALIST, INC. MAY BE JOINTLY AND SEVERALLY LIABLE FOR ANCHOR'S ATTORNEYS' FEES

For the first time in this case, Elite disclosed in its Opposition attorney declaration that Legalist, Inc. funded this litigation. ECF No. 461-1, ¶¶ 8, 9. The fact that Elite intentionally concealed the existence of the litigation funder and supposed "due diligence" of its claims, despite numerous discovery requests that it undisputedly would be responsive to (*see, e.g.*, ECF No. 153-2 at 144 (RFP 17), 151 (RFP 67)) is just another indicia of Elite's disregard for its obligations in litigation and before this Court.[3]

And as the funder of Elite's scorched-earth litigation campaign, Legalist, Inc. may be

---

[3] Should Elite contend that the due diligence report referenced in Mr. van Loben Sels' Declaration (ECF No. 461-1 ¶¶ 8, 9) or other information related to Legalist is privileged, such information was never disclosed on a privilege log.

14
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES
CASE NO. 5:20-CV-06846-EJD (NC)

directly liable for Anchor's attorneys' fees. *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-CV-02663-WJM-KMT, 2015 U.S. Dist. LEXIS 119086, at *5-6 (D. Colo. Sept. 8, 2015) ("When a separate person or entity funds litigation costs, a number of courts have found that the funding person or entity who also controls what is later found to be vexatious litigation can be deemed a party for purposes of paying costs and attorney's fees."); *see also Tradeline Enters. Pvt v. Jess Smith & Sons Cotton, LLC*, No. LA CV15-08048 JAK (RAOx), 2019 U.S. Dist. LEXIS 221924 (C.D. Cal. Apr. 15, 2019) (in proceedings related to a judgment awarding attorney's fees, allowing discovery on the role of a litigation funder). Had Elite not suppressed the identity of its litigation funder, Legalist, Inc., and Anchor had the opportunity to take discovery on the issue, Anchor may have included Legalist as a jointly and severally liable party in the opening brief.

## VIII. CONCLUSION

Anchor respectfully requests that the Court award Anchor its reasonable attorneys' fees and costs incurred in connection with this action, and that Elite, its counsel, and Legalist, Inc. be held jointly and severally liable for such an award.

Respectfully submitted,

Dated: April 22, 2025

VENABLE LLP

By: */s/ William A. Hector*
    William Hector
    Amit Rana
    Philip T. Sheng
    Harry Libarle
    *Attorneys for Defendants*
    *Anchor Semiconductor, Inc. and*
    *Chenmin Hu*