UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ELITE SEMICONDUCTOR, INC., | Case No. 5:20-cv-06846-EJD |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES** |
| v. | |
| ANCHOR SEMICONDUCTOR, INC., et al., | Re: ECF No. 453 |
| Defendants. | |

After the Court granted summary judgment in favor of Defendants Anchor Semiconductor, Inc. and Chenmin Hu, they moved for attorney's fees from Plaintiff Elite Semiconductor, Inc. and its counsel. Because Elite made its trade secret claims in bad faith within the meaning of federal and California trade secret law, Defendants are entitled to fees from Elite. However, because not all of Elite's counsel have had the opportunity to respond to Defendants' fee motion, it is not appropriate for the Court to decide now whether Elite's counsel are jointly liable for those fees. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

**I.     BACKGROUND**

On September 30, 2020, Elite filed suit against Defendants, asserting trade secret misappropriation and related claims. Compl., ECF No. 1. In its initial complaint, Elite alleged that Anchor had stolen its technology in 2011, which Anchor then quickly commercialized within the next two years. *Id.* ¶¶ 76, 85–86. Trade secret claims, however, have a three-year statute of limitations. 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. Since Elite had filed suit well later than three years after the alleged theft, it tried to avoid limitations issues by taking advantage of the discovery rule. Under this rule, the limitations period does not begin to run until a plaintiff

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING IN PART FEES                    1

"by the exercise of reasonable diligence should have [] discovered" its trade secret claim. 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. Elite contended that it could not have discovered its claims until 2019, when it first learned about a patent application that Anchor had filed earlier, one allegedly containing Elite's trade secrets (the Anchor Application). Compl. ¶¶ 75–77, 82, 138.

Elite persisted in this theory of the discovery rule for most of the litigation. In each of its complaints, Elite alleged that it first learned of the Anchor Application in 2019. First Am. Compl. ¶ 95, ECF No. 101; Second Am. Compl. ¶ 87, ECF No. 139; Proposed Third Am. Compl. ¶ 103, ECF No. 313-21.[1] And when Defendants argued in an early summary judgment motion that Elite was put on notice of the Anchor Application in 2013, Elite vigorously refuted the suggestion. Specifically, Defendants argued that, in 2013, the U.S. Patent and Trademark Office (PTO) issued an office action to Elite rejecting one of its patent applications, and in that office action, the PTO cited to the Anchor Application. ECF No. 142, Ex. 9. Elite flatly denied that it had received the office action in 2013. ECF No. 150 at 14[2] ("Even if [Elite] saw the [] Anchor Application in 2013, and the facts in the summary judgment record demonstrate it did not . . . ."); *id.* at 15–16 ("[Elite] did not receive the Office Action or the [] Anchor Application.").

Although the Court ultimately denied early summary judgment, it did so under Rule 56(d) because discovery was not yet complete, not because there were any factual disputes. ECF No. 168. As it turned out, there were no factual disputes—Elite had received the office action in 2013 despite its denial. In fact, this conclusion was so clear that Elite eventually admitted it had received the office action in 2013. ECF No. 376-6, Fact 11. This ended up being central to the Court's eventual grant of summary judgment in favor of Defendants. ECF No. 436 at 4–5. Since Elite was on notice of its claims when it received the Anchor Application in May 2013, the three-year statute of limitations began running at that time and expired in May 2016. *Id.* Elite did not file this suit until 2020, meaning that its claims were time barred. *Id.*

---

[1] The Court ultimately denied leave to file a third amended complaint as moot when it granted summary judgment in Defendants' favor. ECF No. 436.

[2] Record citations are made to internal pagination unless otherwise indicated.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING IN PART FEES            2

Shortly after the Court entered judgment, the parties agreed to a bifurcated procedure for resolving attorney's fees. First, Defendants would file a motion seeking a ruling that they were entitled to fees. If the Court found that Defendants were entitled to fees, only then would Defendants file an application to establish the amount of fees. ECF No. 439. The motion currently before the Court comes at the first phase of this process. Defendants claim that they are owed fees under both federal and California trade secret law, the Court's inherent authority, Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927. ECF No. 453. Defendants seek fees from not just Elite but also the various law firms that have represented Elite throughout this litigation: Fish IP Law LLP; Thoits Law; Jeffer Mangels Butler & Mitchell LLP; and Sideman & Bancroft LLP. *Id.*

## II.     DISCUSSION

Each of the four fee-shifting authorities that Defendants have invoked operate under a different standard, so the Court addresses each in turn.

### A.     Trade Secret

Under both federal and California trade secret law, a court may award reasonable attorney's fees to the prevailing party "if a claim of [] misappropriation is made in bad faith." 18 U.S.C. § 1836(b)(3)(D); *see also* Cal. Civ. Code § 3426.4 (same). Defendants won summary judgment, so they are the prevailing party. Thus, entitlement to fees under trade secret law depends on whether Elite's trade secret claims were made in bad faith.

The Ninth Circuit has never defined bad faith under federal trade secret law. However, federal district courts throughout California have regularly applied California's definition of bad faith for both federal and California trade secret claims. *E.g.*, *Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 664 F. Supp. 3d 1142, 1158 (S.D. Cal. 2023); *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, No. 2:18-cv-01069, 2023 WL 4564749, at *3 (E.D. Cal. July 17, 2023); *Teetex LLC v. Zeetex, LLC*, No. 20-cv-07092, 2022 WL 2439176, at *4 (N.D. Cal. July 5, 2022); *Cherokee Chem. Co. v. Frazier*, No. 20-cv-1757 (ASX), 2022 WL 2036305, at *3 (C.D. Cal. Apr. 27, 2022). The Court therefore does the same.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING IN PART FEES          3

Under California law, a party seeking fees must demonstrate both objective and subjective bad faith on the part of the opposing party. *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (citing *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262 (2002)). The objective component requires "objective speciousness," which is a lower bar than frivolousness. *Id.* A claim is objectively specious when it "superficially appears to have merit but there is a complete lack of evidence [in] support." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1276 (2009).

### 1. Objective Speciousness

Elite's main argument against speciousness is that there were legitimate factual disputes about the underlying merits of its claims. That argument misses the point. A plaintiff may well have indisputable, smoking-gun evidence showing trade secret misappropriation, but its claims will nonetheless fail if filed too late. If a claim is subject to an obvious time bar, it is objectively specious. *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992, 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014); *see also Alamar Biosciences, Inc. v. Difco Lab'ys, Inc.*, No. 94-cv-1856, 1996 WL 784495, at *1 (E.D. Cal. Feb. 27, 1996) (citing *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 653 (9th Cir. 1988); *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988)). There was an obvious time bar to Elite's trade secret claims. The trade secret theft allegedly occurred in 2011. Compl. ¶ 76. The statute of limitations on Elite's trade secret claims was three years. 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. Elite did not file until nine years after the alleged theft, in 2020. *See* Compl. From this, it should have been evident to Elite that its claims were time barred absent some form of tolling or other exception to the statute of limitations.

When it initially filed suit in 2020, Elite attempted to invoke the discovery rule to toll the statute of limitations. Elite claimed that it was not put on notice of its trade secret claims until 2019, when it first learned of the Anchor Application. Compl. ¶¶ 76–77. That was untrue. The record instead showed that Elite learned of the Anchor Application six years earlier in 2013. ECF No. 376-6, Fact 11. That knowledge was sufficient to start the limitations clock in 2013.

Although Elite asserted that more was needed, that assertion is not supported by law. All that the law requires to run the limitations clock is reasonable suspicion. *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 587 (2008). Whatever the minimum amount of suspicion needed may be, the fact that a competitor is trying to patent a plaintiff's trade secrets certainly clears that bar. And as the Court found to be undisputed, the Anchor Application contained all of Elite's trade secrets. ECF No. 436 at 4.

Elite's remaining arguments were squarely foreclosed by case law. Elite claimed that factual disputes about the merits of its claims, *i.e.*, whether Defendants had actually misappropriated trade secrets, precluded Defendants' statute of limitations defense. Not so. *Id.* at 586 ("Courts have rejected the notion that the statute of limitations begins running only when a plaintiff can unassailably establish a legal claim for trade secret misappropriation . . . .") (citation and internal quotation marks omitted). Elite also asserted that it was not actually aware of its potential claims, and this prevented the statute from running. Again, not so. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) ("Because the plaintiff must be diligent in discovering the critical facts[,] a plaintiff who did not actually know of his claim will be barred if he should have known of it in the exercise of due diligence.") (cleaned up). Finally, Elite argued that it was not on notice of claims when it lacked knowledge of the identities of all potential defendants. One last time, not so. *Cypress Semiconductor*, 163 Cal. App. 4th at 587 ("[T]he failure to discover the identity of the defendant does not postpone accrual of the cause of action.").

As for Elite's last-ditch fraudulent concealment argument, little needs to be said beyond the fact that Elite failed to identify any allegedly fraudulent statements that were made prior to the commencement of litigation. ECF No. 436 at 8–9.

The Court finds that Elite's trade secret claims were objectively specious.

### 2. Subjective Bad Faith

Subjective bad faith requires a showing of "improper motive." *Gemini Aluminum*, 95 Cal. App. 4th at 1263. Such improper motives include the intent "to cause unnecessary delay" or "to harass respondents." *FLIR Sys.*, 174 Cal. App. 4th at 1278. Usually, courts must infer subjective bad faith from circumstantial evidence. *Gemini Aluminum*, 95 Cal. App. 4th at 1263. For

1  example, courts may consider issues surrounding the timing of an action or whether plaintiffs
2  insisted on proceeding even "after the action's fatal shortcomings are revealed by opposing
3  counsel." *FLIR Sys.*, 174 Cal. App. 4th at 1278; *see also CRST Van Expedited, Inc. v. Werner
4  Enters., Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007) ("The district court could infer subjective bad
5  faith because defense counsel warned the plaintiff the claims were specious but CRST first
6  haggled for a release and then, when unsuccessful, agreed to abandon the claim after Werner filed
7  its motion to dismiss."). Here, there is ample evidence from which to draw an inference of
8  subjective bad faith.

9        To begin, Elite must have known that the statute of limitations would be a significant issue
10  in this litigation. Elite filed suit nearly a decade after the alleged trade secret theft when the statute
11  of limitations was only three years. Elite was therefore on ample notice that it needed to have a
12  compelling reason for tolling the statute of limitations. If it did not, then filing suit would
13  undoubtedly be futile and serve as little more than an exercise in racking up unnecessary litigation
14  costs. Indeed, Elite seemed to recognize from the very beginning that the statute of limitations
15  was a significant obstacle. In its first complaint, Elite tried to plead a theory of tolling under the
16  discovery rule by alleging that it could not have discovered its trade secret claims until it learned
17  of the Anchor Application in for the first time in 2019. Compl. ¶ 77. This allegation was
18  demonstrably false. ECF No. 436 at 5. Yet, Elite continued to make this allegation in the
19  litigation for four years, up through May 2024 when it filed its proposed third amended complaint.
20  ECF No. 313-21 at ¶ 103.

21        Elite's concerning lack of regard for the factual accuracy of the representations it made to
22  the Court suggest that its priority was other than winning its claims on the merits. Instead, it
23  appears that Elite aimed to extend litigation against Anchor as long as possible by recklessly
24  conjuring up factual disputes without actually checking the facts. That is especially so given that
25  Elite itself placed the Anchor Application at issue by making it the centerpiece of its tolling
26  theory. What makes this even worse is that all the evidence needed to prove Elite had learned of
27  the Anchor Application prior to 2019 was in Elite's own possession and control. *See id.*
28  (documents produced by Elite); 6/4/24 Leu Decl. ¶ 5, ECF No. 361-4 (declaration of Elite's CEO).

All this implies that Elite acted in bad faith to leverage this litigation to extract as much settlement value from Defendants as possible. *Washington v. ViacomCBS, Inc.*, No. 2:20-cv-00435, 2021 WL 6134375, at *3 (C.D. Cal. Dec. 9, 2021) ("A finding of bad faith may be based on Plaintiff's conduct that 'suggests an intent to force Defendant[ ] to expend significant resources on litigation in order to coerce a settlement.'") (alteration in original) (quoting *Shame on You Prods., Inc. v. Banks*, No. 14-cv-03512, 2016 WL 5929245, at *9 (C.D. Cal. Aug. 15, 2016)).

Most tellingly, the evidence shows that Elite should have realized at least by April 2022 that it had received the Anchor Application in 2013. Setting aside the question of whether Elite and its attorneys had conducted an adequate prefiling investigation, by at least January 28, 2022, Elite was on notice of the existence of the PTO office action in 2013. ECF No. 142, Ex. 9 at 124 (ECF pagination). Elite also knew that Defendants were arguing the office action showed Elite's knowledge of the Anchor Application in 2013. ECF No. 141 at 8. At that point, the prudent course of action would have been for Elite to investigate whether it had received the office action in 2013, as Defendants claimed. Then, after confirming that it had received the office action, to abandon any arguments suggesting that it had not known about the Anchor Application until 2019.

Apparently, Elite took that first step. In April 2022, shortly after Defendants had first brought up the issue of the office action, Elite served a privilege log identifying several communications between Elite and its patent counsel regarding the application at issue in the office action. ECF No. 453-1 at ¶ 5 & Ex. B; ECF No. 201-1 at ¶¶ 4, 6 & Exs. 2–3. The privilege log demonstrates that, by at least April 2022, Elite had laid eyes on documents definitively proving that it had received the office action (and therefore notice of the Anchor Application) in 2013.[3] Elite knew then that it did not first learn of the Anchor Application in 2019, contrary to its representations throughout the litigation so far. Yet, Elite did not promptly withdraw those representations. Rather, Elite repeated those false representations two years later when it moved to amend its complaint. ECF No. 313-21 at ¶ 103.

---

[3] These documents are available only because Elite eventually produced them after litigation over the propriety of withholding them as privileged. ECF No. 201-1 at ¶¶ 3–7.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING IN PART FEES          7

Elite's startling lack of attention to this key fact leads the Court to conclude that Elite acted, from the very beginning, with the improper motive to extract settlement value, not to prevail on the merits.

\*     \*     \*

Since Elite's trade secret claims were objectively specious and Elite acted in subjective bad faith, the Court finds that Defendants are entitled to fees from Elite under both federal and California trade secret law.

### B.     Inherent Authority

Defendants separately invoke the Court's inherent authority as a basis for awarding fees against Elite. The Court may award fees under its inherent authority if a party has acted in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). The Court must, however, make an explicit factual finding of bad faith. *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). For the reasons just discussed in the prior section, the Court finds that Elite acted in bad faith and that fees are warranted. As such, the Court finds that Defendants are entitled to fees from Elite under the Court's inherent authority, as well.

### C.     Rule 11

Defendants also try to hold Elite's attorneys liable for fees under Rule 11. This effort fails because parties cannot seek Rule 11 sanctions after a case has been fully litigated to judgment. *See Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014). The Ninth Circuit has explained that the purpose of Rule 11 is to serve judicial economy. *Id.* Thus, parties can no longer move for Rule 11 sanctions after "judicial rejection of the offending contention." *Id.* (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).

Defendants read *Islamic Shura* more narrowly, focusing in on the opinion's statement that "[m]otions for Rule 11 attorney's fees cannot be *served* after the district court has decided the merits of the underlying dispute." *Id.* (emphasis added). According to Defendants, *Islamic Shura* does not bar their Rule 11 motion because they served the motion before final judgment even though they did not file until afterwards. While it is true that the *Islamic Shura* court used the word "served," that is simply because in the facts before it, plaintiffs had not served their Rule 11

motion until after final judgment. *Islamic Shura*'s reasoning did not depend on the difference between service and filing. The cornerstone of *Islamic Shura*'s holding was that post-judgment Rule 11 motions did not serve "judicial economy." *Id.* That is true whenever a party tries to file a Rule 11 motion post-judgment, whether that motion was served before or after judgment.

Defendants' Rule 11 motion is also untimely for another reason. A motion that is "delayed too long" after the offending document was filed "may be viewed as untimely." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Again, the advisory committee's note uses the word "served" when describing the timeliness requirement. *Id.* But filing Rule 11 motion long after the offending document is just as bad as serving the motion long after. Here, Defendants' Rule 11 motion targeted Elite's second amended complaint (ECF No. 139), filed January 24, 2022. ECF No. 453-7. Defendants served their proposed Rule 11 motion upon Elite on June 22, 2022. ECF No. 453-8. Defendants then waited over two years before actually filing any Rule 11 motion. ECF No. 453 (filed on February 21, 2025). That is an unreasonably long time to wait.

Timeliness aside, there is one final flaw with Defendants' Rule 11 motion—it does not comply with Rule 11's procedural requirements. Before seeking sanctions under Rule 11, a party must serve its proposed motion to the opposing side and then must wait 21 days before filing the motion. Fed. R. Civ. P. 11(c)(2). Defendants claim that they did so when they served a Rule 11 motion upon Elite on June 22, 2022. ECF No. 453-8. However, the motion that Defendants served in 2022 is not the same as the Rule 11 motion that Defendants make now. *Compare* ECF No. 453-7 (2022 motion), *with* ECF No. 453 (current motion). The current motion is much more detailed and supported by significantly more evidence than the 2022 motion was. Thus, Defendants cannot rely on their 2022 motion to satisfy the procedural requirements of Rule 11.

The Court finds that Rule 11 sanctions against Elite's attorneys are not available.

### D.     Section 1927

Finally, the Court turns to fees under 28 U.S.C. § 1927. This statute authorizes courts to award fees against any counsel who "multiplies the proceedings in any case unreasonably and vexatiously." Defendants seek to extend liability for attorney's fees to Elite's various law firms under this statute.

Case No.: 5:20-cv-06846-EJD
ORDER GRANTING IN PART FEES         9

1    Several law firms have represented Elite throughout the life of this case, and it is not at all
2    clear that any of Elite's former law firms are aware that Defendants are seeking attorney's fees
3    against them. After all, none of Elite's former law firms have filed oppositions to Defendants'
4    request even though it could subject them to significant financial liability. It is inappropriate for
5    the Court to award fees against those firms without first confirming that they have received notice
6    and an opportunity to respond. That said, fees are clearly not available against Elite's current
7    firm, Sideman & Bancroft, because it did not begin its representation of Elite until after the entry
8    of judgment.
9    Consequently, the Court finds that fees are not available against Sideman & Bancroft, but
10   it defers the determination of whether to award fees with respect to Elite's former law firms.

### III.   CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for fees. The Court finds that Defendants are entitled to fees from Elite under federal and California trade secret law and the Court's inherent powers; Rule 11 sanctions are not available against Elite's attorneys; and § 1927 fees are not available against Sideman & Bancroft. The Court will defer the question of § 1927 fees as to Elite's former law firms until they have a chance to respond.

Within **two weeks**, Defendants shall serve this Order upon Elite's former law firms and any other third parties from whom Defendants seek fees. Defendants shall file a proof of service with the Court upon doing so. Then, Defendants shall meet and confer with Elite and any third party from whom they seek fees, and together they shall present the Court with a proposed schedule for resolving third-party liability for fees and determination of the amount of fees. Such schedule shall be due within **two weeks** after Defendants serve this Order upon all relevant parties.

**IT IS SO ORDERED.**

Dated: August 4, 2025

EDWARD J. DAVILA
United States District Judge